# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| GREGORY ALLEN ROYAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17cv261 |
| | ) TSE/TCB |
| MICHELLE K. LEE, DIRECTOR, | ) |
| U.S. PATENT AND TRADEMARK OFFICE | ) |
| Agency, | ) |
| | ) |
| | ) |
| PENNY PRITZKER, SECRETARY, | ) |
| U.S. DEPARTMENT OF COMMERCE | ) |
| Agency, | ) |
| | ) |
| | ) |
| JEH JOHNSON, | ) |
| FEDERAL PROTECTIVE SERVICES | ) |
| Agency, | ) |
| | ) |
| | ) |
| BISMARCK MYRICK, DIRECTOR | ) |
| U.S. PATENT AND TRADEMARK OFFICE | ) |
| OFFICE OF EEO AND DIVERSITY | ) |
| Agency, | ) |
| | ) |
| | ) |
| _____ | ) |

## COMPLAINT

(Race and Gender Discrimination, Retaliation in Federal Employment, Hostile Environment, Harassment, Civil Rights Violation under Section 1983, and FRAUD)

### Introduction

1.    Plaintiff, Gregory Allen Royal, proceeding *pro se*, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*., to remedy acts of employment discrimination based upon his gender and race, hostile environment, harassment,

1

Plaintiff requests a trial by jury.

and retaliation perpetrated against him by the United States Patent and Trademark Office (USPTO) and Department of Commerce (DOC). Plaintiff contends that USPTO officials and DOC officials discriminated against him by:

(a) remaining recklessly and deliberately indifferent in a systematic and continuous process from September 2013 to November 2014 to his complaints about consistent bullying, extreme and severe harassment, violent threats to his physical safety, criminal assault and battery upon him, hostile environment, etc. because of his African American race and his male gender;

(b) remaining recklessly and deliberately indifferent in a systematic and continuous process from September 2013 to November 2014 by intentionally and maliciously ignoring and or misapplying USPTO policies regarding, at least:

(1) a No Tolerance Towards Workplace Violence Policy,

(2) a Prohibition Against Dangerous Weapons Inside the USPTO,

(3) federal statutes prohibiting knives having blades over (about) one and a quarter inches inside a federal building,

(4) Rules, Policies, and Procedures regarding Human Relations' enforcement of all policies, rules, and laws regarding federal employees,

(5) creating a fictitious, alleged, and pretext of a rule about first year patent examiners being subject to a production threshold, and

(6) systematically and continuously and maliciously spreading defamatory (slander and libel) statements about him throughout the USPTO and multiple other federal agencies to, intentionally and maliciously, cause permanent damage to his reputation and to his

Plaintiff requests a trial by jury.

mental, emotional, and physical person because his engagement in protected activities and because of his African American race and male gender;

(c) systematically and continuously harassing and tormenting him through the USPTO Security's, Federal Protective Services', and the USPTO officials' and DOC officials' reckless and deliberate indifference to workplace violence, bullying, and harassment consistently perpetrated against him from September 2013 to August 2014 by Caucasian and Asian federal employees because of his African American race and male gender;

(d) systematically and continuously being biased in favor of non-African Americans and or females and being prejudiced against him because of his African American race and male gender in the USPTO's enforcement of disciplinary rules and procedures in, e.g., issues of his reporting workplace violence, bullying, and harassment perpetrated against him;

(e) systematically and continuously engaging in intentional and malicious fraudulent, dishonesty, and corruption to cover up USPTO officials' and DOC officials' discrimination, harassment, and retaliatory acts against him because of his engagement in protected activities and because of his race and gender;

(f) systematically and continuously engaging in intentional and malicious fraudulent, dishonesty, and corruption to cover up USPTO officials' and DOC officials' discrimination, harassment, and retaliatory acts against him and to cover up USPTO officials' and DOC officials' sabotage and destruction of his career as a federal employee because of his race and gender in that he complained and reported the workplace violence, violations of federal laws, rules, and policies by non-African American (i.e., Caucasians and Asians) and or females; and

3

(g) systematically and continuously encouraged officials of other agencies such as

the Office of Personnel Management (OPM), Federal Protective Service (FPS), and OEOD to

engage in fraud, deceit, dishonesty, and corruption to conceal the racial and gender

discrimination and retaliation of the USPTO officials and DOC officials against him because of

his engagement in protected activities and because of his race and gender.

2.      Plaintiff further asserts that USPTO officials, USPTO management, and DOC officials

retaliated against him for having complained about such racial and gender discrimination,

created a severe and hostile working environment for him wherein non-African Americans

were encouraged (via the USPTO's and DOC's reckless and deliberate indifference) to engage

in workplace violence including bullying and criminal assault and battery upon him; caused

him to suffer major depression, insomnia, and multiple physical medical illnesses; punished

him for using medical leave to obtain treatment for work induced maladies and personal time

off (vacation), and finally, terminated his Federal service employment when the discrimination

/ retaliation caused him incapacity and to recklessly and intentional cause him to suffer extreme

financial losses, losses of basic necessities of life (such as food and shelter), and to permanently

prohibit him from obtaining future employment at any other federal agency by maliciously and

deliberately placing a known false and defamatory accusation into the 2014 Termination Letter

and his OPM file.

### Statement of Facts

3.      Plaintiff Gregory Allen Royal, black (African American) male, from about September

9, 2013 to November 30, 2014, was a patent examiner, GS-9, at the USPTO.

Plaintiff requests a trial by jury.

4.     At the time of his termination from federal service, Mr. Royal worked in the Technology Center 2800 (Thermal Measurement and Testing, and Measurement and Testing art units) of the USPTO in Alexandria, Virginia.

5.     At all times material, Penny Pritzker, a white female, was the Secretary of the Department of Commerce (DOC), and Michelle K. Lee, an Asian female, was the Deputy Under Secretary of the Department of Commerce and Commissioner of the United States Patent and Trademark Office (USPTO).

6.     At all times material, Ann Mendez, a white female, was the Chief of Employee Relations at the USPTO, and Jennifer Ware, a white female, was a Human Relations representative at the USPTO.

7.     At all times material, Special Agent Kevin Lewis, a black male, was a decision-maker in the Security Department for the USPTO.

5.     From September 9, 2013 to January 2014, Mr. Royal's Patent Training Academy (PTA) Classroom Director was Jessica Rossi, a white female; his PTA Director was Gary Jones, a white male; his Assistant PTA Director was Deborah Reynolds, a white female.

9.     From January 2014 to November 2014, Mr. Royal's first level supervisor was Lisa Caputo, a white female, and his Technology Center (TC) director was Joseph Thomas, an Asian male.

10.    At all times material, Violeta Prieto, a white female, Vincent Wall, a white male, and Wei Victor Chan, an Asian male, Ubachukwu Odunuke, a black male, Juan Tolentino, a Latino male, Rahman MD, a Muslim and Middle Eastern male, and Romeo Smellie, a black male were first year patent examiners in the 2009 Entering PTA Class along with Mr. Royal.

Plaintiff requests a trial by jury.

At all times material, Penny Pritzker, a white female, was the Secretary of the Department of Commerce (DOC), and Michelle K. Lee, an Asian female, was the Deputy Under Secretary of the Department of Commerce and Commissioner of the United States Patent and Trademark Office (USPTO).

6. At all times material, Ann Mendez, a white female, was the Chief of Employee Relations at the USPTO, and Jennifer Ware, a white female, was a Human Relations representative at the USPTO.

7. At all times material, Special Agent Kevin Lewis, a black male, was a decision-maker in the Security Department for the USPTO.

8. From September 2013 to August 2014, Violeta Prieto consistently perpetrated workplace violence, harassment, threats of violence including dangerous weapons (i.e. a long knife having a stabbing and cutting blade of six inches and two knives have cutting and stabbing blades of four inches), and criminal assault and battery upon Mr. Royal.

9. A December 2013 Security Incident Report of the USPTO reports that all witnesses investigated confirmed that Violeta Prieto had singled out Mr. Royal and that she was bullying him.

10. Mr. Royal reported the workplace violence, physical assault and batteries, threats of violence, severe and extreme harassment, and illegal knives of Ms. Prieto to the USPTO officials (about) in October 2013, November 2013, December 2013 (via an Emergency 911 telephone call), January 2014, April 2014, and August 2014.

11. From September 2013 to January 2014, Mr. Royal reported Vincent Wall for Mr. Wall's harassment of Mr. Royal and for Mr. Wall's mockery of Muslims and the Islam religious faith before approximately sixteen patent examiners on a weekly basis.

Plaintiff requests a trial by jury.

11.    All DOC and USPTO officials remained consistently and recklessly and deliberately indifferent to the complaints by Mr. Royal about the workplace violence, etc. of Ms. Prieto.

12.    USPTO officials and DOC officials in addition to their reckless and deliberate indifference, aided and abetted each other in racial discrimination, gender discrimination, and retaliation against Mr. Royal because he reported the workplace violence, bullying, harassment and because of his race and gender as an African American male.

13.    USPTO officials also retaliated against Mr. Roya for his reports workplace violence, harassment, hostile environment, and his complaining about the racial and gender discrimination of the USPTO officials by threatening Mr. Royal with immediate termination if he reported any additional events of workplace violence, harassment, hostile environment, and his complaining about the racial and gender discrimination.

14.    In (about) November 2013, December 2013, April 2014, and August 2014, in addition to her consistent workplace bullying and harassment perpetrated against Mr. Royal on a daily or weekly basis, Ms. Prieto engaged in extremely outrageous and egregious criminal acts that warranted her immediate termination but the USPTO and DOC officials protected her because of her white race and female gender and the USPTO and DOC officials maliciously and knowingly attacked, punished, and retaliated against Mr. Royal because of his gender and race. Ms. Prieto had engaged in, inter alia, the following:

        (a) In November 2013, Ms. Prieto threatened Mr. Royal with a first fight with multiple knives out in the open and on her desktop;

        (b) In November 2013, Ms. Prieto physically slapped Mr. Royal inside the workplace;

7

(c) In April 2014, Ms. Prieto attempted to physically assault Mr. Royal again, after she waited for him to exit a classroom; and

(d) In August 2014, Ms. Prieto entered a classroom that she was not assigned and began to harass Mr. Royal before an examination.

15.     In her sworn affidavit of the Report of Investigations related to this complaint, Ms. Prieto swears that the USPTO or the DOC took no action upon her for her actions (even in light of the "No Tolerance for Workplace Violence Policy" and the December 2013 Security Incident Report).

16.     The USPTO and DOC officials also remained recklessly and deliberately indifferent to Mr. Royal's reports of the harassment of Vincent Wall.

18.     The USPTO and DOC officials maliciously, deceitfully, and deliberately or recklessly refused to investigate any witnesses to the aforementioned complaints of workplace violence, etc. by Mr. Royal solely to damage Mr. Royal, to forced time to pass and memories of the witnesses to lapse, and to defame and shed Mr. Royal in a false light because of his gender and race.

17.     In September 2013, Wei Victor Chan threatened Mr. Royal's employment with the USPTO.

18.     On or about June 2014, Mr. Chan threatened Mr. Royal with physical assault.

19.     On or about July 10, 2914, Mr. Chan entered Mr. Royal's blind spot, from behind, and forcefully slapped Mr. Royal in the back of Mr. Royal's head and neck. The force of Mr. Chan's assault and battery caused Mr. Royal's body, neck, and head to slam forward in a whiplash-like fashion.

Plaintiff requests a trial by jury.

20. After violently attacking Mr. Royal, Mr. Chan ran to the back of the classroom, sat down with his friends, and began laughing at and about his attack upon Mr. Royal with his friends.

20. Romeo Smellie witnessed the force and severity of Mr. Chan's attack.

21. Because of the UPSTO official's previous threat to immediate terminate Mr. Royal if he reported anymore workplace violence, harassment, hostile environment, or workplace discrimination, Mr. Royal did not immediately report Mr. Chan's attack to the USPTO security but Mr. Royal went to the USPTO medical office on that same day (on or about July 10 2014).

22. Mr. Chan's violent attack upon Mr. Royal caused Mr. Royal's head, neck, and upper body to hurt for about two weeks.

23. During the week of July 15 (on or about), Mr. Royal notified Mr. Chan that Mr. Royal may have to seek medical attention because he was still in pain from Mr. Chan's attack. Mr. Royal informed Mr. Chan (via email) that Mr. Royal expected Mr. Chan to pay for any deductibles or expenses incurred from Mr. Chan's attack.

24. Mr. Chan misrepresented to the USPTO that Mr. Royal had attacked him on July 10, 2014, and the USPTO quickly put Mr. Royal into a SECURITY WATCHLIST (all security agents were to keep a watchful eye, even surveil Mr. Royal about the USPTO).

25. The USPTO and DOC officials had discriminated against Mr. Royal because of his gender and race by maliciously and deliberately remaining recklessly indifferent to Mr. Royal's past complaints of workplace violence, but when a non-black reported workplace violence, the USPTO and DOC officials acted immediately and purposefully with an intent to terminate a black male immediately.

9

Plaintiff requests a trial by jury.

26.    In disciplinary matters, the USPTO and DOC officials treated Mr. Royal because he is a black male differently and negatively from the manner in which the USPTO and DOC officials treated non-blacks and or females.

27.    The USPTO and DOC Officials aggressively and immediately act when a non-black male or female complains about a black male.

28.    When Mr. Royal, a black male, complained about workplace violence and or criminal assault and battery perpetrated against him by non-Blacks, the USPTO and DOC officials not only remained maliciously and deliberately recklessly indifferent, they retaliated by attacking Mr. Royal, the black male, and plotting thereafter to fire him.

29.    Mr. Royal shows and proves the malicious and deliberate indifference, corruption, dishonesty, and deceitful retaliation of the USPTO and DOC officials—with the absolute knowledge of USPTO Commissioner Michelle K. Lee and Secretary of the DOC Penny Pritzker—through the fact that **the USPTO and DOC officials refused to interview (investigate) Romeo Smellie, the main witness of Mr. Chan's attack upon Mr. Royal in July 2014.**

30.    The USPTO and DOC officials, and the OEEOD Director Bismarck Myrick or Investigator Lisa A. Kleine, **despite Mr. Royal having requested that Romeo Smellie, be interviewed numerous times,** refused to interview Romeo Smellie.

31.    **Mr. Royal maintains that the refusal to interview key witnesses is a corrupt, underhanded, and dishonest practice of the USPTO and DOC officials to conceal and escape liability for the known and intentional discrimination, harassment, and retaliation of the USPTO and DOC against a black male.**

10

Plaintiff requests a trial by jury.

32.     Anne Mendez, the Chief of Employee Relations knowingly and maliciously made false statements under oath with the intent and objective to damage Mr. Royal, to defame and to shed Mr. Royal in a false light, and to aid and abet TC 2800 Director Joseph Thomas in terminating Mr. Royal in retaliation for Mr. Royal's complaints about the above.

33.     Mr. Royal solidifies his position that the USPTO and DOC officials knowingly and maliciously engaged in corrupt practices, dishonest and deceitful acts aimed solely to damage Mr. Royal and to discriminate against Mr. Royal because of his black race and male gender with the corrupt racial and gender discrimination perpetrated against him by Jennifer Ware of UPSTO Human Resources.

34.     On or about December 2013 or January 2013, Jennifer Ware, Human Resources representative, a white female, maliciously and intentionally refused to interview the witnesses of Mr. Royal's complaints against Violeta Prieto and Vincent Wall. Ms. Ware simply closed Mr. Royal complaint without reporting back to Mr. Royal, forcing Mr. Royal to contact Ms. Ware to discover that she has closed his complaint.

35.     On November 30, 2014, the USPTO and DOC terminated Mr. Royal's employment alleging that (a) Mr. Royal failed to meet (an unknown requirement to Mr. Royal) "Production Requirement" and that (b) Mr. Royal had (to the effect) "consistently engaged in conduct unbecoming of all federal employees."

36.     Mr. Royal maintains that first year examiners were not rated / graded on an alleged "Production."

37.     Mr. Royal will call, among others, Juan Tolentino and Ubachukwu Odunukwe to testify that the first year patent examiners were not rated on Production and that any boxes or fields for such was blocked out or "x" out or left blank.

11

Plaintiff requests a trial by jury.

38. Mr. Ubachukwu Odunukwe will be called to testify that on his End-of-the-First-Year Evaluation, the USPTO stated expressly that "First year examiners are not graded on their production."

39. Since Mr. Royal has requested a copy of the End-of-the-First-Year Evaluations for First Year Examiners, the USPTO directed first year examiners to return their evaluations to their TC directors and the USPTO officials have not provided copies to the first year examiners.

40. Pretext: The USPTO and DOC officials use an alleged "Production" to retaliate against first year patent examiners who engage in protected activities of reporting workplace discrimination, retaliation, harassment, hostile environment, corruption, and violence.

41. The USPTO and DOC officials removed Mr. Royal from the TC and a Telecommunications Art Unit that Mr. Royal's education and work experience was appropriate. The USPTO and DOC officials moved Mr. Royal into a TC and Art Unit that Mr. Royal had no experience or very little.

42. The officials offered Mr. Royal no training or time for learning (a learning curve). The USPTO and DOC, however, put forth an alleged Production as a reasonable basis for termination, which is but a mere pretext.

43. Mr. Royal offers additional proof of the mere pretext of the USPTO and DOC with the fact that a patent examiner who is put into an Art Unit matching his or her background and education would have a considerable advantage over Mr. Royal who was selectively put into an Art Unit that did not match his background and who was prohibited from transferring out via threat of termination.

44. The USPTO and DOC hangs the termination upon an allegation that Mr. Royal was terminated, allegedly, for Production and that Mr. Royal, allegedly, consistently engaged in

12

conduct unbecoming of all federal employees. First year patent examiners are not graded on

their Production and the Officials, especially Anne Mendez and Joseph Thomas, maliciously

and intentionally failed to give any specificity / particulars of the conduct Ms. Mendez and Mr.

Thomas both alleged that Mr. Royal had committed, allegedly.

45.     **The USPTO and DOC demonstrated its malice and retribution to Mr. Royal by**

**lacing a Termination Letter that Michelle K. Lee, Penny Pritzker, Anne Mendez, and**

**Joseph Thomas, all non-black policymakers and or decision makers, knew and intended**

**the Termination Letter to become a part of Mr. Royal's OPM Personnel file to prevent**

**Mr. Royal from obtaining future employment with any other federal agency ever.**

46.     The above malicious, intentional, deceitful, and corrupt act by the USPTO and DOC

policymakers and decision-makers demonstrates the racial and gender discrimination,

harassment, hostile environment, intentional infliction of emotional distress, and retaliatory

termination of his employment against Mr. Royal because of gender and race.

47.     An ordinary person and trier of fact would appreciate that the OEEOD Investigator Lisa

A. Kliene, a white female, intentionally and maliciously refused to ask any of the policymakers

and decision-makers for the specifics of the "consistent conduct" that Mr. Royal allegedly

engaged.  Ms. Kliene did not ask any USPTO or DOC official for a list, history, or pattern of

acts unbecoming of all federal employees that Mr. Royal had allegedly engaged.

48.     OEEOD Investigator Lisa A. Kliene, a white female, refused to ask any policymaker or

decision maker any question aimed at discovery of the facts that would bring liability upon the

USPTO and DOC.  Despite Mr. Royal's multiple requests that Ms. Kliene ask meaningful

questions aimed at discovering the facts and truth, or numerous requests that Ms. Kliene

Plaintiff requests a trial by jury.

interview key witnesses pertinent to this controversy, Ms. Kliene not only refused to do so, Ms. Kliene tampered with the affidavits submitted to the OEEOD by Mr. Royal.

49.     Mr. Royal met with TC 2800 Director Joseph Thomas on three separate and distinct occasions to complain about the workplace violence, hostile environment, harassment, and racial and gender discrimination. With each occurrence, Mr. Thomas remained deliberately and maliciously indifferent. Mr. Thomas would immediately direct Mr. Royal out of his office because Mr. Thomas did not want to hear Mr. Royal's complaints.

50.     Mr. Royal informed Mr. Thomas that Violeta Prieto was under his direct line of command but Mr. Thomas discrimination against Mr. Royal because of his race and gender, ignoring the well-known USPTO policy of "No Tolerance Towards Workplace Violence."

51.     Mr. Thomas forced Mr. Royal to vent to a John Juba, a white male, Cassandra Spyrou, a white female, and Lisa Caputo, a white female. Mr. Thomas however, sent message through these individuals back to Mr. Royal that Mr. Thomas would take no action.

52.     The malicious and deliberate indifference of, harassment by, and retaliation of the USPTO and DOC officials, the extreme and outrageous hostile environment fostered and encouraged by the USPTO and DOC Officials, the racial and gender discrimination, the consistent yearlong workplace violence, workplace bullying, criminal assault and batteries, severe harassment daily, and extreme hostile environment perpetrated against Mr. Royal by Violeta Prieto, Vincent Wall, and Wei Victor Chan caused Mr. Royal to become severely depressed, constantly physically ill, to suffer insomnia, and to become unable to perform his job duties, and prohibited Mr. Royal from performing his job duties.

Plaintiff requests a trial by jury.

53. At all times material, Mr. Royal made all USPTO officials that the workplace violence, harassment, hostile environment, and discrimination was severely and negatively affecting his emotional, mental, and physical health, and prohibiting him from performing his job duties.

54. TC 2800 Director Joseph Thomas became more hostile towards Mr. Royal after Mr. Royal told Mr. Thomas that Mr. Royal had filed a complaint with the OEEOD. Mr. Thomas denied Mr. Royal time allotted by USPTO policy for Mr. Royal to participate in the OEEOD Complaint process.

55. Mr. Thomas denied Mr. Royal the policy-afford "Other Time" to damage Mr. Royal and to bring about the retaliatory termination of Mr. Royal under an alleged pretext of "Production."

56. Joseph Thomas and Lisa Caputo retaliated against Mr. Royal after Mr. Royal reported the discrimination, harassment, hostile environment, and workplace violence by rating Mr. Royal with lower evaluation ratings (not related to an alleged production) and doctoring up Mr. Royal's evaluations with the purpose of bringing forth his demise and eventual termination.

57. Mr. Thomas and Ms. Caputo gave Mr. Royal lower ratings for events allegedly from a prior rating period wherein Mr. Royal received higher ratings—retaliatory punishment retroactively for a period of time when Ms. Caputo was not Mr. Royal's first line supervisor and Mr. Thomas not Mr. Royal's director.

58. Mr. Thomas and Ms. Caputo rated Mr. Royal with lower marks for alleged events that occurred when Mr. Royal was not under their line of supervision and for alleged interactions with individuals also not under their line of supervision, but Mr. Thomas and Ms. Caputo

15

Plaintiff requests a trial by jury.

doctored up Mr. Royal's evaluation to read as if the other employees were in the same Art Unit as Mr. Royal and under Mr. Thomas's and Ms. Caputo's supervision.

59.     After Mr. Thomas began to punish and become hostile towards Mr. Royal in retaliation and discrimination because of Mr. Royal's gender and race but also in protectionism and favoritism of Violeta Prieto (the consistent attacker and wrongdoer) because of her female gender and white race, Mr. Royal informed Ms. Caputo that he was considering seeking other employment elsewhere.  Ms. Caputo stated that she could not give Mr. Royal a reference also informed Mr. Royal that he was doing well and that he should "not go getting another job" and to "just wait and see how things turned out."

60.     The USPTO and DOC officials, especially Penny Pritzker, Michelle K. Lee, Anne Mendez and Joseph Thomas, conspired and aided and abetted each other in secret to bring about the demise and retaliatory termination of Gregory Allen Royal, as well as to prevent Mr. Royal from ever obtaining future employment with any other federal agency.

61.     The USPTO and DOC officials did not treat and subject the white and Asian patent examiners, i.e. Violeta Prieto, Vincent Wall, and Wei Victor Chan, who engaged in prohibited acts of workplace violence, workplace bullying, workplace harassment, and hostile environment with such malice, retribution, and hostility as the officials treat Mr. Royal because of his gender and race.  The officials protected the white and Asian wrongdoers and simultaneously attacked, punished, the black male victim of the workplace bullying an workplace violence by white and Asian employees.

62.     The USPTO and DOC officials' discriminatory/retaliatory treatment caused Mr. Royal to suffer from anxiety/panic attacks and depression.

Plaintiff requests a trial by jury.

63.     The USPTO and DOC officials conspired and aided and abetted each other to bring

about, in retaliation, Mr. Royal's termination and to force Mr. Royal into homelessness and

complete financial loss and livelihood.

64.     The USPTO and DOC officials plotted to damage Mr. Royal so severely, mentally,

emotionally, physically, and financially, so that Mr. Royal would be so far injured and

weakened that he would not be able to financially afford legal representation in this matter but

also to force Mr. Royal into homelessness so that the USPTO and DOC could escape and evade

liability for the corruption, retaliation, and discrimination against Mr. Royal because of his

gender and race as a black male.

65.     The USPTO and DOC forced Mr. Royal to receive mental counseling because of his

depression, insomnia, anxiety, severe stress, etc.

65.     Although it was USPTO's and DOC's race-based and gender-based and/or retaliation-

based harassment and hostile environment that caused Ms. Freedman to become depressed and

incapable of performing his job duties at his normal and optimal, high level, and, in November

2014 the USPTO and DOC terminated Mr. Royal from the federal service.

### Count One

(Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e.
et seq.)

66.     The foregoing paragraphs are realleged and incorporated by reference herein.

67.     The paragraphs of the Report of Incident (ROI) in Agency No. 14-56-22 and EEOC No.

570-2015-00842X are realleged and incorporated by reference herein.

68.     The Defendant's conduct as alleged at length herein constitutes discrimination based on

race in violation of Title VII.  The stated reasons for the Defendant's conduct were not the true

reasons, but instead were pretext to hide the Defendant's discriminatory animus.

Plaintiff requests a trial by jury.

## Count Two

(Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.)

69.     The foregoing paragraphs are realleged and incorporated by reference herein.

70.     The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

## Count Three

(Reprisal for Engaging in Protected Activities)

71.     The foregoing paragraphs are realleged and incorporated by reference herein.

72.     The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by Title VII and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus.

## Count Four

(Hostile and Abusive Working Environment)

73.     The foregoing paragraphs are realleged and incorporated by reference herein.

74.     The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

## Count Five

(Harassment)

75.     The foregoing paragraphs are realleged and incorporated by reference herein.

18

Plaintiff requests a trial by jury.

76. The Defendant's conduct as alleged above constitutes harassment in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

## Count Six

(Civil Rights Violation under Section 1983)

77. The foregoing paragraphs are realleged and incorporated by reference herein.

78. The Federal Protective Services (FPS), directed by Jeh Johnson, who directed his agents to allegedly investigate Mr. Royal's complaints of workplace violence, criminal assault and battery, and harassment, etc., acting under color of law as Federal Protective Service agents, aided and abetted the USPTO and DOC in concealing violations, i.e., criminal assault and battery, inside the federal workplace, by misleading Mr. Royal into the reasonable belief that the FPS was investigating his complaints, via FPS agent Corey Johnson, but the FPS has concealed and hid its findings from Mr. Royal and has not notified Mr. Royal that the FPS completed any investigation.

79. The Defendant FPS acted under color of law solely to defraud and cheat Mr. Royal from Mr. Royal filing any causes of actions against the white and Asian wrongdoers, Violeta Prieto and Wei Victor Chan, who engaged in criminal assault and battery inside the federal workplace, including Ms. Prieto bringing multiple illegal and dangerous weapons that were prohibited on federal grounds inside the workplace to threaten Mr. Royal.

80. The Defendant's, Federal Protective Services', conduct as alleged above constitutes harassment in violation of 42 USC 1983. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

Plaintiff requests a trial by jury.

## **Count Seven**

### (Fraud via Civil Rights Violation under Section 1983)

77.    The foregoing paragraphs are realleged and incorporated by reference herein.

78.    The Office of EEO and Diversity (OEEOD), directed by Bismarck Myrick, who

directed his agents and attorneys Jessica Hughes and Lisa A. Kleine to allegedly investigate

Mr. Royal's complaints of workplace violence, acting under color of law as Federal Protective

Service agents, aided and abetted the USPTO and DOC in concealing violations, i.e., racial and

gender discrimination under both Federal and State laws,  hostile environment under both

Federal and State Laws, harassment under both Federal and State Laws, criminal assault and

battery, workplace bullying, Retaliation, inside the federal workplace, by misleading Mr. Royal

into the reasonable belief that the OEEIOD was investigating his complaints from 2013 to

2017—a systematic and continuous engagement of fraud and violations of section 1983, acting

under color of law in denying Mr. Royal is constitutional rights of equal protections under

federal law.

79.    The Defendant OEEOD acted under color of law solely to defraud and cheat Mr. Royal

from out of his legitimate Complaint of Discrimination based upon Race, Gender, Hostile

Environment, Harassment, and Retaliation by systematically and continuously, acting to aid

and abet USPTO and DOC officials in evading liability for violations of Title VII, and section

1983, and multiple common law violations of state laws and violations of federal laws.

80.    The Defendant OEEOD's14-56-22 acted solely to cheat and steal Mr. Royal legitimate

complaint away by refusing to ask meaningful questions aimed at discovering pertinent facts,

refusing to interview keys witnesses, and rewriting and tampering with Mr. Royal's sworn

affidavits (submitted via email and unlocked in Word).

Plaintiff requests a trial by jury.

81. The Defendant OEEOD refused to remove attorney Lisa A. Kliene, despite Mr. Royal showing and providing repeatedly that Ms. Kliene engaged in fraud, deceit, and dishonest acts, or acts engaged in defeating the fair administration of justice. Ms. Kliene acted to cheat and steal Mr. Royal's legitimate complaint and she acted to protect the USPTO and DOC.

82. Mr. Royal respectfully and requests maintains that the ROI be viewed by this honorable court with the highest degree of scrutiny because of the fraudulent conduct of the OEEOD.

83. The OEEOD also refused to address and investigate numerous other counts of discrimination, harassment, retaliation by the USPTO and DOC against Mr. Royal that were timely requested by Mr. Royal.

84. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

### Prayer for Relief

WHEREFORE, the Plaintiff requests that the court award him:

(a) A sum of $4,000,000.00 against each defendant in compensatory damages suffered because of the discrimination, hostile environment, harassment, retaliation, violations of civil and constitutional rights, and fraud;

(b) front pay (and back pay) at the GS-12 pay level (including pay increases) until he reaches the age of 65 years when he would have retired from federal service but for USPTO's, DOC's, FPS's, and OEEOD's official's discriminatory, retaliatory, or fraudulent, treatment of him;

(c) costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon;

(d) punitive damages to deter such future misconduct; and

(e) other damages and further relief as deemed just.

Plaintiff requests a trial by jury.

## JURY DEMAND

**The Plaintiff requests trial by jury.**

Respectfully submitted,

Gregory Allen Royal, pro se
Defendant
P.O. Box 28371
Austin, Texas 78755
(737)808-6700

Plaintiff requests a trial by jury.