# Exhibit 5

In the Matter of Gregory Royal

Case Number: 14-56-22
Agency: United States Patent and Trademark Office

## LISA CAPUTO
## WITNESS
## SUPPLEMENTAL AFFIDAVIT

On October 8, 2014, I was interviewed by the designated EEO Investigator, Lisa A. Kleine. Ms. Kleine explained to me that she was investigating allegations made by the Complainant that he was discriminated against in the form of a hostile work environment on the bases of sex (male) and race (African American/Black) since:

1. On or about December 13, 2013, Complainant alleges his complaints of hostile work environment were not taken seriously because he is a "six foot, medium built black man" and the alleged harasser is a white woman;

2. On or about November 07, 2013, he was physically assaulted by a white female co-worker;

3. On or about December 13, 2013 and continuing Complainant alleges that his harasser as been allowed to continue to violate USPTO policies on workplace safety and conduct by bringing several knives to the workplace and threatening Complainant.

4. On or about July 10, 2014, he alleges he was physically assaulted in the workplace by another Agency employee whereby other examiners see him as a "punching bag" to be slapped, and nothing will happen to them for doing so.

5. On or about August 14, 2014, during the Patent Examiner Efficiency Exam (Exam), Complainant he was further subjected to a hostile work environment because the Agency failed to take sufficient action to prevent him from being subject to a hostile work environment when:

    a. the Alleged Harasser was to be allowed to take the Exam in the same room and the same time as Complainant was, despite the fact that she was moved to a different "Lab" than he was on or about December 13, 2013;

    b. the Alleged Harasser failed to follow the Exam Proctor's instructions to remain silent by approaching the cubicle in front of the one where Complainant was seated and began a "loud conversation" with another employee, and she "did so solely to annoy [sic] Complainant's focus" and "under the cloak of being social," the Alleged Harasser sought to disturb Complainant's focus for the Exam; and

1

Initials _/L_

001851

    c. When the Exam Proctor spelled the name of an employee Complainant believes to be "Islamic" due to his name being "Mohammed," another employee was allowed to mock, not for the first time, those of the Islamic faith.

    6. On or about September 4, 2014, Complainant was removed from federal service during his probationary period, including being publicly escorted from the Agency's Alexandria, Virginia headquarters by Agency security guards.

II.    *Whether Complainant was discriminated against in the on the bases of sex (male) and race (African American/Black), and reprisal (retaliation for engaging in protected EEO activity) when on September 4, 2014, Complainant was removed from federal service during his probationary period.*

I was advised by Ms. Kleine of my rights as a witness/party in an EEO case, and was informed that my statement would and may be reviewed by the agency, the Office of Equal Employment Opportunity and Diversity and other interested parties, in the context of this claim. I have also been advised that there is no assurance of confidentiality as to the testimony given herein. I was also advised that I had the right to have a representative assist me in these proceedings, but chose not to.

The following represents a true and accurate summary/statement of the information that I provided to Ms. Kleine.

1.    Please state your full name and prior EEO activity. If prior EEO activity, please state the nature of such involvement.

Lisa Marie Caputo. I have had no prior EEO activity other than as an agency witness in this case.

2.    Prior to receiving notice from the investigator, when was the first time you were aware that Complainant had an EEO matter pending, and how did you obtain that information?

I was not aware of Mr. Royal's EEO case prior to receiving notice from the investigator. I was first contacted by the investigator on August 7, 2014.

3.    What role did you have, if any, in the decision to terminate the Complainant during his probationary period?

I was complainant's direct supervisor. The decision on whether to retain a probationary examiner is made by the Technology Center (TC) Directors, in this case Joseph Thomas.

4.    Did you any make any recommendations regarding retaining Complainant?

No, we discussed Mr. Royal's performance during the Individual Development Plan (IDP) reviews, but I did not make any recommendations regarding retaining complainant.

2

Initials  *lc*

5. Do you usually make recommendations?

No. This was the first time I supervised a probationary examiner who was terminated.

6. What kind of issues was he having?

Complainant did not show improvement in the number of work products submitted. We had weekly meetings to discuss increasing the number of work products and that complainant needed to show that he could consistently increase the number of work products he produced. We also had IDP meetings at the 6th month, the 8th month and the 11th month marks. Even though probationary examiners are not rated on production, complainant needed to demonstrate that he could increase his number of work products since he would be rated on production once he hit the one year mark. This is something I have explained to all my probationary examiners.

7. What did Complainant's production look like?

Complainant had access to his production calculator and we discussed it at the weekly meetings. Up until the 8th month mark, complainant was not consistently producing the number of work products that were expected of a probationary examiner at his level. The Director had expressed concern at the 8th month meeting that complainant had not ramped up his number of work products and the Director shared this concern with complainant and me. The Director indicated that complainant needed to increase his work product numbers. After that meeting, however, complainant's work product numbers decreased on the whole. In addition, his work product numbers were up and down, and we expect to see consistency in the work product produced.

8. What was his production supposed to be at?

Probationary examiners are not evaluated on production. At 8 months probationary examiners are typically expected to be at or around 80%.

9. Do you recall what he was at in the 8th month?

Complainant's cumulative production at the 8th month mark was 44%.

10. Was he offered any additional assistance?

Yes, the TC director, Mr. Thomas, indicated to complainant at the 8 month meeting that as his SPE, I was there to help, as well as the primary examiners. I was also meeting with him regularly.

11. Were you involved in the termination meeting?

No, I was not.

12. Did you have any other concerns that influenced the termination decision?

3

Initials _hu_

No.

13.  Were you involved in protocol with security being present for Complainant's termination?

No.

14.  Did you know about the termination decision?

Yes. I learned about the termination decision from Mr. Thomas.

After complainant's 11th month evaluation, the TC director decided to discharge complainant. I was asked me as his first line supervisor to gather the Performance Appraisal Plan (PAP) documents and Individual Development Plan (IDP) documents and to have those documents sent to HR.

15.  Mr. Royal has alleged that one of the reasons his production was low was because he was given cases that were overly complicated and required the assistance of other units. Please comment.

I am aware that complainant felt his caseload was overly complicated, but do not agree that this was a significant cause of his low number of work products produced. Every examiner gets randomly assigned cases in their art area. Sometimes they do get cases where it would be helpful to seek assistance of other art units. Once a bi-week, we meet with all probationary and newer examiners, and during the meeting we talk about topics that frequently come up. At the majority of our meetings we did discuss this issue, and that this is part of the job - to deal with cases that may not be a perfect fit for the art unit.

16.  Did he get any more of these types of cases than anyone else?

No.

17.  Did you know he was having difficulty with these types of cases?

Yes, complainant shared his concern, and I explained the process to him. Part of the process of examination is learning where things should be classified and who to contact for assistance with a search. This is how all examiners learn. It is a process of searching, consulting, and finding a good fit or locating good prior art for a case. It is part of the job and part of the learning experience. As mentioned above in response to question 15, one of the reasons that we have these meetings with probationary and newer examiners is to show that other examiners have the same experience and they can learn from each other.

18.  Were there any others involved in the termination decision?

I do not know.

001854

19. Did you have any involvement in the decisions regarding how prior instances were handled regarding Complainant?

No.

20. Did you have anything to do with how Complainant's vacation pay was processed after he was terminated?

No.

21. Did you discuss the contents of this testimony and/or receive any assistance from anyone in the preparation of your testimony? If yes, who?

No.

22. Did anyone from Human Resources (HR) or the Office of General Counsel (Legal) review your Affidavit or assist you with your responses before you signed and submitted your Affidavit to the Investigator? If the answer is yes, please provide the name, position and title of that individual(s) along with the Agency office to which s/he is assigned.

An attorney from the USPTO Office of General Law has reviewed my affidavit.

I, Lisa Caputo, have read the above statement/affidavit and being duly informed, and understanding the penalties of perjury; duly swear under oath that the statements made in this Affidavit are true and correct, and complete, to the best of my knowledge.

_____
Lisa Caputo, Witness/Affiant

Dated: 10/30/14

Subscribed and sworn to me this __30th__ day of __October__, 2014.

_____
Lisa A. Kleine, EEO investigator, or Notary Public

5

Initials _LC_