# Exhibit 10

In the Matter of Gregory Royal

Case Number: 14-56-22
Agency: United States Patent and Trademark Office

## STATEMENT OF KEVIN LEWIS
## RESPONSIBLE MANAGEMENT OFFICIAL

On July 1, 2014, I was interviewed by the designated EEO Investigator, Lisa A. Kleine. Ms. Kleine explained to me that she was investigating allegations made by the Complainant that he was discriminated against in the form of a hostile work environment on the bases of sex (male) and race (African American/Black) since:

> 1. On or about December 13, 2013, Complainant alleges his complaints of hostile work environment were not taken seriously because he is a "six foot, medium built black man" and the alleged harasser is a white woman;
>
> 2. On or about November 07, 2013, he was physically assaulted by a white female co-worker;
>
> 3. On or about December 13, 2013 and continuing Complainant alleges that his harasser as been allowed to continue to violate USPTO policies on workplace safety and conduct by bringing several knives to the workplace and threatening Complainant.

I was advised by Ms. Kleine of my rights as a witness/party in an EEO case, and was informed that my statement would and may be reviewed by the agency, the Office of Equal Employment Opportunity and Diversity and other interested parties, in the context of this claim. I have also been advised that there is no assurance of confidentiality as to the testimony given herein. I was also advised that I had the right to have a representative assist me in these proceedings, but chose not to.

The following represents a true and accurate summary/statement of the information that I provided to Ms. Kleine.

1. Please state your full name and identify your sex and race.

Kevin A. Lewis. Sex: Male. Race: African American.

2. Please indicate your current position, your grade and step, the name of your current supervisor, the length of time you have been in your current position, your Art Unit and Technology Center.

I am a Special Agent, USPTO. I have been in this position for 15 years. I am with the Office of Security and Safety. Joseph Burns is my supervisor.

3. Please describe your duties and responsibilities in your current position.

1

Initials KAL

001872

To monitor uniformed officers on contract, and to investigate administrative activities in the facility.

4. Do you know the Complainant in this matter Gregory Royal, and if so, explain how you know him.

I know him from his emails and a conversation we have had about him being harassed. The first time we met in person, based on his emails, was when he said I did the security briefing for the class. I don't remember the class and we have never met in person that I recall. I have spoken to him over the phone and via email.

5. Do you know the Complainant's race? How do you know his race?

I know he is African American. That is based off his emails and the information he has sent me.

6. Do you know Complainant's sex, and if so, how do you know his sex?

I know that he is male from talking to him, his emails and his first name.

7. What do you know about the incident that happened involving Complainant on December 13, 2013?

The officers, when they fill out an incident report, they brief me. The USPTO officers who responded, they make a copy of a report and they would have briefed me. Based on the complaint that was made, I advised them to call FPS (Federal Protective Service). A copy of the incident log is attached as Exhibit "1".

8. Regarding the incident log that has been attached as Exhibit "1", what is blacked out?

Other things on the log that are not pertaining to Mr. Royal.

9. Tell me what you know about the December 13, 2013 incident.

Based on information I received, Mr. Royal called and said he was having a problem with another employee and what she had weapons. USPTO Uniformed Services responded with three officers, Marquez, McLaughlin, Lt. Clark. The 911 calls go to the Security Command Center (SCC). We find out what the emergency is, whether it is medical, fire, etc and send the resources need.

The three officers were dispatched to the location. They interviewed Mr. Royal. He mentioned knives involved and they reached out to FPS to respond because there appeared to be weapons involved.

10. Did the offices see the knives before they called FPS?

2

Initials _KAS_

I don't know – see report which is attached as Exhibit 2. The report indicated he said that the knives were kept in the drawer.

11. Is it standard procedure to call FPS under these circumstances?

Yes, for any kind of potential criminal activity, they are called. If there is something that would cross over into criminal activity, the officers are to call FPS.

12. So the Federal Protective Service was called, who responds?

Inspector Dearborn and Inspector Williams. They are not on site.

13. What happens?

They interview Mr. Royal and Ms. Prieto. Based on the report, they instructed Officer McLaughlin to take her and knives and escort to her to the lobby to take knives to her car.

14. Was that standard procedure with knives on premises?

Not if they are illegal no.

15. What constitutes an illegal knife?

At USPTO we have knives throughout the facility in kitchens and pantries for cutting cake, etc. In this particular case, the thing they said she used the knives for was to cut food, cut up fruit. They concluded there was nothing intentional that she was going to do with the knives. It was their call (FPS) as to whether there was a criminal violation.

16. Have there been prior problems with weapons on USPTO property?

I recall a single incident when an employee was arrested for bringing knives into facility. We got a complaint from another employee that employee in question was selling knives on the premises. These were hunting knives, long bowie knives, not kitchen knives. It was a very different situation. It went to federal court. The judge threw it out. The judge ordered the return of the knives to individual and he returned to work. He has not brought knives on the premises since.

17. What, if anything else happened with respect to Mr. Royal's situation?

It was referred to Employee Relations to follow up, even though nothing criminal occurred. It was an administrative follow up with Employee Relations. All information was forwarded to Employee Relations. All incidents from our office are forwarded to Employee Relations if it involves employees. When it involves 2 employees, it is standard protocol to forward the matter to Employee Relations.

18. Was there anything about the way this incident was handled that did not follow protocol?

3

Initials _Kae_

001874

No. Pretty much everything followed protocol. The Officers sent, FPS was called, the incident involved employees so it was referred to Employee Relations.

19. Did the race of either party affect how this matter was handled?

No.

20. Did the sex of parties effect how this matter was handled?

No.

21. Did FPS make a report?

Yes. But that report is not shared with us.

22. How would one get a copy of that report?

You would probably have to contact the officers involved to see if you could get the report.

23. Have you had any other interactions with Mr. Royal?

Nothing other than emails he sent in reference to this incident.

24. Was he provided with a copy of the incident report?

Yes. He sent me an email later and asked that I look at video for incident that took place in the basement area on April 29, 2014. He wanted me to look at the video.

I looked at the video. There is a camera down there. All the cameras are in dark domes. The camera did not show anything relevant. The information was shared with Employee Relations and someone from our EEO office was copied on the email - Jennifer Ware and Michael Salley.

25. Is that standard procedure for you to report these things and forward them to Employee Relations?

Employee Relations is responsible for investigating, as long as there is not a criminal violation. We are involved if there is a criminal issue, and then we reach out to FPS.

26. Have you had any contact with Ms. Prieto?

No she has never contacted me.

27. Is there anything else that you think I should know about this incident?

According to Mr. Royal, they were witnesses. The witnesses were interviewed. FPS did speak with witnesses. That gives validity to fact that FPS did not find a criminal violation.

4

Initials _KAR_

28. Did anyone from Human Resources (HR) or the Office of General Counsel (Legal) review your Affidavit or assist you with your responses before you signed and submitted your Affidavit to the Investigator? If the answer is yes, please provide the name, position and title of that individual(s) along with the Agency office to which s/he is assigned.

ANSWER:

No.

## OATH

I, Kevin Lewis, have read the above statement/affidavit and being duly informed, and understanding the penalties of perjury; duly swear under oath that the statements made in this Affidavit are true and correct, and complete, to the best of my knowledge.

Dated: 7/21/14

Kevin Lewis, Witness/Affiant

Subscribed and sworn to me this 21st day of July, 2014.

Lisa A. Kleine, EEO investigator, or Notary Public

OPERATIONAL LOG

ADDRESS:   DATE:

USPTO   December 13, 2013
December 14, 2013



3



| 1004 | SCC Operator received a call on the "911 Calls Only" phone from the office of Gregory Royal (CPL, 66024, ext. 03168) in reference to disturbance between employees. Officer Marquez was immediately dispatched to this location. Task completed at 1300. SEE INCIDENT REPORT (KH) |

Exhibit "2"

## SecTek, Inc. — INCIDENT REPORT

PAGE 1 OF 1 PAGES

| Summary of Incident/Complaint: Employee Dispute | | Location of Incident/Complaint: Carlyle Place | |
|---|---|---|---|
| Date/Hour Occurred: September 2013- Present | Date/Hour Reported: December 13, 2013 1005 hours | | Report Number Assigned: N/A |

### INDIVIDUALS INVOLVED

| | | |
|---|---|---|
| Complainant Name: Gregory Royal (6024) | Employer: USPTO employee | Contact Number: 571-270-3168 |
| Victim Name: N/A | Employer: N/A | Contact Number: N/A |
| Subject/Suspect Name: Violeta Prieta (6024) | Employer: USPTO employee | Contact Number: unknown |
| Witness Name: N/A | Employer: N/A | Contact Number: N/A |

### ADDITIONAL DATA

Code: V=Victim S=Suspect SB=Subject W=Witness O=Other

| Code | Name | Employer | Contact Number |
|---|---|---|---|
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |

### NARRATIVE OF INCIDENT/COMPLAINT
Includes: Who, What, When, Where, Why & How

On Friday December 13, 2013, at approximately 1005 hours, SCC operators dispatched Officer Marquez to Carlyle Place lobby in response to an incident between employees. Officer McLaughlin was also dispatched to assist. FPS was contacted by SCC operators at 1025 hours. Lt. Clark arrived at Carlyle Place lobby at 1030 hours. FPS inspectors Dearborn and JD Williams arrived onsite at approximately 1106 hours. FPS Inspectors responded to the 6th floor and interviewed USPTO employee Mr. Gregory Royal who called in the complaint. According to Mr. Royal he has been in the USPTO academy for about 4 months with other Patent trainees. Mr. Royal stated that every time that he raised his hand to ask or answer a question USPTO employee Violeta Prieta always interrupts him and tells him to shut up when he speaks. According to Mr. Royal this takes place all the time. Mr. Royal also stated that Ms. Prieta keeps several knives in her desk that are longer than 2.5 inches. The Director of Patent training, Gary Jones (MDW, 223, ext. 27400) and the Deputy Director of Patent training, Deborah Reynolds (MDW, 220, ext. 20734) arrived onsite at 1110 hours. FPS Inspectors also interviewed Ms. Prieta. After interviewing Ms. Prieta FPS instructed Officer McLaughlin to take Ms. Prieta's knives, escort her to the lobby so that Ms. Prieta to take those knives to her car. FPS interviewed Patricia Reddington (CP, 6024, ext. 29242), Md Ramman and Didarula Malumder all classmates of both employees and they all confirmed that Ms. Prieta has been singling Mr. Royal out and bullying him. Patent training supervisor Matthew Such (CP, 6024, ext. 28895) arrived onsite at 1150 hours. Inspectors Dearborn and Williams concluded that it was a non-violent disagreement and called Mr. Royal and Ms. Prieta to the same office and informed them that they would have to find a way to get along with each other. Ms. Prieta was also warned against bringing knives in USPTO space. FPS departed the site at approximately 1215 hours. No further information to report at this time.

| | |
|---|---|
| Investigated by (Printed First & Last Name):<br>Officer Marquez<br>Signature: | Date:<br>December 13, 2013 |
| Prepared by (Printed First & Last Name):<br>Officer Marquez<br>Signature: | Date:<br>December 13, 2013 |
| **APPROVALS** | |
| Supervisor (Printed First & Last Name):<br>Lt. Clark<br>Signature: | Date:<br>December 13, 2013 |
| Manager (Printed First & Last Name):<br>Signature: | Date: |

SecTek Form HR-60 (Rev 0)   SecTek, Inc. Confidential and Proprietary
07/28/05                    (Unauthorized copying and distribution strictly prohibited)

001880