# Exhibit 12

### In the Matter of Gregory Royal

### Case Number: 14-56-22
### Agency: United States Patent and Trademark Office

### STATEMENT OF JENNIFER WARE
### RESPONSIBLE MANAGEMENT OFFICIAL

On June 30, 2014, I was interviewed by the designated EEO Investigator, Lisa A. Kleine. Ms. Kleine explained to me that she was investigating allegations made by the Complainant that he was discriminated against in the form of a hostile work environment on the bases of sex (male) and race (African American/Black) since:

*1.     On or about December 13, 2013, Complainant alleges his complaints of hostile work environment were not taken seriously because he is a "six foot, medium built black man" and the alleged harasser is a white woman;*

*2.     On or about November 07, 2013, he was physically assaulted by a white female co-worker;*

*3.     On or about December 13, 2013 and continuing Complainant alleges that his harasser as been allowed to continue to violate USPTO policies on workplace safety and conduct by bringing several knives to the workplace and threatening Complainant.*

I was advised by Ms. Kleine of my rights as a witness/party in an EEO case, and was informed that my statement would and may be reviewed by the agency, the Office of Equal Employment Opportunity and Diversity and other interested parties, in the context of this claim. I have also been advised that there is no assurance of confidentiality as to the testimony given herein. I was also advised that I had the right to have a representative assist me in these proceedings, but chose not to.

The following represents a true and accurate summary/statement of the information that I provided to Ms. Kleine.

1.     Please state your full name and identify your sex and race.

Jennifer E. Ware. Sex: Female. Race: White.

2.     Please indicate your current position, your grade and step, the name of your current supervisor, the length of time you have been in your current position, your Art Unit and Technology Center.

Supervisory Human Relations Specialist, Department of Human Resources, Employee Relations Division. I am a GS-14 Step 3, and my supervisor is Anne T. Mendez. I have been in this position since March 2012. I have been with USPTO for 10 ½ years.

1

Initials _____

3.      Please describe your duties and responsibilities in your current position.

I supervise a team of 5 ER (Employee Relations) specialists. Three of them are with the awards program. I review performance and conduct files, give advice on cases to managers and subordinates, and assign work as needed. I meet with executives, managers and supervisors in other business units regarding ER issues. I review harassment investigations and OIG complaint reports. I help write AAOs, and provide ER training for managers and supervisors. I work on administrative investigations. I also run data reports for business unit managers and supervisors.

4.      Do you know the Complainant in this matter Gregory Royal, and if so, explain how you know him.

No, I did not know Complainant personally. I know him now from this matter. I met Complainant for the first time on December 13, 2013, when I interviewed him following his call to security regarding a co-worker with knives.

5.      Do you know the Complainant's race and if so, how do you know his race?

Yes, based on personal observation when I met him.

6.      Do you know Complainant's sex, and if so, how do you know his sex?

Yes, based on personal observation when I met him, and also based on his name when he called me on the phone.

7.      Describe your role in mediating co-worker disputes such as the on raised by Complainant in his Complaint?

If an employee makes a hostile work environment or harassment claim against another co-worker, ER investigates the complaint. We interview the Complainant first, then any witnesses, and the employee the complaint was made against last. We investigate the claims to determine the facts. If our investigation reveals possible misconduct, we start an administrative investigation. I interviewed Complainant because the specialist who normally services Complainant's area was out of the office.

8.      When did you first become aware that Complainant was having difficulty with a co-worker?

When Complainant came to my office on December 13, 2013. He called me first to ask if he could come talk to me. I do not recall exactly when the call took place. Complainant indicated he had a complaint about a co-worker.

9.      What is the normal chain of command for an employee to take when she or he has trouble with a co-worker?

2

Initials _____

Often an employee will go to his or her supervisor first. If there is alleged harassment, the supervisor either calls ER to report it, or will have the employee contact ER directly. Employees can contact ER directly without going through their supervisor. We also receive harassment and hostile work environment complaints from the Office of Equal Employment Opportunity Division (OEEOD) when an employee reports to that office first.

10.    Are harassment and hostile work environment complaints treated differently than discrimination complaints?

Yes, ER investigates harassment and hostile work environment claims. OEEOD handles discrimination complaints.

11.    What is the directive for the authority that your office investigates harassment and hostile work environment complaints?

The directive for our authority is the USPTO's Anti-Harassment Policy and Complaint Procedure Policy (AAO 202-955, which is attached as Exhibit 1). It states that all reports of prohibited harassment are to be investigated either by the first of second level supervisor or Employee Relations.

12.    How is that information conveyed to probationary employees?

I do not know.

13.    Did supervisor call in this instance?

No, the employee contacted ER directly.

14.    Describe sequence of events when Complainant came to talk to you.

I asked Complainant to describe what happened. He indicated that a co-worker, Ms. Violeta Prieto, was harassing him. He said she physically assaulted him. He also indicated that she interrupted him all the time, she was rude, she picked her nose and ate it, she pulled her hair and ate it, and that she had knives at work. He said she was trying to make him look stupid. I spent a lot of time trying to keep him focused on the events that brought him to my office because he frequently went off topic.

I asked Complainant to tell me about the alleged physical assault. He indicated that he was sitting in the back of room, and Ms. Prieto was talking when Complainant apparently interrupted her. Complainant said Ms. Prieto walked back to where he was sitting, started waving her hands around, and knocked a pen out of his hand. He described this as a physical assault.

Complainant also stated that Ms. Prieto talks on her cell phone during class. Complainant stated that he thought Ms. Prieto had mental issues. Complainant said Ms. Prieto was harassing him because she was not used to an educated, polite black man. He claimed these events only happened when the trainer was out of room.

3

Initials _____

15.    Did you take any notes when you spoke to him?

Yes, I did take notes and they are in the attached interview summary.

16.    Is this interview summary kept in his file?

The notes are kept in Complainant's ER file.

17.    Does he have a file in Employee Relations?

Yes.

18.    Is his Employee Relations file at all connected to his personnel file?

No.

19.    If he were to have any future disciplinary actions, would this be accessed?

No, Complainant's ER file would not be accessed in a disciplinary action because his harassment file is not related to the disciplinary process.

20.    Would it ever have an effect on his performance evaluations?

No.

21.    Can his supervisors see his Employee Relations file?

No.

22.    Did you talk to Ms. Prieto?

Yes.

23.    When?

December 18, 2013. Ms. Prieto came to my office to file a complaint against Complainant.

24.    What was the substance of her complaint?

Ms. Prieto stated that they had problems getting along since they each started at agency. Ms. Prieto said Complainant talks loudly in class, he interrupts all the time, he likes to show off his knowledge due to his law degree. She said Complainant dominates the conversations, talks about matters not relevant to what they are discussing in class, and that it is all about him.

4

Initials _____

001781

Ms. Prieto felt that Complainant was trying to make her life miserable. She said he spent all of his time documenting everything going on in class. Ms. Prieto told me that she used knives to cut fruit, and that Complainant humiliated her in front of the class when he called FPS and FPS came to the lab. Ms. Prieto also questioned why she was moved and not Complainant.

25.    Did you have any other interactions with Mr. Royal regarding this case?

Yes. OPM had an issue with Complainant's suitability paperwork because he did not complete it. Complainant thought OPM's inquiry was in retaliation for his ER complaint. Mr. Royal sent me an e-mail on January 27, 2014 stating that he had been contacted by a special investigator regarding his background investigation, that it had been re-opened, and forwarded the email trail to me. I replied that OPM's decision has nothing to do with ER, and that I did not know why OPM reopened his background investigation.

26.    What has your role regarding this issue?

I responded to Complainant when he emailed me about the OPM contact. I had no role in OPM's background investigation.

27.    Has it been resolved?

I do not know.

28.    Have you had any other reports or contact with Mr. Royal?

Complainant has requested the FPS report, and I understand he has made repeated requests to USPTO Security about the report. I told Complainant that he needed to contact FPS directly and that the USPTO does not have the FPS report. On April 25, 2014, Complainant contacted me again about a run in with Ms. Prieto. I spoke with him on the phone this time. He wanted security to review the cameras to find the incident.

29.    What did he report to you?

Complainant said he and Ms. Prieto were in a class lecture together and as he was walking out, Ms. Prieto was standing in the concourse. Complainant said that as he was walking with friends down the hall, Ms. Prieto came up behind them, and passed between Complainant and the wall. He said he had to move his body and brief case as she rushed passed him, so she would not hit him. The email he sent me is attached .

30.    Did you provide him with any advice regarding this incident?

I told him that he needed to avoid her and focus on his job. I suggested that he stay away from her.

31.    Did you talk with her?

5

Initials _____

No, not after the April 25, 2014 incident.

32.     Did the fact that you had a black man, complaining about the actions of a white woman, at all affect how you dealt with situation?

No.

33.     Why not?

Because we investigate all complaints of alleged harassment. Employees have a right to work in a safe environment. Employees have right to be free of a hostile work environment. Race was not a factor in my handling of Complainant's situation.

34.     How are having problems with a co-worker different than being harassed by a co-worker?  What distinguishes two situations?

The facts and our investigation distinguish harassment from employee conflicts. When Complainant said he was physically assaulted, we have zero tolerance for violence in work place and investigated. Rushing past someone in the hall is not the same.

35.     Was there any indication that Ms. Prieto had broken any USPTO rules regarding knives?

Yes, because FPS told Ms. Prieto she had to remove the knives, and escorted her to her car to do so.

36.     When knife issues have come up in the past, how they have been handled?

We took adverse action against an employee for bringing very large hunting knives - - non kitchen utensils - - to the USPTO campus. Then the employee was suspended for a significant amount of time.

37.     If FPS had issued a summons, would that have triggered anything on your behalf?

If FPS issued a summons against an employee, I would investigate and determine next steps based on the facts. No summons was issued regarding Ms. Prieto.

38.     Was Ms. Prieto treated differently in the December 13, 2013 incident because she is female?

No.

39.     What, if anything, do you know about any recommended disciplinary action resulting from the December 13, 2013 incident?

ER advised the Patent Training Academy (PTA) to discharge both employees, who were probationary at the time, and the PTA said no.

6

Initials

40.    Who said no?

I understand it was the Director of the PTA.

41.    Had the Complainant ever raised the issue that he felt he was being subjected to a hostile work environment?

Yes, when he came to talk to me the first time he said he was being harassed, subjected to a hostile work environment and had been physically assaulted.

43.    Did he give you any indication that he believed the harassment was based on race or sex?

Yes, he said he was being harassed because Ms. Prieto was not used to a polite, educated black man.

44.    Do you have any reason to believe that his allegations of harassment and being subjected to a hostile work environment were treated any differently due to his race or sex or the fact that as a male he made an allegation of a hostile work environment and/or harassment against a female?

No.

45.    Why not?

Because I am unaware of any facts showing race or sex were a factor in ER's actions.

46.    Did anyone from Human Resources (HR) or the Office of General Counsel (Legal) review your Affidavit or assist you with your responses before you signed and submitted your Affidavit to the Investigator? If the answer is yes, please provide the name, position and title of that individual(s) along with the Agency office to which s/he is assigned.

Rachel Damelin, Associate Counsel, Office of the General Counsel, Office of General Law.

7

Initials _____

001784

## OATH

I, Jennifer Ware, have read the above statement/affidavit and being duly informed, and understanding the penalties of perjury; duly swear under oath that the statements made in this Affidavit are true and correct, and complete, to the best of my knowledge.

Dated: 7/25/2014

_Jennifer Ware_, Witness/Affiant

Subscribed and sworn to me this _25th_ day of _July_ , 2014.

Lisa A. Kleine, EEO investigator, or Notary Public

8

Initials _____

001785

## GREGORY ROYAL INTERVIEW SUMMARY
December 13, 2013

Gregory Royal came to my office to discuss Violeta Prieto's behavior in the training academy. Mr. Royal said he has Master's in Intellectual Property and a JD in patent prosecution. NOTE: the conversation with Mr. Royal ran off into various directions, and it was difficult trying to keep him focused on his harassment allegation.

Mr. Royal said the issues started last week with Ms. Prieto and Vincent Wall because they do not respect his knowledge of patent law. When they were in class, Mr. Wall harassed Mr. Royal for seven days because he did the wrong search from what his SPE gave him. Mr. Royal thought Mr. Wall was trying to make him look inept and stupid. Mr. Royal told Mr. Wall to stop harassing him. Mr. Wall also interrupts Mr. Royal when he is asking questions in class and asks his own question.

Mr. Royal also accused Mr. Wall of picking on the Muslim students in the class – asking them how he can join their religion. The Muslim students tell him he doesn't have to join; just believe. Mr. Royal showed me where he notated Mr. Wall's comments in his notebook. The next day, Mr. Wall allegedly told the Muslim students that he wanted to go into their prayer room to pray with them. They asked why he would want to pray with them when he didn't believe, to which Mr. Wall responded because God was there.

Mr. Royal says he feels bullied by Ms. Prieto and Mr. Wall, and went to the class SPE, Matthew Such. Mr. Such told Mr. Wall to leave Mr. Royal alone, which he did, however Mr. Royal claims that is when Mr. Wall started picking on the Muslim students.

Mr. Royal said Ms. Prieto had 6" knives in her desk – one was a butter knife, the other two were meat knives. FPS saw them when they showed up to talk to him today. Mr. Royal said he is concerned Ms. Prieto has knives and acts the way she does. At one point, Mr. Wall told Ms. Prieto "I don't want to mess with you; you have knives." They were told on day one that they were not allowed to have knives on Federal property.

Mr. Royal said Ms. Prieto will turn around and tell him to shut up during class when he is asking a question, then start talking on her cell phone. Mr. Royal also claimed that Ms. Prieto will pick her nose and eat the "boogers" and that she pulls out her hair and places it in a pile on her desk. Mr. Royal says he is concerned about Ms. Prieto's mental health.

On November 7, 2013, Mr. Royal confronted Mr. Wall about his treatment towards him and asked him repeatedly if he was trying to start trouble. Mr. Royal said this conversation was witness by Detar Mazural (sp?), who may have also witnessed Mr. Wall's comments to the Muslim students.

Mr. Royal claims that Mr. Wall and Ms. Prieto only act up in class when the trainer is out of the room. Mr. Royal also said Ms. Prieto was physically confrontational. On one occasion, she came up to Mr. Royal and stood closely face to face. Mr. Royal reiterated that he is worried about her mental state.

When he went back to his desk after talking to FPS, he noticed that Ms. Prieto's desk had been cleared off and assumed she had been moved to a different class.

## VIOLETA PRIETO INTERVIEW SUMMARY
December 18, 2013

Violeta Prieto called me to ask if she could come to my office to talk to me about another examiner harassing her.

Ms. Prieto said that she has been having problems with Gregory Royal since October 7, 2013. Mr. Royal was talking very loud in class, trying to dominate the conversation. Mr. Royal always insists he's right and even argues with the trainer. Ms. Prieto made a remark to Mr. Royal about his behavior and they started to argue. Mr. Royal has a law degree and tries to show how much he knows than the other examiners.

Ms. Prieto admitted to interrupting Mr. Royal during class because he was not letting the training answer anyone's questions. Matt Such, the trainer, talked to Ms. Prieto about her behavior and also reported it to Jessica Ward.

On December 13, Mr. Royal called FPS on Ms. Prieto because she had knives in her desk. Ms. Prieto says they were small knives she uses to cut pomegranates. Ms. Prieto feels Mr. Royal called FPS to humiliate her in front of the class. The FPS officer told them both that they needed to figure out a way to get along for the new two weeks, which is when they are transferred to their TCs. After FPS talked to her, she returned to desk and was quickly moved to another class. Ms. Prieto didn't question the move, and was told she was being moved so she wouldn't have to deal with Mr. Royal anymore. However, after thinking about it over the weekend, she is now questioning why she was moved instead of Mr. Royal. Ms. Prieto said she talked to Jessica Ward and Matt Such about why she was moved, and they said it was a quick decision made by higher ups and it was not an indication that she did anything wrong.

Ms. Prieto is very bothered by Mr. Royal's behavior towards her and feels he is trying to make her life miserable. Ms. Prieto says Mr. Royal spends a lot of time documenting everything that happens in class. Ms. Prieto also said that the trainers have told her she asks very good questions and that she is processing what they are teaching well. Ms. Prieto says that Mr. Royal has reported other examiners, such as Vincent Wall, but feels that it bothers her more than her fellow classmates.

Ms. Prieto has had no interaction with Mr. Royal since she was moved.