# Exhibit 16

**In the Matter of Gregory Royal**

**Case Number: 14-56-22**
**Agency: United States Patent and Trademark Office**

**THIRD SUPPLEMENTAL AFFIDAVIT**
**COMPLAINANT GREGORY ROYAL**

On October 3 and October 17, 2014, I was interviewed by the designated EEO Investigator, Lisa A. Kleine. Ms. Kleine explained to me that she was investigating allegations made by the Complainant that he was discriminated against in the form of a hostile work environment on the bases of sex (male) and race (African American/Black) since:

1. On or about December 13, 2013, Complainant alleges his complaints of hostile work environment were not taken seriously because he is a "six foot, medium built black man" and the alleged harasser is a white woman;

2. On or about November 07, 2013, he was physically assaulted by a white female co-worker;

3. On or about December 13, 2013 and continuing Complainant alleges that his harasser as been allowed to continue to violate USPTO policies on workplace safety and conduct by bringing several knives to the workplace and threatening Complainant.

4. On or about July 10, 2014, he alleges he was physically assaulted in the workplace by another Agency employee whereby other examiners see him as a "punching bag" to be slapped, and nothing will happen to them for doing so.

5. On or about August 14, 2014, during the Patent Examiner Efficiency Exam (Exam), Complainant he was further subjected to a hostile work environment because the Agency failed to take sufficient action2 to prevent him from being subject to a hostile work environment when:

    a. the Alleged Harasser was to be allowed to take the Exam in the same room and the same time as Complainant was, despite the fact that she was moved to a different "Lab" than he was on or about December 13, 2013;

    b. the Alleged Harasser failed to follow the Exam Proctor's instructions to remain silent by approaching the cubicle in front of the one where Complainant was seated and began a "loud conversation" with another employee, and she "did so solely to annoy [sic] Complainant's focus" and "under the cloak of being social," the Alleged Harasser sought to disturb Complainant's focus for the Exam; and

    c. When the Exam Proctor spelled the name of an employee Complainant believes to be "Islamic" due to his name being "Mohammed," another employee was allowed to mock, not for the first time, those of the Islamic faith.

1

Initials  /S/ GAR

6. On or about September 4, 2014, Complainant was removed from federal service during his probationary period, including being publicly escorted from the Agency's Alexandria, Virginia headquarters by Agency security guards.

II. Whether Complainant was discriminated against in the on the bases of sex (male) and race (African American/Black), and reprisal (retaliation for engaging in protected EEO activity) when on September 4, 2014, Complainant was removed from federal service during his probationary period.

III. Whether Complainant was discriminated against in the on the bases of sex (male) and race (African American/Black), and reprisal (retaliation for engaging in protected EEO activity) when the Agency withheld timely payment of his vacation benefits.

I was advised by Ms. Kleine of my rights as a witness/party in an EEO case, and was informed that my statement would and may be reviewed by the agency, the Office of Equal Employment Opportunity and Diversity and other interested parties, in the context of this claim. I have also been advised that there is no assurance of confidentiality as to the testimony given herein. I was also advised that I had the right to have a representative assist me in these proceedings, but chose not to. <u>I reserve the right to obtain legal representation at a subsequent time should I deem it necessary to protect my employment and constitutional rights in this matter.</u>

**I herein incorporate the text and content, every argument, every sentence, and every paragraph of each and every "ROI" sent and filed in the instant complaint as though fully set forth herein.**

**Investigator Lisa Kleine does not ask the simplest and basic questions that would allow me to provide further details herein. Therefore, the incorporation of any and all "ROI" documents herein.**

**I have been severely injured by the USPTO causing me to suffer Depression, Insomnia, Acid Reflux, Anxiety Disorder etc. These injuries have severely affected me and my ability to simply live a normal life. I have not had sufficient time with the sustained injuries to complete this affidavit appropriately. For example, the investigator Lisa Kleine asked me no questions about Wei "Victor" Chan's violent attack upon me on July 10, 2014.**

**The lack of averments about Mr. Chan's violent attack does not mean that I have waived my right to address the same in any proceeding. I will address Mr. Chan's Criminal Assault & Battery in any and all affidavits by the USPTO officials.**

**I have been a deadline that causes me to rush to get these affidavits into the USPTO by the end of day on December 23, 2014. Please see my ROI documents/emails for any Prior Consistent Statements.**

**This is an affidavit and I should be allowed to draft a complaint in any subsequent proceeding with additional affidavits.**

2

Initials /S/ *GAR*

001488

The following represents a true and accurate summary/statement of the information that I provided to Ms. Kleine.

1.  Please state your full name and identify your sex, race and prior EEO activity.

Gregory Allen Royal. Sex: Male. Race: African American. **I object to the fishing expedition related to prior EEO activity and I preserved my objection for any administrative hearing or civil proceeding.** I have this current EEO case pending against USPTO. Prior to the EEO case I have pending against the USPTO; I worked for a law firm, and filed a racial discrimination claim against the law firm. It was filed September 25, 2013. Matthew Such allowed me to use a fax machine to send this complaint. That matter is currently pending with the EEOC.

2.  Please describe all the facts and circumstances surrounding your termination from employment with USPTO on September 4, 2014.

For facts and circumstances prior to April 2014, see my original Complaint and first and second supplemental complaints. In April 2014, Violeta Prieto stalked me down the hallway in the Randolf Concourse in the USPTO (see my earlier Affidavits for details of this incident). I sent emails to Kevin Lewis, to Human Resources and to Jenifer Ware and got no response. I typed up a letter and hand delivered it to Joseph Thomas, the Director of TC 2800 about the incident. I gave it to his secretary. I was called into Mr. Thomas' office, and I shared with him the harassment I had been subjected to during my time at the Patent Training Academy and the physical attack issues. I told him Ms. Prieto was still continuing to harass me. I said the Patent Office needed to do something. He deliberately dismissed my concerns and said I should only talk to my supervisor about these things. I disagreed with him but I did go back and talk to Ms. Caputo about the April incident. This letter came about the same time as an evaluation I had gotten. It was my six month evaluation (or eight month evaluation). Ms. Caputo and I met with Joseph Thomas together and I again informed Ms. Prieto's harassment.

3.  Who gave you your sixth month evaluation?

Lisa Caputo, my SPE. Joe Thomas signed it as well.

4.  What did the sixth month evaluation say regarding your performance and conduct?

On the issue of ability to interact with others I was given a "2" rating. 3 would have been highest. Ms. Caputo said she did not give 3's. She indicated there are things everyone has room to work on all issues. She said she did not give 3's. She indicated the highest rating she would give would be 2's across. A "2" indicates meeting expectations. I received a "1" on production.

5.  What was your production at time?

40% or so, I am not certain. I was told that needed to be 95%. Production was the alleged issue at that time. But I did not and do not agree with that alleged requirement. I mentioned to Lisa Caputo at that time, that the Agency had allowed 4 months of continual harassment and a hostile

3

Initials  /S/ GAR

001489

environment during my time at the Patent Training Academy, and it was unreasonable to think it would not affect my productivity when in fact it had directly affected my productivity.

I said I felt marginalized and devalued. I said that I was the victim and that I should not be punished because PTO allowed people to violate its policies concerning violence in the workplace.

6.      What did she say to that?

Ms. Caputo always said, (at that time she was apologetic), "I'm sorry that it happened to you," and then she said, "Well, you are here now in the Tech Center, do you have any problems with any co-workers?" I said, "No, I did not have any problems with any of my immediate co-workers and but Violeta Prieto is still there." Joe Thomas had said he had nothing to do with the Training Academy. I was still in the Training Academy at the time Joe Thomas stated he had nothing to do with the Patent Training Academy. Violeta Prieto was also under Mr. Thomas. She was in TC 2800. See my ROI sent to the OEEOD related to Joseph Thomas in December 2014 as well as the ROI's informing the OEEOD that Mr. Thomas refused to authorize reasonable Other Time to adequately participate in this proceeding.

7.      Regarding the production issues, what assistance did Ms. Caputo offer and what if any assistance did you request in order to increase your production?

She said I should come to her before starting searches on cases so she could assign me to the correct person to get some assistance. I responded that I would, but questioned why I was getting cases that were problematic cases – cases which did not belong in our area. As a new examiner I should not have been given these problematic cases. 60% of my cases I had to call other Tech Centers for assistance and information. My peers John and Alex they were not getting cases that were nearly as complicated. I was in Art Classes 374 (Thermal Measurement and Testing) and 73 (Measurement and Testing). Alex is in class 73 (Measurement and Testing) and John is in class 73 (Measurement and Testing).

They put me in the harder of the two classes. Everyone admitted it. This was the super Art Unit.

8.      Did you have the background for that area?

No, I did not have the background. I expressed this to them, including Lisa Caputo, on day one. I told them I had taken thermodynamics twice and it was my lowest grade. I was told that was where there was a need. When I brought it to Lisa Caputo, she said she thought I had a chemical background.

9.      What your background in?

Electrical engineering and telecommunications. And I had 15 years of computer networking experience with State Farm.

10.     Did you request a transfer to a different Art Unit?

4

Initials  /S/ GAR

In the Training Academy I was in the Art Unit for Telecommunications. The first week, they took me out of that Art unit. I asked not to be moved. I don't know why I was being moved. Devona Faulk was my original SPE at the Patent Training Academy.

11. Did you request a transfer after you were place in your current unit?

I talked to Lisa Caputo. She said I should give it a shot here. She said it takes a while. Throughout the entire time I was at the Agency, they said not to worry about production, that it can take up to 2 years to learn this stuff. So a transfer was not pursued. All the rest of my scores were 2 on my sixth month review.

12. Was there any other assistance at that time that you requested?

I did not request any assistance with my production. I was already effectively using the senior examiners as well as the primary examiners. On-the-job training requires one to actually attempt to do the work. My problem was that the USPTO especially the PTA had not only maliciously and knowingly forced me to rot and fester inside a known extremely hostile environment wherein I was consistently faced severe harassment including threats of intimidation and violence as well as physical assault and battery, i.e. Criminal Assault and Battery, but also the USPTO and PTA thereafter violently attacked me, libeled and slandered me, and engaged in a systematic agency-wide aiding and abetting each other to oppress, damage, severely injure, and destroy me. Please see the ROI emails sent to, inter alia, the OEEOD, Secretary Penny Pritzker and Deputy Michelle K. Lee.

The USPTO violently attacked me on all fronts via malicious, intentional, deceitful, and known libelous statements. Each and every USPTO official from Employee Relations, Technology Center 2800, and Human Resources was absolutely aware that there were third-party witnesses who had witnessed the violent attacks that I had reported to the USPTO. These same USPTO officials, however, maliciously, intentionally, and purposely with a deceptive purpose refused to and failed to interview a single witness so to discriminate against me because of my gender and race as a Black/African American male. Abusing and fraudulently exploiting their titles, these same officials unethically carried out their racism, racist stereotypes, and racist animus against me to oppress, castrate, lynch (figuratively), and destroy me at the USPTO or any other federal agency. See the perjurious affidavits of these officials as well as my ROI's related to their affidavits.

The extreme hostile environment of the PTA and each and every USPTO official severely injured me into Depression, Insomnia, Anxiety Disorder, Acid Reflux as well as numerous other illnesses. The PTA's racial and gender discrimination had destroyed my ability to focus and to effectively perform my job because the USPTO had dehumanized me, devalued me, and reduced me to something less than a household pet, e.g., they had reduced to that of a Slave who could be physically slapped, smacked and beaten on and left without any recourse.

13. What happened next?

Following the sixth month meeting, I would go to Lisa Caputo with my cases.

14.    What happened?

She would point me to primary examiners for help.

15.    Did you go to the primary examiners?

Yes.

16.    Did you get the help you needed?

Yes. However, the help would include contacting various other departments, at least 2-3 technical areas for assistance. I was sent to people in other Art classes. That was 90% of the time. I also went to Gail Vervitsky. I was going to her from the beginning, as well as John Fitzgerald.

No one has responded to my initial complaints. I was talking to him about examining and the complexity of the cases I was being assigned. I also went to John Juba TQAS (Technical Quality assurance Specialist) for help many times. He would see the level of complexity and he would say, "I am at a loss." He often questioned why I had been assigned a case because he did not see the case belonging to my art class. Michael Obina is another person I would also go to for help. I was seeing these individuals both before and after my sixth month meeting.

I shared with John Juba that the continued harassment affected my continued ability to focus (June-July 2014 time frame). He suggested I see Cassandra Spyrou. She was a TC coordinator who sat outside Joe Thomas' office. I believe that she brought the issue to Mr. Thomas. I said I was hurting from the deliberate indifference of the PTO; no one was addressing my concerns. Everyone was deliberately ignoring my complaints about workplace violence.

17.    Were you seeing Ms. Prieto at this time?

Yes. When we were having Phase II training, we were in the same room.

18.    How often were you having Phase II training?

Since April about 2-3 weeks; we had multiple days of training. This was in the Randolph Concourse.

19.    June or July, 2014, how often were you seeing Ms. Prieto?

We were in the same building. Vincent Walls was there too. Mr. Wall would get into the same elevator and he would enter and stand smirking. They would both see me and be smirking because they knew they had gotten away with harassing me.

20.    What did Mr. Thomas do, if anything?

6

Initials  /S/ GAR

001492

Sandy (Cassandra Spyru) brought it to his attention and she came back to me with a message saying that nothing was going to happen. This was in July 2014.

I sent an email to Mr. Thomas on May 12, 2014. I also met with Mr. Thomas. Mr. Thomas stated, "[He does] not care about the workplace violence." He directed me to the EEO.

21. When is the next time you had a performance evaluation with your supervisor?

August, 2014. It was my eighth month evaluation.

22. Who is present?

Lisa Caputo.

23. Describe the substance of meeting.

After I had brought up the continued harassment, after I had brought it to various people, now I have a "1" for ability to work with others on my evaluation.

My production rating was a 1 as well.

24. What was your production rate at that time?

I don't recall my production rate at that time. I think it was 70%.

25. Did you get "1" anywhere else on your evaluation?

I can't recall, but if I did it was tied into production.

26. Describe the conversation you had with Lisa Caputo during the meeting you had regarding your 8th month review.

I said, "You cannot expect me to work and be harassed by Violeta Prieto. It is unfair to me." They cannot expect me to be productive. I said I believed I was being punished for reporting the workplace violence and harassment to other people. She said she was giving me a "1" because "I was letting the harassment and the attack affect my work." I said I did not agree. She said she would take it to Joe (Mr. Thomas).

I sent her a very long email following this meeting. I said what was happening to me was the same as what was happening during desegregation. This was like when black children had to be escorted into school. I included all of this in my email. I complained and I was being punished because I was complaining and reporting workplace violence, harassment, and discrimination against me because of my gender and race.

27. What the remedy you were seeking?

7

Initials /S/ GAR

That Violeta Prieto to be fired. She was supposed to be disciplined. If you violate the work place policies, they should take the highest punishment available. I wanted them both fired since they violated their own policies.

28. What happened after you sent the email?

Ms. Caputo and I had meeting with Joe Thomas.

29. Approximately when?

That week after the evaluation.

30. What happened at the meeting?

We discussed it. Ms. Caputo stated again that she was giving me the 1 because I was letting the harassment and workplace violence affect my work. Mr. Thomas agreed 100% with her. She was able to give me the 1 because I was letting the harassment affect my ability to do my work.

I said I did not agree and said I did not see a difference and that it was retaliation and punishment. Title VII recognizes that people are negatively affected by workplace violence etc. Mr. Thomas said he did not care about that. He directed me to the EEO.

I asked Ms. Caputo for a letter of recommendation to start looking for another job.

She contacted Mr. Thomas and she later told me "No." She said Mr. Thomas said she was not allowed to do it. She could not give me a letter of recommendation.

31. Did you ask why?

She said because Mr. Thomas said she could not do it.

32. Did anything else happen before the September termination?

I submitted several cases to Ms. Caputo to discuss with her. If we combine two prior art statements, we need to demonstrate a motivation to combine the two. Ms. Caputo called me to her office. She said my three cases did not have motivation statements. I said I did have a motivation statement for each 103 rejection. She simply moved on to the next case. I said I was certain I had the motivation statements in each case – and I can find the pages. She said she had been at the PTO about 17 years, and when first-year examiners tell her that they have motivation statements, ninety percent of the time they do not. In another case, she stated that the drawings between my prior art and the application were not the same. I showed her that they were exactly the same. And then I showed her each of the motivation statements for all cases. She then replied, "You just may restore my faith in first-year examiners Gregory."

The next bi-week, it happens again. She told me that she doubted that a prior art drawing and that of an instant application were identical. Again, I showed her that the prior art figure disclosed the identical drawing inside the instant application. During this discussion, Ms. Caputo stated that if I got to my 10th month and am at somewhere like 80%, not to go running out looking for another job. She told me that I would be okay. She said, "Don't try to get a new job,; wait and see." She said she was confident in the work I was doing. The feedback I was getting in August was all good. My production was climbing.

August 10, I wrote Commissioner Michele K. Lee, I wrote Secretary Pritzer at the Commerce Department and I wrote to the Chief of Staff at the Commerce Department. I also wrote to the Ombudsman at DHS and at Department of Commerce. I made a whistleblower claim because nothing was being done with my consistent complaints about the past extreme workplace violence, severe harassment, and physical assault and battery. I know if I had done any of the violent action that had been taken against me, I would have been fired.

33. What if any response did you get to these emails?

I did not get a response back. No one wrote back although it was delivered. I wrote back and cc'd Mr. Myrick and Mr. Thomas and Daniel Douglas, Head of Security and someone in HR at PTO.

34. What if anything happened?

Mr. Myrick wrote back. He said he has been asked by Ms. Lee to address the issues I had raised. He said he told her my complaints were being addressed.

I asked for a meeting with Ms. Caputo and Mr. Thomas prior to sending the emails, and the meeting was cancelled. There was not another one scheduled. So I sent more August 2014 emails. Then I had to take leave. When I came back, I get called into Mr. Thomas' office and terminated.

35. When was that?

September 4. Mr. Thomas called me into his office.

36. Who else was there?

Anne Mendez, Katherine Griffiths, Mr. Thomas, Douglas Daniels (Head of Security) and another uniformed security guard.

37. What happens during the meeting?

Mr. Thomas said, "I am letting you go. I do not have confidence in you that you can do the job." I said that during the eighth month review I was told I needed to have 95% or higher each bi-week. I indicated I had done that and now you are retaliating against me. I said he was going

9

Initials  /S/ GAR

against his word and told him I thought he was angry that I had put his name on the emails reporting him for not caring about the workplace violence, etc.

Mr. Thomas said no he was not angry, he wanted more on production. He then said he needed to leave, that he had a meeting and he left and walked out.

Mr. Daniels and HR said I had 10 minutes to get my stuff and leave. I had a lot of stuff and I also had stuff I needed to return. They would not let me return the fan that I had borrowed. They gave me 10 minutes. I took what I could and told Anne Mendez that I did not have my check. She said she would look into it.

I asked why I was being escorted out. They said it was standard procedure.

Anne Mendez said they would send the rest of my stuff but I still have not received it. I was embarrassed to be escorted out in front of everyone.

Other people who had been let go had not been escorted out. Other people were allowed to come back the next day and get their stuff. A number of others were allowed to come back and turn in badges. None of the others were there with HR.

38. Who were the others who you believe have been treated differently?

Agnes Dobowski – she did not have 95% and she has been retained. She was not in my Art unit but was in my Patent Training Academy class. Brian (or Chris) Kirby – he was struggling and he was also and retained. Both are white.

95% is not what we are graded on. It is double talk. It is the tool they used to retaliate against me and first-year examiners who report violations and wrongdoings.

39. Why do you believe your removal was in retaliation for your EEO activity?

Because I put Joe Thomas name on the email I sent around and I said he failed to address the issues with Violeta Prieto. He could have called Violeta Prieto in and talked with her and told her to not look at me or approach me when I was in group training. He did not do anything.

Technology Center Director Joseph Thomas consistently and maliciously remained deliberately indifferent to my reports of workplace violence and harassment, even when I specifically complained to him in our meetings. Each time I reported workplace violence, he told me that he did not care about the workplace violence. He then directed me to the EEO.

40. Who knew about your EEO activity and for each individual listed, how did they find out about your EEO activity?

The people I listed above were informed as part of the emails I sent regarding my EEO complaint, i.e. Joseph Thomas, Lisa Caputo, Jennifer Ware, etc.

Initials  /S/ GAR

001496

41. On what facts to you base your belief that your termination was due to discrimination based on your race?

See my statement above. The USPTO, DOC, and PTA—i.e. Employee Relations, Director Thomas, and Human Resources—violently attacked me by systematically aiding and abetting each other in an agency-wide conspiracy to libel, slander, and shed me in a false light while intentionally, knowingly, and purposely failing to interview any witnesses solely to protect the White and Asian wrongdoers who committed Criminal Assault and Battery upon me. Please see my ROI document sent to, inter alia, OEEOD in December 2014.

42. On what facts to your base your belief that your termination was due to discrimination based on your sex?

See my statement above.

43. What remedy are you seeking?

(1) Payment of **ONE MILLION AND THREE HUNDRED THOUSAND DOLLARS ($1,300,000.00 USD)** as compensatory damages for the direct and proximate caused personal injuries, such as: Depression, Anxiety Disorder, Insomnia etc.; Intentional Infliction of Emotional Distress, Mental Anguish, Acid Reflux, Headaches, Diarrhea, Chest Pains, and Neck Pains; loss of $300.000.00 Life Insurance Policy, loss of personal properties, and increased late fees and penalties and interests on all loans and debt etc.; and rejections/denials of job opportunities with other federal agencies as a result of the malicious and libelous September 9, 2014 Notice of Termination Letter and the illegal retaliatory firing (**subject to minimal negotiations**).
(2) Reinstatement of my job as a Patent Examiner under a Technology Center Director other than Joseph Thomas and a Supervisory Primary Examiner other than Lisa M. Caputo, i.e. in another Art Unit, e.g., Computer Network Architecture or Information Technology, without any "probationary-year period" or "alleged production requirement" during the following year.
(3) Repayment of all salaries and compensation benefits lost since the illegal retaliatory firing.
(4) Repayment/reinstatement of all retirement benefits lost since the illegal retaliatory firing.
(5) Repayment/reinstatement of all 401K contributions lost since the illegal retaliatory firing.
(6) Reinstatement of all vacation time exhausted because of the racial and gender discrimination, extreme hostile environment, systematic and agency-wide harassment, and workplace violence; and or director Joseph Thomas' malicious refusal to allot me Other Time to draft affidavits related to this complaint and or paid out as a result as the illegal retaliatory firing.
(7) Reinstatement of all personal sick leave (or administrative sick leave) exhausted because of the racial and gender discrimination, extreme hostile environment, systematic and agency-wide harassment, and workplace violence; and or director Joseph Thomas' malicious refusal to allot me Other Time to draft affidavits related to this complaint and or paid out as a result as the illegal retaliatory firing.

11

Initials  /S/ *GAR*

(8) Removal of the malicious and libelous September 9, 2014 Notice of Termination Letter from any Personnel, USPTO, DOC or OPM file, folder, or data storing means and or from any file, folder, or data storing means anywhere inside the federal government.

(9) Written letters of apologies from all officials (e.g., but not limited to, Anne Mendez, Joseph Thomas, Jennifer Ware, Jessica Rossi, Gary Jones, Deborah Reynolds, Matthew Such, Andre Fields, etc) of the USPTO, DOC, FPS (i.e. Investigators Dearborn and J.D. Williams), OPM (i.e. Sara Bell or the OPM investigator involved in the May 12, 2014 libel and slander) or any other federal agency, as well as affiliate (i.e. KeyPoint, Inc.'s background investigator and SekTek, Inc. Leadership) and or contracted company, e.g., KeyPoint, Inc. or SekTek, Inc. etc. involved in the instant complaint in any form or fashion.

(10) I have forever lost the experience to graduate from the Patent Training Academy with my friends and peer patent examiners from the September 9, 2014 Entering Class.

(11) Per the "No Tolerance Towards Workplace Violence Policy" and the promise of OEEOD Director Bismarck Myrick to the September 9, 2013 Entering Class, **immediate removal** of Violeta Prieto and Wei "Victor" Chan from the USPTO because of their physical assault and battery against me; **or, in the alternative**, Written Letters of Apologies from Ms. Prieto and Mr. Chan acknowledging their culpability but the alternative is **only based upon the USPTO and DOC's acceptance of item (1) above**.

(12) **Required diversity training** for all of the USPTO officials involved (Anne Mendez, Joseph Thomas, Jennifer Ware, Jessica Rossi, Gary Jones, Deborah Reynolds, Andre Fields, Matthew Such etc.) and Vincent Wall.

(13) **Required diversity training** for Violeta Prieto and Victor "Wei" Chan only if and is **only based upon the USPTO and DOC's acceptance of item (1) above**.

WITHOUT ANY SETTLEMENT PRIOR TO ANY ADMINISTRATIVE HEARING OR CIVIL PROCCEDING, I seek the following damages:

(14) Payment of **FOUR MILLION AND FIVE HUNDRED THOUSAND DOLLARS ($4,500,000.00 USD)** as compensatory damages for the direct and proximate caused personal injuries, such as: Depression, Anxiety Disorder, Insomnia etc.; Intentional Infliction of Emotional Distress, Mental Anguish, Acid Reflux, Headaches, Diarrhea, Chest Pains, and Neck Pains; loss of $300.000.00 Life Insurance Policy, loss of personal properties, and increased late fees and penalties and interests on all loans and debt etc.; rejections/denials of job opportunities with other federal agencies as a result of the malicious and libelous September 9, 2014 Notice of Termination Letter and the illegal retaliatory firing; and further as compensation lost for all salaries, compensation benefits, all retirement, all 401K contributions, vacation time, and sick leave that would have been (but for the stolen opportunity via the illegal firing and libelous Notice of Termination Letter) earned over a twenty-five (25) year career at the USPTO or other federal agencies.

(15) **Punitive damages** ordered against the DOC/USPTO sufficient **to deter** their future misconduct.

(16) And any and all attorney fees, expenses, costs, such other remedies deemed fair and proper.

Initials  /S/ GAR

44. You have indicated that you believe you were discriminated against on the basis your for race, sex and in retaliation for EEO activity when the Agency withheld timely payment of your vacation benefits. On what do you base your allegation?

Two weeks after I was terminated, I spoke to William Perry in HR. I asked him about my vacation days. The conversation took place September 12. I explained to him about what had happened regarding my termination  No one seemed to have the paperwork. I stated to him that I was wrongfully terminated. I asked him about vacation days not being included in my final paycheck. He said he did not have any knowledge of the status and told me to talk to Stephen Kearns at Agency.

45. What did you do at that point?

I left Mr. Kearns a voice mail inquiring about the vacation pay. I informed him I needed to pay my bills on various expenses and asked him to get back to me.

He did not return my phone call. The next pay period came, and I had still had not received my vacation pay so I called him back. On this call, I left a voice mail message indicating I did not have my check and telling him I believed it was retaliation by the Agency.

I then called the Agency twice and spoke to a woman whom I informed that I would be adding this to my Complaint and I asked to speak to Mr. Kearn's supervisor. I called the supervisor, and spoke with her and she said she would need to look into it

Two-three days later Mr. Kearns calls me back. It was probably a Thursday. He indicated that he had not yet processed my paycheck. He said he had not gotten the paperwork. I told him that I had left a message about this two weeks ago and had not received a call back from him and asked why he had not followed up after receiving my phone message. He downplayed the message and then I called his supervisor. I said they were trying to cripple me and this was continued retaliation for making claims against the Agency.

This is when he tried to downplay my issues by saying he did not have the paperwork. I told him I left a message about the urgency of the issue.

He said, "Mr. Royal I will get back to you." Then he called me back. He said that the check would be sent out and I would have it on Monday after the Thursday I was supposed to get paid.

46. Who was his supervisor?

I can't recall her name, but she called me back and left a message. She confirmed that my check would be sent out and that I would have it that Monday.

47. When did you receive your vacation benefits?

It was about a month after the termination. I was originally paid for wages through September 4 on the pay period following the termination. Then it took another 2 weeks plus a couple of days to get the vacation pay.

48. How much was the vacation pay?

13

Initials  /S/ GAR

001499

About $550.00.

49.     Prior to your termination, what was the timing and method of receiving pay?

I received regular pay every two weeks prior to termination.

50.     Had you had any problems before with your pay?

None, however my last paycheck did not come at the regular time. As they are escorting me out the door, I told Anne Mendez and Mr. Daniels and Kathy Griffiths, that I had not received my paycheck. Ms. Mendez said I would be receiving it. I said no, I had not received my current paycheck. There was a problem with the direct deposit form when I changed by address.

51.     When did you put in the change for the mailing address?

Maybe a month before the termination. It triggered a stop in the direct deposit. Usually I got the money Friday before midnight. Getting a paper check, it went out on a Monday and I was supposed to get it by Thursday.

52.     When did you receive it?

Monday or Tuesday the following week. Beyond the Thursday time frame.

53.     Did you happen to notice the dates on these two checks were issued?

No I do not.

54.     Have you been paid everything you are currently owed?

Yes.

55.     Do you know of anyone else treated differently with respect to the processing of their pay?

No.

## DAMAGES

(17) Payment of **ONE MILLION AND THREE HUNDRED THOUSAND DOLLARS ($1,300,000.00 USD)** as compensatory damages for the direct and proximate caused personal injuries, such as: Depression, Anxiety Disorder, Insomnia etc.; Intentional Infliction of Emotional Distress, Mental Anguish, Acid Reflux, Headaches, Diarrhea, Chest Pains, and Neck Pains; loss of $300.000.00 Life Insurance Policy, loss of personal properties, and increased late fees and penalties and interests on all loans and debt etc.; and rejections/denials of job opportunities with other federal agencies as a result of the malicious and libelous September 9, 2014 Notice of Termination Letter and the illegal retaliatory firing (**subject to minimal negotiations**).

(18) Reinstatement of my job as a Patent Examiner under a Technology Center Director other than Joseph Thomas and a Supervisory Primary Examiner other than Lisa M. Caputo, i.e. in another Art

Initials   /S/ GAR

Unit, e.g., Computer Network Architecture or Information Technology, without any "probationary-year period" or "alleged production requirement" during the following year.

(19) Repayment of all salaries and compensation benefits lost since the illegal retaliatory firing.

(20) Repayment/reinstatement of all retirement benefits lost since the illegal retaliatory firing.

(21) Repayment/reinstatement of all 401K contributions lost since the illegal retaliatory firing.

(22) Reinstatement of all vacation time exhausted because of the racial and gender discrimination, extreme hostile environment, systematic and agency-wide harassment, and workplace violence; and or director Joseph Thomas' malicious refusal to allot me Other Time to draft affidavits related to this complaint and or paid out as a result as the illegal retaliatory firing.

(23) Reinstatement of all personal sick leave (or administrative sick leave) exhausted because of the racial and gender discrimination, extreme hostile environment, systematic and agency-wide harassment, and workplace violence; and or director Joseph Thomas' malicious refusal to allot me Other Time to draft affidavits related to this complaint and or paid out as a result as the illegal retaliatory firing.

(24) Removal of the malicious and libelous September 9, 2014 Notice of Termination Letter from any Personnel, USPTO, DOC or OPM file, folder, or data storing means and or from any file, folder, or data storing means anywhere inside the federal government.

(25) Written letters of apologies from all officials (e.g., but not limited to, Anne Mendez, Joseph Thomas, Jennifer Ware, Jessica Rossi, Gary Jones, Deborah Reynolds, Matthew Such, Andre Fields, etc) of the USPTO, DOC, FPS (i.e. Investigators Dearborn and J.D. Williams), OPM (i.e. Sara Bell or the OPM investigator involved in the May 12, 2014 libel and slander) or any other federal agency, as well as affiliate (i.e. KeyPoint, Inc.'s background investigator and SekTek, Inc. Leadership) and or contracted company, e.g., KeyPoint, Inc. or SekTek, Inc. etc. involved in the instant complaint in any form or fashion.

(26) I have forever lost the experience to graduate from the Patent Training Academy with my friends and peer patent examiners from the September 9, 2014 Entering Class.

(27) Per the "No Tolerance Towards Workplace Violence Policy" and the promise of OEEOD Director Bismarck Myrick to the September 9, 2013 Entering Class, **immediate removal** of Violeta Prieto and Wei "Victor" Chan from the USPTO because of their physical assault and battery against me; **or, in the alternative**, Written Letters of Apologies from Ms. Prieto and Mr. Chan acknowledging their culpability but the alternative is **only based upon the USPTO and DOC's acceptance of item (1) above**.

(28) **Required diversity training** for all of the USPTO officials involved (Anne Mendez, Joseph Thomas, Jennifer Ware, Jessica Rossi, Gary Jones, Deborah Reynolds, Andre Fields, Matthew Such etc.) and Vincent Wall.

(29) **Required diversity training** for Violeta Prieto and Victor "Wei" Chan only if and is **only based upon the USPTO and DOC's acceptance of item (1) above**.

WITHOUT ANY SETTLEMENT PRIOR TO ANY ADMINISTRATIVE HEARING OR CIVIL PROCEDDING, I seek the following damages:

15

Initials  /S/ *GAR*

(30) Payment of **FOUR MILLION AND FIVE HUNDRED THOUSAND DOLLARS ($4,500,000.00 USD)** as compensatory damages for the direct and proximate caused personal injuries, such as: Depression, Anxiety Disorder, Insomnia etc.; Intentional Infliction of Emotional Distress, Mental Anguish, Acid Reflux, Headaches, Diarrhea, Chest Pains, and Neck Pains; loss of $300.000.00 Life Insurance Policy, loss of personal properties, and increased late fees and penalties and interests on all loans and debt etc.; rejections/denials of job opportunities with other federal agencies as a result of the malicious and libelous September 9, 2014 Notice of Termination Letter and the illegal retaliatory firing; and further as compensation lost for all salaries, compensation benefits, all retirement, all 401K contributions, vacation time, and sick leave that would have been (but for the stolen opportunity via the illegal firing and libelous Notice of Termination Letter) earned over a twenty-five (25) year career at the USPTO or other federal agencies.

(31) **Punitive damages** ordered against the DOC/USPTO sufficient **to deter** their future misconduct.

(32) And any and all attorney fees, expenses, costs, such other remedies deemed fair and proper.

## OATH

I, Gregory Royal, have read the above statement/affidavit and being duly informed, and understanding the penalties of perjury; duly swear under oath that the statements made in this Affidavit are true and correct, and complete, to the best of my knowledge.

/s/ *Gregory Allen Royal*
, Witness/Affiant

Dated: December 23, 2014

Subscribed and sworn to me this _____ day of _____, 2014.

_____
Lisa A. Kleine, EEO investigator, or Notary Public

16

Initials  /S/ *GAR*

001502

## OATH

I, Gregory Royal, have read the above statement/affidavit and being duly informed, and understanding the penalties of perjury; duly swear under oath that the statements made in this

Affidavit are true and correct, and complete, to the best of my knowledge.

Dated: December 23, 2014

_____
Gregory Royal, Witness/Affiant

Subscribed and sworn to me this __23rd_ day of _December_____, 2014.

_____
Lisa A. Kleine, EEO investigator, or Notary Public

1

Initials _____

001503