# Exhibit 17

In the Matter of Gregory Royal

Case Number: 14-56-22
Agency: United States Patent and Trademark Office

## SUPPLEMENTAL STATEMENT OF GREGORY ROYAL COMPLAINANT

On August 5, 2014 and on August 18, 2014, I was interviewed by the designated EEO Investigator, Lisa A. Kleine. Ms. Kleine explained to me that she was investigating allegations made by the Complainant that he was discriminated against in the form of a hostile work environment on the bases of sex (male) and race (African American/Black) since:

> 1. On or about December 13, 2013, Complainant alleges his complaints of hostile work environment were not taken seriously because he is a "six foot, medium built black man" and the alleged harasser is a white woman;
>
> 2. On or about November 07, 2013, he was physically assaulted by a white female co-worker;
>
> 3. On or about December 13, 2013 and continuing Complainant alleges that his harasser as been allowed to continue to violate USPTO policies on workplace safety and conduct by bringing several knives to the workplace and threatening Complainant.
>
> 4. On or about July 10, 2014, he alleges he was physically assaulted in the workplace by another Agency employee whereby other examiners see him as "a punching bag" to be slapped, and nothing will happen to them for doing so.

I was advised by Ms. Kleine of my rights as a witness/party in an EEO case, and was informed that my statement would and may be reviewed by the agency, the Office of Equal Employment Opportunity and Diversity and other interested parties, in the context of this claim. I have also been advised that there is no assurance of confidentiality as to the testimony given herein. I was also advised that I had the right to have a representative assist me in these proceedings, but chose not to. <u>I reserve the right to obtain legal representation at a subsequent time should I deem it necessary to protect my employment and constitutional rights in this matter.</u>

**I herein incorporate the text and content, every argument, every sentence, and every paragraph of each and every "ROI" sent and filed in the instant complaint as though fully set forth herein.**

**Investigator Lisa Kleine does not ask the simplest and basic questions that would allow me to provide further details herein. Therefore, the incorporation of any and all "ROI" documents herein.**

**I have been severely injured by the USPTO causing me to suffer Depression, Insomnia, Acid Reflux, Anxiety Disorder etc. These injuries have severely affected me and my ability**

Initials __/s/ GAR_____

to simply live a normal life. I have not had sufficient time with the sustained injuries to complete this affidavit appropriately. For example, the investigator Lisa Kleine asked me no questions about Wei "Victor" Chan's violent attack upon me on July 10, 2014.

The lack of averments about Mr. Chan's violent attack does not mean that I have waived my right to address the same in any proceeding. I will address Mr. Chan's Criminal Assault & Battery in any and all affidavits by the USPTO officials.

I have been a deadline that causes me to rush to get these affidavits into the USPTO by the end of day on December 23, 2014. Please see my ROI documents/emails for any Prior Consistent Statements.

This is an affidavit and I should be allowed to draft a complaint in any subsequent proceeding with additional affidavits.

The following represents a true and accurate summary/statement of the information that I provided to Ms. Kleine.

1. Please state your full name.

Gregory Allen Royal.

2. Please indicate our current Art Unit, the name of your current supervisor and the length of time you have been in your current Art Unit.

I am currently in Art Unit 2856. My supervisor is Lisa Caputo. I have been in this Art unit since December 20, 2013.

3. You have indicated that on July 10, 2014 you were physically assaulted by another Agency employee. Please describe what happened.

On July 10, 2014, I was sitting in the Madison West first floor conference room. We were in a training on affidavits under Rule 131 and 132. My back was toward the door. I was with Romeo Smellin. We are talking about the exams and the upcoming lecture. Wei (Victor) Chan smacked me in the back of the head. I did not seem him coming; I did not say anything to him. I am in the first row of chairs. Immediately behind me is Chima Igboko. To her left is David Humza. To her right is Tasnima Matin. Due to the force with which he hit me, my body went forward. It was a force like a rear end accident. I immediately turned around really fast, thinking, "Now someone else is smacking me." I was very frustrated. Ms. Igboko says, "Did you see the look on his face?" I said "Yes, he smacked me in the back of my head." She said, "It was the back of your neck." She further said, "He was just playing with you." I said, "I don't know him to be playing with me. You should not smack someone in a professional environment."

4. Where was Mr. Chan while this was going on?

Mr. Chan is in the back, laughing. I yelled at him to not put his hands on me again. He was laughing.

5. Did he make any response to your statement?

No, he is laughing like it is a joke.

6. What happens next?

Ms. Matin says to Ms. Igboko, "No, He's (Gregory) right. He smacked him on the head like he is some little boy, like he did something bad. This is a professional environment."

I said, "Thank you very much." Ms. Igboko just sat there.

7. Then what happened?

I sat there seething about the hostile environment I was in. I felt Ms. Rossi, Mr. Jones and Ms. Reynolds were responsible, as they have all known about the violence in this work place, and they have omitted the facts that I have been a victim of violence in the work place. Students from September 9 class aware that police were called due to Dec. 13 incident. They know Ms. Prieto was moved out of the class. Everyone knows I alleged that she slapped me and that she harassed me and had multiple knives in this workplace.

8. Did Mr. Chan know about the prior incident before the July 10th incident?

Yes, Mr. Chan who attacked me knows from lectures. There are 200 people in class. They all know me. I would venture to say that all 200 people know me. I am the one who sits in the front of the lectures and asks questions and states things about the law for the lecturers when they forget things. Mr. Chan is friends with Vincent Wall. They stand in the smoking area conversing often. Mr. Wall is a friend and co-harasser with Violeta Prieto.

9. Have you had conversations with Mr. Chan prior to the July 10 incident?

Yes. I recall that the relationship was always cut throat. He was someone to keep an eye on. When at the Patent Training Academy, GS-7's and GS-9's could not work overtime and could not work on weekends. I had a bunch of personal at work. So I was sitting at my desk on a Saturday retrieving my personal effects. He was there. He saw me, and said you know you are not supposed to be here on Saturday. He comes into my lab from his lab, which was lab 12, and says I'm not supposed to be here. I said, "What are you doing here?" He said, "I am leaving." I again said, "What are you doing here?" He said, "Someone may just tell on you."

10. When did this occur?

In September or October 2013

11. Did anything come of it?

I get a report from another examiner about Agnes Dobowski gossiping in her lab (which is the same as Mr. Chan's lab 12). She said, "I don't know why we can't come in on weekends; Gregory comes in whenever he wants." This was early in the Patent Training Academy time, maybe September or October. Travis Harper told me about this.

3

Initials ___/s/ GAR_____

Agnes Dobowski was also spreading rumors about Violeta Prieto's illegal and dangerous knives and my reporting Ms. Prieto in December 2013. Ms. Dobowski told my officemate Trevor Bervik to watch out with knives around Gregory Royal because he will report you Agnes Dobowski was a very gossipy person.

12.  Did you have any other conversations with Mr. Chan after the one you just described in September or October 2013?

Yes. Victor (Mr. Chan) is friends with mutual friends of mine, e.g. Trevor Bervik and Pete Lee, another examiner. They are friends with my office mate. I'll say hi. We have discussed patent law and search strategy. For an Asian male, he is a lot more muscular that Asian males in general. He is known in the class as that "big Asian". He is short but he is wide. He is maybe 5'5 at best. I've had conversations because he is lifting weights. He has made threats via innuendo. I've had to remind him several times "weights don't hit back." And even after those minor conflicts, he entered the classroom on July 10, 2014 and forcefully smacked me in the back of my neck and head to show and prove to me and others that he was bold and violent enough to physically assault me.

13.  Prior to July 10, 2014 has he ever threatened you?

No, he has just talked aggressively. Not threatening, more like alpha male behavior type. He lifts weights on a daily basis. As he is talking he is not threatening me, but his attitude towards me is aggressive. He has always made innuendo of physically hitting me. See the answer above for question number 12.

14.  Did you ever observe him threatening anyone else?

No.

15.  Did you ever observe him hitting anyone else prior to this incident?

No.

16.  Did you make any kind of a report of the incident at the time?

No. Victor and I have not had any type of engagement prior that would give him the impression he could hit me in the back of my head.

No, on July 10, 2014, I did not make a report to Security or Human Resources at that time because I strongly feared that Human Resources would fire me because I am Black male and protect Mr. Chan because he is not Black. I had read the affidavit of Gary Jones, and Mr. Jones testified that Human Resources had advised that the USPTO fire me. See the Affidavit of Gary Jones.

I, however, went to the PTO Medical Office on July 10, 2014 because of my injuries. Later during the week, I shared with Lyle Alexander, the class lecturer, that I had been forcefully smacked in the back of my neck and head inside his lecture. But because of the very threatening and hostile treatment from all of the USPTO officials, especially Jessica Rossi and Jennifer Ware, and FPS officers, i.e. Dearborn and J.D. Williams, and most especially because of Ms. Rossi's prior threat to fire me and Human Resources advise to fire me when I was the actual

4

Initials __/s/ GAR_____

victim, I strongly feared being fired and I did not say anything to either Security or Human Resources.

I absolutely saw that the USPTO officials were discriminating against me because of my gender and race as a Black male. With each and every violent threat or violent attack I had provided the USPTO with multiple witnesses, but each and every official maliciously and intentionally remained deliberately indifferent for the sole purpose of protect the non-Black violators while maliciously and deceitfully with a deceptive purpose to libel, slander, and shed me in a false light of being the violent Black male.

It was horrible and the systematic and agency-wide discrimination made me feel devalued, demoralized and less than a human, i.e. like something less than a Slave to be beaten on and attacked by anyone who is not Black.

I feared that because I was a Black male that if I reported workplace violence the USPTO officials would only carry out their racism, racist stereotypes, and racist animus towards me because I am a Black male. They would protect Ms. Prieto, Mr. Prieto, and Mr. Chan because they all were not Black.

17. Did you have any other contact with Mr. Chan about this incident?

About a week later I sent him an email saying my neck was still hurting and that I wanted him to pay any medical bills. See email attached as Exhibit "1".

18. Was the email sent only to Mr. Chan?

Yes.

19. Did you get a response from Mr. Chan to the email?

No. But the next thing that happened was that I was called into my supervisor's office.

20. Describe what happened when you were called into your supervisor's office?

It was July 17, I believe (possibly July 15). My supervisor called me into her office.

21. What was your supervisor?

Lisa Caputo.

22. What happened after she called you into her office?

She indicated security would come to her office and take a statement about the incident with Mr. Chan.

23. Which security, USPTO security or the Federal Protective Service?

PTO security.

24. Why were they coming to take a statement?

They were coming too about the email I sent to Mr. Chan.

My neck was still hurting. I said in the email if I have to go to the doctor I expect you to pay for my deductible and any medical bills. Because of my emails to Mr. Chan, my supervisor had security come up.

25.   Who came up from USPTO security?

Officer R. Foster. He said he was there to take a statement about July 10 incident. I said, "I am not giving a statement because HR would recommend that I be fired."

Officer Foster said he would follow through and not wipe it under the carpet. I said, "No one has investigated the incident when I said Violeta Prieto slapped me in class. Mr. Jones, Ms. Rossi, Ms. Ware and Ms. Reynolds knew, and none of them were concerned that I was slapped in the workplace." He promised me that he would investigate but he indicated he needed my statement. I said, "You're not the boss; Kevin Lewis is the boss, he will start soft-shoeing around it and sweep under the carpet the same as the Prieto incident was swept under the carpet." He continued to ask me to give a statement. I said for him to leave me alone, and said to him, "You cannot promise me anything because you are not the boss. I, as the black man, will get fired."

I said I would tell him the witnesses. I said he could go to Mr. Chan and the witnesses and they will all have to tell the truth as government employees. He put so much pressure on me that I broke into tears. I said that all of them were unethical and would not do the right thing. Ms. Caputo was sitting there.

Mr. Chan is like Ms. Prieto, he knows that since he is not Black, the PTO will take his side against me. PTO treats me as third class citizen. They are going to cover it up and make me feel like I am the troublemaker. I did not see this coming at all. Part from pain and part from anger, I broke down in tears. I insisted that I would not file a statement because I was concerned the, I as the actual victim would be fired. I asked Lisa Caputo to make him go away and he left.

26.   Did there come a point in time when you changed or mind and decided to file a statement?

Yes. I talked to my family and friends and decided to make report four days ago (August 1). They said I should give a statement. I then sent email to Lisa Caputo saying I wanted to make a statement. She did not respond originally. See email attached as Exhibit 2.

She's been busy and she has been out of the office. I expect a reply from her today, or we will be meeting on Thursday, August 7, 2014, which is my regular weekly meeting with her.

27.   Do you believe that this assault was motivated by the fact that you are an African American man, and if you believe so, pleaser describe the facts and circumstances upon which you rely.

I believe that Mr. Chan is envious of what I know. He cannot tolerate and digest that a Black male knows more than he. Lyle Alexander was our lecturer. Mr. Alexander gave me multiple

6

Initials  /s/ GAR

001464

compliments during the Phase II training, e.g., "You should teach this class." Mr. Chan is envious and jealous that a Black male knows more than he, so he physically assaulted me.

Additionally, Mr. Chan had spectators waiting and watching for him to assault me. Before I could turn around to see who had smacked me so hard the force propelled my head and body forward, Mr. Chan was already in his desk seat at the back of the classroom laughing with his spectators, who had been apparently waiting and watching to see if he would actually smack me in the back of the neck and head.

28.   Had the lecture started at the time the July 10 incident occurred?

We were returning for the second half of the lecture after a break. The second half of class had not yet begun. Before the break, Mr. Alexander had said to me, in front the class, "Man you really know your stuff very well." He said, "You really know this, you need to teach this class." I apologize and said, "I don't mean it that way." I had volunteered a date that he had not remembered so the class would have it. He said, "No, that's ok, you really know your stuff." Then we had a break. Then we come in from the break and Victor (Mr. Chan) hits me in the head.

He was jealous because I am Black and I know more than he. He had actually calculated to do something. He knew that that Violeta Prieto slapped me and the officials did not fire her. He was in the adjacent class. Trevor my office mate was in his class. There is a lot of gossip. Before Trevor Bervick came over, Agnes from Lab 12 told people to watch out for me. She told people to be careful with knives because he (Me) will rat you out. Travis Harper told me this – he is African American and he sat in that lab. Agnes has been spreading gossip about me. Victor (Mr. Chan) knew all of this. His hitting me was motivated by my race, and the hostile environment PTO created by not dealing with Ms. Prieto and Mr. Wall appropriately since everyone knows what they did and nothing happened to them. So Victor (Mr. Chan) knew he could hit me, and nothing would happen to him also.

I believed that they would all fault the Black male. I believed that Jessica Rossi would still be involved with this incident too as she was with the December 2013 incident. We are still under her and I believe that she would not investigate this in the way she did not investigate the other situation where Ms. Prieto hit me.

29.   If you knew that Jessica Rossi would not be responsible for investigating the July 10 incident, would you have reported it?

No. It would have gone to HR and Jennifer Ware is over there and I imagine that she is part of the people who said to fire me. I feel like I cannot go to HR or anyone there – security, Federal Protective Service, no one, not on issues involving white or Asian people hitting me.

30.   Have you observed other employees being treated similarly but garnering a different reaction from either co-workers or supervisors?

I've never seen anyone else get smacked in the back of the head prior to my incident, but there is harassment. The September 9 class was a survey given by OEEOD in April or May 2014.

31.   What substance of the survey?

7

Initials ___/s/ GAR_____

People were asked if they had seen a hostile environment or harassment in the workplace, or been a victim. It was given to the whole incoming class. It also asked if they knew where to go to report harassment or a hostile work environment.

I helped tally and count the results of the survey. The OEEOD person picked me to help so I saw the results. I think he has vision difficulties.

32. Was it an anonymous survey?

Yes. I helped pass it out (me and someone else). I helped tally them up. Nine other people in addition to me (for 10 total) had responded "yes" to the question of whether they had witnessed or observed harassment or hostile work environment. Three or six people said they had been a victim of harassment in the workplace or said they did not know where to go to report it.

33. Do you know of any documents related to this July 10, 2014 incident?

I sent a second email with a follow up. Jessica Hughes has been cc'd on this email.

34. How has this incident affected you in your work environment?

For the week and half after the incident, since I had to read and look down a lot, I was in pain. I went to the medical PTO office. They said it looked like I had a bruise where the skull meets the neck. They said to take 400 mg Motrin for the pain. So for about a week and half I had difficulty with reading. On the emotional side, people are beating me; like I am a Slave and I cannot do anything about it. If I defend myself, they are doing to fire me; they are going to sweep the witnesses under the rug and see me as the wrongdoer. They will say we do not want people to take sides. I will be seen as disruptive. I feel like I have no rights and no equal protection. If I go to HR they will recommend that I will be fired. If I go to the Deputy Director and the Director, they will ignore me. Ms. Rossi will link things together and say I have problems with everyone. She will say she met with me on other occasions and had multiple discussions with me, she will misrepresent what has happened to slander and she will libel me and shed me in a false light. She will also fire me as she had threatened on December 16, 2013.

I have headaches now and I am not sleeping. I am awake 48 hours and pacing to try to get tired from all of this. I cannot believe that I have to let people threaten me and assault me. I cannot defend myself in the work place.

I am being penalized in that I am not making my production and I am not being given any extra time for my work. The reoccurring workplace violence against me, the consistent harassment upon me, the extremely hostile environment, the systematic and agency-wide racial and or gender discrimination against me and their retaliation against me for reporting the workplace violence etc, e.g., considering me a Scarlet Letter to be ignored and not acknowledged by all and shunned, severely and grossly affected my ability to do my job duties. I could not sit and do my work without fear that I would be fired because another threatened me with intimidation or violence or even had physically assaulted me.

I was greatly demoralizing and demeaning to send out emails to officials and not to have a single one address my concerns. Each day, when I searched for a return email or a call from anyone acknowledging that I was a victim of multiple acts of Criminal Assault and Battery inside the

USPTO, and there was not even a single responsive email or telephone call, I shutdown at work, and some days let out tears in secret.

Remarkable and absolutely devaluing to me, making me feel like unwanted trash, was the fact that I would send an email informing the officials that their deliberate indifference was improper and wrong, even until federal policies, rules, and laws, but they would still ignore me. Even when I had informed them that they were knowingly violated their "No Tolerance Towards Workplace Violence Policy" they would still blatantly ignore me, each and every one out of many. Every day, I would simply shutdown more and more and I would also become recognize a greater emotional, mental, or physical pain, hurt, or sickness.

There were two extreme and outrageous hostile environments violently attacking me: (1) The hostile environment of my peers who were free to go about slapping, smacking, hitting, threatening me with intimidation and violence without any concern for any discipline. (2) The more hostile environment of the USPTO and PTA officials who cast me out as a Scarlet Letter. These officials would cut their eyes at me in disgust. They would pass right by me and even though I am told that I have a very strong or even loud voice, they would absolutely ignore me when they passed me and I said "hello" to them. Gary Jones, a very mature man of age, would pull out his cell phone and walk with his head in his cell phone, odd for a man of his age. When he was with Deborah Reynolds, they would simply ignore me. I had shared this with OEEOD Michael Salley. But even more violent was the systematic and agency-wide conspiracy of aiding and abetting each other in the destruction of my career not only at the USPTO but to destroy any opportunities of my every working at any federal agency.

The hostility of each and every Human Resources official or PTA official, Special Agent Kevin Lewis, and my Director Joseph Thomas was an even more hostile and vicious environment. The repeated quick threats to fire me or the direction to fire me, it was always fire the Black male, even though I was the actual victim. These officials were also absolutely aware of the fact that I was the victim and that I had told them the truth. There sole reason for not interviewing a single witness was only to be able to maliciously and intentionally and deceitfully libel, slander, and shed me in a false light to oppress and destroy me at the USPTO.

I simply was not given the same opportunities that White and non-Black first-year probationary examiners were given.

35. Prior to this incident, and after the December 13, 2014 incident (once you moved to your Art Unit), describe your work environment.

The work environment with my peers was fine in the individual Art Unit. Everyone was very helpful. However in April 23 Violeta Prieto waited for me to come out of a lecture hall, and I see her, and I put my head down. The hallway is 10-12 feet across and I'm talking to other people, so she could easily pass on the other side and stay away me, but she walks behind in close proximity me for about 100 feet. She is stalking me and she is going to try to make physical contact and cause a problem. I see her out of my peripheral vision. It was in the Randolph concourse area, there is a column there that narrows the passage. I thought, she is going to walk real fast to pass and hit me at the narrowest portion. I turned my body sideways just in time so she could pass and not make a violent physical contact against me.

9

Initials __/s/ GAR_____

I thereafter sent emails to Ms. Ware and Mr. Lewis asking for an investigation of video footage/surveillance of the area. I wanted them to review the tape to show that she was waiting outside room for me and then she started trailing me, stalking me. No one responded.

I brought the incident up to John Juba; Ishared it with him. He is someone I talk about work. I shared with him what was going on. He said he would talk with Cassandra Spyrou. I talked to Ms. Spyrou. I believe that she went and talked to my supervisor and director. At that time of my evaluation, on the areas, "Ability to get along with others" my supervisor gives me a 1, needs improvement. Before this incident my evaluation for this area was a 2. This was all due to my reporting the incident with Violeta Prieto. I was given a "1" because I continued to report workplace violence.

36. Did you ask you supervisor why you were given with a 1?

I sent her an email and said that I felt as if I was being punished for reporting workplace violence and discrimination. She said she wanted me to use the resources more and that I was continuing to let the workplace violence etc. negatively affect my work that was what the 1 was for. I wrote her a lengthy email about it. I did not take it any further because I am in my first year. I think I am being victimized with this 1 rating for repeatedly reporting workplace violence etc. as well as discrimination in the workplace.

I received a "1"rating following the December 19, and 2-3 days after April incident I received a "1" rating. But when I did not report any workplace violence etc. or discrimination against me, I received a "2".

37.     What remedies and damages are you seeking as a result of this incident, if different than what you have already requested in your original affidavit?

## DAMAGES

(1)  Payment of **ONE MILLION AND THREE HUNDRED THOUSAND DOLLARS ($1,300,000.00 USD)** as compensatory damages for the direct and proximate caused personal injuries, such as: Depression, Anxiety Disorder, Insomnia etc.; Intentional Infliction of Emotional Distress, Mental Anguish, Acid Reflux, Headaches, Diarrhea, Chest Pains, and Neck Pains; loss of $300.000.00 Life Insurance Policy, loss of personal properties, and increased late fees and penalties and interests on all loans and debt etc.; and rejections/denials of job opportunities with other federal agencies as a result of the malicious and libelous September 9, 2014 Notice of Termination Letter and the illegal retaliatory firing (**subject to minimal negotiations**).

(2)  Reinstatement of my job as a Patent Examiner under a Technology Center Director other than Joseph Thomas and a Supervisory Primary Examiner other than Lisa M. Caputo, i.e. in another Art Unit, e.g., Computer Network Architecture or Information Technology, without any "probationary-year period" or "alleged production requirement" during the following year.

(3)  Repayment of all salaries and compensation benefits lost since the illegal retaliatory firing.

(4)  Repayment/reinstatement of all retirement benefits lost since the illegal retaliatory firing.

(5)  Repayment/reinstatement of all 401K contributions lost since the illegal retaliatory firing.

Initials __/s/ GAR_____

001468

(6) Reinstatement of all vacation time exhausted because of the racial and gender discrimination, extreme hostile environment, systematic and agency-wide harassment, and workplace violence; and or director Joseph Thomas' malicious refusal to allot me Other Time to draft affidavits related to this complaint and or paid out as a result as the illegal retaliatory firing.

(7) Reinstatement of all personal sick leave (or administrative sick leave) exhausted because of the racial and gender discrimination, extreme hostile environment, systematic and agency-wide harassment, and workplace violence; and or director Joseph Thomas' malicious refusal to allot me Other Time to draft affidavits related to this complaint and or paid out as a result as the illegal retaliatory firing.

(8) Removal of the malicious and libelous September 9, 2014 Notice of Termination Letter from any Personnel, USPTO, DOC or OPM file, folder, or data storing means and or from any file, folder, or data storing means anywhere inside the federal government. I want my name cleared.

(9) Written letters of apologies from all officials (e.g., but not limited to, Anne Mendez, Joseph Thomas, Jennifer Ware, Jessica Rossi, Gary Jones, Deborah Reynolds, Matthew Such, Andre Fields, etc) of the USPTO, DOC, FPS (i.e. Investigators Dearborn and J.D. Williams), OPM (i.e. Sara Bell or the OPM investigator involved in the May 12, 2014 libel and slander) or any other federal agency, as well as affiliate (i.e. KeyPoint, Inc.'s background investigator and SekTek, Inc. Leadership) and or contracted company, e.g., KeyPoint, Inc. or SekTek, Inc. etc. involved in the instant complaint in any form or fashion.

(10) I have forever lost the experience to graduate from the Patent Training Academy with my friends and peer patent examiners from the September 9, 2014 Entering Class.

(11) Per the "No Tolerance Towards Workplace Violence Policy" and the promise of OEEOD Director Bismarck Myrick to the September 9, 2013 Entering Class, **immediate removal** of Violeta Prieto and Wei "Victor" Chan from the USPTO because of their physical assault and battery against me; **or, in the alternative**, Written Letters of Apologies from Ms. Prieto and Mr. Chan acknowledging their culpability but the alternative is **only based upon the USPTO and DOC's acceptance of item (1) above**.

(12) **Required diversity training** for all of the USPTO officials involved (Anne Mendez, Joseph Thomas, Jennifer Ware, Jessica Rossi, Gary Jones, Deborah Reynolds, Andre Fields, Matthew Such etc.) and Vincent Wall.

(13) **Required diversity training** for Violeta Prieto and Victor "Wei" Chan only if and is **only based upon the USPTO and DOC's acceptance of item (1) above**.

WITHOUT ANY SETTLEMENT PRIOR TO ANY ADMINISTRATIVE HEARING OR CIVIL PROCCEDING, I seek the following damages:

(14) Payment of **FOUR MILLION AND FIVE HUNDRED THOUSAND DOLLARS ($4,500,000.00 USD)** as compensatory damages for the direct and proximate caused personal injuries, such as: Depression, Anxiety Disorder, Insomnia etc.; Intentional Infliction of Emotional Distress, Mental Anguish, Acid Reflux, Headaches, Diarrhea, Chest Pains, and Neck Pains; loss of $300.000.00 Life Insurance Policy, loss of personal properties, and increased late fees and penalties and interests

11

Initials __/s/ GAR_____

on all loans and debt etc.; rejections/denials of job opportunities with other federal agencies as a result of the malicious and libelous September 9, 2014 Notice of Termination Letter and the illegal retaliatory firing; and further as compensation lost for all salaries, compensation benefits, all retirement, all 401K contributions, vacation time, and sick leave that would have been (but for the stolen opportunity via the illegal firing and libelous Notice of Termination Letter) earned over a twenty-five (25) year career at the USPTO or other federal agencies.
(15) **Punitive damages** ordered against the DOC/USPTO sufficient **to deter** their future misconduct.
(16) And any and all attorney fees, expenses, costs, such other remedies deemed fair and proper.

## OATH

I, Gregory Royal, have read the above statement/affidavit and being duly informed, and understanding the penalties of perjury; duly swear under oath that the statements made in this Affidavit are true and correct, and complete, to the best of my knowledge.

/s/ *Gregory Allen Royal*
Gregory Royal, Witness/Affiant

Dated: __December 23, 2014__

Subscribed and sworn to me this _____ day of _____, 2014.

_____
Lisa A. Kleine, EEO investigator, or Notary Public

Initials __/s/ GAR_____

001470

## OATH

I, Gregory Royal, have read the above statement/affidavit and being duly informed, and understanding the penalties of perjury; duly swear under oath that the statements made in this

Affidavit are true and correct, and complete, to the best of my knowledge.

_____
Gregory Royal, Witness/Affiant

Dated: December 23, 2014

Subscribed and sworn to me this __23rd__ day of __December__, 2014.

_____
Lisa A. Kleine, EEO investigator, or Notary Public

1

Initials _____

001471