# Exhibit 21

In the Matter of Gregory Royal

Case Number: 14-56-22
Agency: United States Patent and Trademark Office

## SECOND SUPPLEMENTAL STATEMENT OF GREGORY ROYAL, COMPLAINANT

On August 18, 2014, I was interviewed by the designated EEO Investigator, Lisa A. Kleine. Ms. Kleine explained to me that she was investigating allegations made by the Complainant that he was discriminated against in the form of a hostile work environment on the bases of sex (male) and race (African American/Black) since:

1. On or about December 13, 2013, Complainant alleges his complaints of hostile work environment were not taken seriously because he is a "six foot, medium built black man" and the alleged harasser is a white woman;

2. On or about November 07, 2013, he was physically assaulted by a white female co-worker;

3. On or about December 13, 2013 and continuing Complainant alleges that his harasser as been allowed to continue to violate USPTO policies on workplace safety and conduct by bringing several knives to the workplace and threatening Complainant.

4. On or about July 10, 2014, he alleges he was physically assaulted in the workplace by another Agency employee whereby other examiners see him as a "punching bag" to be slapped, and nothing will happen to them for doing so.

5. On or about August 14, 2014, during the Patent Examiner Efficiency Exam (Exam), Complainant he was further subjected to a hostile work environment because the Agency failed to take sufficient actions to prevent him from being subject to a hostile work environment when:

   a. the Alleged Harasser was to be allowed to take the Exam in the same room and the same time as Complainant was, despite the fact that she was moved to a different "Lab" than he was on or about December 13, 2013;

   b. the Alleged Harasser failed to follow the Exam Proctor's instructions to remain silent by approaching the cubicle in front of the one where Complainant was seated and began a "loud conversation" with another employee, and she "did so solely to annoy [sic] Complainant's focus" and "under the cloak of being social," the Alleged Harasser sought to disturb Complainant's focus for the Exam; and

   c. When the Exam Proctor spelled the name of an employee Complainant believes to be "Islamic" due to his name being "Mohammed," another employee was allowed to mock, not for the first time, those of the Islamic faith.

Initials  /s/ GAR

I was advised by Ms. Kleine of my rights as a witness/party in an EEO case, and was informed that my statement would and may be reviewed by the agency, the Office of Equal Employment Opportunity and Diversity and other interested parties, in the context of this claim. I have also been advised that there is no assurance of confidentiality as to the testimony given herein. I was also advised that I had the right to have a representative assist me in these proceedings, but chose not to. <u>I reserve the right to obtain legal representation at a subsequent time should I deem it necessary to protect my employment and constitutional rights in this matter.</u>

**I herein incorporate the text and content, every argument, every sentence, and every paragraph of each and every "ROI" sent and filed in the instant complaint as though fully set forth herein.**

**Investigator Lisa Kleine does not ask the simplest and basic questions that would allow me to provide further details herein. Therefore, the incorporation of any and all "ROI" documents herein.**

**I have been severely injured by the USPTO causing me to suffer Depression, Insomnia, Acid Reflux, Anxiety Disorder etc. These injuries have severely affected me and my ability to simply live a normal life. I have not had sufficient time with the sustained injuries to complete this affidavit appropriately. For example, the investigator Lisa Kleine asked me no questions about Wei "Victor" Chan's violent attack upon me on July 10, 2014.**

**The lack of averments about Mr. Chan's violent attack does not mean that I have waived my right to address the same in any proceeding. I will address Mr. Chan's Criminal Assault & Battery in any and all affidavits by the USPTO officials.**

**I have been a deadline that causes me to rush to get these affidavits into the USPTO by the end of day on December 23, 2014. Please see my ROI documents/emails for any Prior Consistent Statements.**

**This is an affidavit and I should be allowed to draft a complaint in any subsequent proceeding with additional affidavits.**

The following represents a true and accurate summary/statement of the information that I provided to Ms. Kleine.

1. Please state your full name.

Gregory Allen Royal.

2. Based on email correspondence I have received, it is my understanding that there came a point in time when you decided to report the July 10, 2014 incident to security, correct?

Yes.

3. When did you report it to security?

On or about August 14, 2014, I am not certain at this time without my notes in front of me. I must review my notes for the exact date..

4.     Who took the report?

There were two separate instances. FPS (Federal Protective Service) Investigator Dearborn, who responded to the December 13 incident, responded in addition to Officer Estella from Sek-Tek, Inc (I believe). I brought up the fact that he (Officer Dearborn) had omitted statements from my December 2013 statement. He denied that. I told him that he had told Violeta Prieto and me that all witnesses he interviewed had confirmed my allegations and also stated that Ms. Prieto had singled me out and she was bullying me. He denied that too. I then told him to tell Officer Estella (the officer whom I believed was named Estrella) that his coworker who had reported that incident was a liar and or SekTek, Inc. Security is a liar. I then showed him the December 13, 2013 Incident Report. He said he spoke with the male witnesses but not the female witness. The female witness and I were once close friends but not after she had supported Vincent Wall's mockery of Muslims and the Islamic faith.

Investigator Dearborn's face became red when he read the report. I said that they (FPS) did not have any ethics. I asked him why they sent him when I had made a complaint about the way he previously mishandled an investigation. He called the commander and said," Mr. Royal is demanding another investigator." He then put me on the phone with the commander. I told the commander that Wei also known as Victor Chan, on July 10, in Madison west, while I was sitting talking to Romeo Smellie about the quiz, walked up behind me and smacked me forcefully in the back of my head. I indicated my head and body went forward. I told this to the commander. They then sent out another investigator named Stanley Ragin, Jr. He told me there would be two reports, the report from Investigator Dearborn and his report.

5.     Did you tell the two investigator the same thing?

Yes.

6.     Tell me what you told them?

See my statement above.

He apparently hit my neck, but it felt like it was my head. When he smacked me, my body and head went forward. I turned around with a look of pain and anger on my face. Mr. Chan had apparently quickly run or walked away because he sat in the back of the classroom laughing with other spectators. I turned around and said, "Victor, keep your damn hands off me." Sitting immediately behind me was Chima Igboko. To her right was Tasnima Matin. On Ms. Igboko's left was David Humza.

Ms. Igboko says, "Oh, look at that angry look on his face." I replied, "Because he hit me in my head." She said, "He hit you in the neck, maybe's he's playing with you." I responded that I don't know him like that and said, "This is a professional environment, he should not be putting his hands on me."

3

Initials  /s/ GAR

Ms. Matin; she agreed with me. She said, "No, he hit him like he was some bad little boy. He shouldn't be hitting him like that. This is a professional environment. You don't go around hitting people like that." I turned to Ms. Matin and said, "Thank you."

7.     Did you report anything else to the responding officers?

Officer Dearborn asked me, "Why do you think Victor hit you?" I first said, because of the hostile environment and he was jealous. Mr. Lyle Alexander was our lecturer and he did not remember a date and I provided the date for him. Mr. Alexander said, "You are right, you really know your stuff, you should teach this." I apologized and said that was not my intent.

I don't talk to Victor, we do not have that sort of association. He is friends with Vincent Walls. He knows that Violeta hit me and he can therefore smack me too and get away with it. Plus he is jealous of me.

I think it is the hostile environment. All I know is that I was hit. That is what he writes down. That's what I need. I then turned to Officer Estella and said this is the same way how he protected the White woman over me. I just walked him through everything that happened at Patent Training Academy for four months and the incident from April 23 when Ms. Prieto followed me down the hall. I provided specific details and witness details. And he only wants to report "All I know is that I was hit" to sabotage my report. This is how he discriminated against me because I am a Black male and she is a White female.

Officer Dearborn stated that in his (I believe 17 years as an investigator) he had never been accused of discrimination. I replied that apparently he has gotten away with it for that long. I told him that he had violated 42 USCA 1983. I requested that another investigator be sent out because Officer Dearborn was again discriminating against me because of my race.

Officer Nagin came to take my report. I told him all of the above about the workplace violence, harassment, hostile environment, illegal knives, threats and physical assault and battery since September 2013 to that time. He took the witness names. He taped recorded it on his cell phone. He gave me a report number via email. He said he would email it to me.

5.     What was the substance of the report you gave to security?

   It was my Statement of the July 10, 2014 violent attack of Wei "Victor" Chan. It was a detailed report of what took place on July 10, 2014.

6.     Other than the two security reports, did you have any other conversations with anyone about this incident since making the report?

Yes.

7.     Who?

L:isa Caputo and I sent emails to Joseph Burns, head of security.

8.     When?

4

Initials  /s/ *GAR*

On or about the night of August 14, 2014, as I can recall at this time. Again, I do not have my notes or the statement in front of me.

9. Describe the substance of emails.

See my Rebuttal Affidavits of Anne Mendez and Joseph Thomas as well as the related ROI's.

10. Have you had any conversations with Mr. Chan about this incident since you reported it?

No. We do not talk. But I had sent him emails notifying him that my neck and head were still hurting and that I expected him to pay for any medical bills if I had to go to a hospital.

11. The notice of investigation has been amended to include a complaint arising out of an August 14, 2014 exam where you indicated you believed you have been further subjected to a hostile work environment. Describe what happened.

There were two issues, the first involving Vincent Walls. The test proctor was April Irondi, she is an African American female. We were taking an exam that day. She came in and stated, "There are a few of you that had to reschedule to today. I cannot pronounce all of the names, so I will spell and as those people to move to the front."

She started out the names, spelling several, and then said, "There is a "Mohammed." Vincent Walls, shouts out, "Which one?" Some people start laughing. The one who re-scheduled his exam came to front. Mr. Walls was mocking those of the Islamic faith in class, like he had done previously.

12. How do know that this statement was made to mock those people of Islamic faith?

A "Mohammed" means only one. If that specific "Mohammed" was confused he would have said something. Instead, he just grabbed his stuff and moved to front. The question did not involve Mr. Walls. I do not want to hear those kinds of things, *i.e.* a consistent mockery of other people's name and religion inside a workplace. Especially, before an examination, I did not want to hear disruptions and distractions. People laughed. He (Mr. Walls) was being disruptive.

13. So your objection to the situation was that you believe that Mr. Walls was being intentionally and maliciously disruptive?

He was throwing out purposely disruptive comments. This is creating a hostile work environment for me. She (the proctor) was not speaking to anyone other than the individuals who had their exams rescheduled. Mr. Walls was opening his mouth only to make mockery and to be disruptive.

14. You indicated there was a second incident. Please describe that incident.

It involved Violeta Prieto. After the December 13 incident, she was moved out of Lab 11. During the August 14 exam, Ms. Irondi called for Lab 11 to go their testing room. I see Violeta Prieto getting up and I see everyone getting up. I am thinking, "Why is she getting up, she was moved out of Lab 11?" I wait until everyone leaves so I am farthest away from Ms. Prieto and one of last ones to get into room. Hal Rapaport comes in after me.

Ms. Prieto and Mr. Walls sat in the first row of cubicles closest to the door. I go to the other side and sit farthest away from Violeta Prieto and Vincent Walls to the front of the test room, as far away as possible from them. You can see across the tops of the cubicles. I sit down and I begin to set up my terminal and my laptop, but there is no keyboard. So then, I am preparing myself to take my quiz, I am meditating and praying. The proctor had instructed everyone to go into the test room and to set up their laptops in preparation to take the exam. She also indicated people should go to rest room if needed. She also stated that we were behind schedule and asked everyone to sit at their desks and wait for the examination after setting up their laptops.

Ms. Prieto sees me in my seat. She sees Hal come into the test room and sit in front of me. He is setting up his computer. Instead of sitting at her desk as instructed, she walks to Hal and starts a loud conversation with him. I look at her. She has this mocking look on her face, like she intends to disrupt me. I remained professional. This is a hostile environment; she is not supposed to be there. I get up from my desk and say I do not have a keyboard and use that as a partial excuse to move to another room to take the exam.

I should not have had to be mentally and emotionally unstable prior to my exam. She should not be in the same room with me. It is a hostile environment because Patent Training Academy has remained deliberately indifferent to my clearly expressed work place violence situation. Ms. Prieto should not be in a room with me. She does not hesitate to try to start conflict with every available opportunity she can. She feels empowered to harass and attack me, so she smirks at me about having slapped me and gotten away with that.

15. Did Ms. Prieto speak with you directly?

No, she was just talking loud with a purpose to disrupt me.

16. Did she threaten you in any way?

No.

17. Did you report this incident to anyone prior to reporting it to the EEO office?

No, I asked to be moved. The fact is, we were not supposed to be talking. We were directed to set up our equipment, use the rest room, and sit at our desks and remain quiet. Ms. Prieto used Hal as an excuse to come over and disrupt my meditation and prayer. She flaunted the fact that she smacked me and was still there. She was moved out of Lab 11 so as to separate the two examiners. So why now did they put the two examiners back together? That was improper.

## DAMAGES

(1) Payment of **ONE MILLION AND THREE HUNDRED THOUSAND DOLLARS ($1,300,000.00 USD)** as compensatory damages for the direct and proximate caused personal injuries, such as: Depression, Anxiety Disorder, Insomnia etc.; Intentional Infliction of Emotional Distress, Mental Anguish, Acid Reflux, Headaches, Diarrhea, Chest Pains, and Neck Pains; loss of $300.000.00 Life Insurance Policy, loss of personal properties, and increased late fees and penalties and interests on all loans and debt etc.; and rejections/denials of job opportunities with other federal agencies

as a result of the malicious and libelous September 9, 2014 Notice of Termination Letter and the illegal retaliatory firing (**subject to minimal negotiations**).

(2) Reinstatement of my job as a Patent Examiner under a Technology Center Director other than Joseph Thomas and a Supervisory Primary Examiner other than Lisa M. Caputo, i.e. in another Art Unit, e.g., Computer Network Architecture or Information Technology, without any "probationary-year period" or "alleged production requirement" during the following year.

(3) Repayment of all salaries and compensation benefits lost since the illegal retaliatory firing.

(4) Repayment/reinstatement of all retirement benefits lost since the illegal retaliatory firing.

(5) Repayment/reinstatement of all 401K contributions lost since the illegal retaliatory firing.

(6) Reinstatement of all vacation time exhausted because of the racial and gender discrimination, extreme hostile environment, systematic and agency-wide harassment, and workplace violence; and or director Joseph Thomas' malicious refusal to allot me Other Time to draft affidavits related to this complaint and or paid out as a result as the illegal retaliatory firing.

(7) Reinstatement of all personal sick leave (or administrative sick leave) exhausted because of the racial and gender discrimination, extreme hostile environment, systematic and agency-wide harassment, and workplace violence; and or director Joseph Thomas' malicious refusal to allot me Other Time to draft affidavits related to this complaint and or paid out as a result as the illegal retaliatory firing.

(8) Removal of the malicious and libelous September 9, 2014 Notice of Termination Letter from any Personnel, USPTO, DOC or OPM file, folder, or data storing means and or from any file, folder, or data storing means anywhere inside the federal government.

(9) Written letters of apologies from all officials (e.g., but not limited to, Anne Mendez, Joseph Thomas, Jennifer Ware, Jessica Rossi, Gary Jones, Deborah Reynolds, Matthew Such, Andre Fields, etc) of the USPTO, DOC, FPS (i.e. Investigators Dearborn and J.D. Williams), OPM (i.e. Sara Bell or the OPM investigator involved in the May 12, 2014 libel and slander) or any other federal agency, as well as affiliate (i.e. KeyPoint, Inc.'s background investigator and SekTek, Inc. Leadership) and or contracted company, e.g., KeyPoint, Inc. or SekTek, Inc. etc. involved in the instant complaint in any form or fashion.

(10) I have forever lost the experience to graduate from the Patent Training Academy with my friends and peer patent examiners from the September 9, 2014 Entering Class.

(11) Per the "No Tolerance Towards Workplace Violence Policy" and the promise of OEEOD Director Bismarck Myrick to the September 9, 2013 Entering Class, **immediate removal** of Violeta Prieto and Wei "Victor" Chan from the USPTO because of their physical assault and battery against me; **or, in the alternative**, Written Letters of Apologies from Ms. Prieto and Mr. Chan acknowledging their culpability but the alternative is **only based upon the USPTO and DOC's acceptance of item (1) above**.

(12) **Required diversity training** for all of the USPTO officials involved (Anne Mendez, Joseph Thomas, Jennifer Ware, Jessica Rossi, Gary Jones, Deborah Reynolds, Andre Fields, Matthew Such etc.) and Vincent Wall.

(13) **Required diversity training** for Violeta Prieto and Victor "Wei" Chan only if and is **only based upon the USPTO and DOC's acceptance of item (1) above**.

7

Initials  /s/ GAR

WITHOUT ANY SETTLEMENT PRIOR TO ANY ADMINISTRATIVE HEARING OR CIVIL PROCEDDING, I seek the following damages:

(14) Payment of **FOUR MILLION AND FIVE HUNDRED THOUSAND DOLLARS ($4,500,000.00 USD)** as compensatory damages for the direct and proximate caused personal injuries, such as: Depression, Anxiety Disorder, Insomnia etc.; Intentional Infliction of Emotional Distress, Mental Anguish, Acid Reflux, Headaches, Diarrhea, Chest Pains, and Neck Pains; loss of $300.000.00 Life Insurance Policy, loss of personal properties, and increased late fees and penalties and interests on all loans and debt etc.; rejections/denials of job opportunities with other federal agencies as a result of the malicious and libelous September 9, 2014 Notice of Termination Letter and the illegal retaliatory firing; and further as compensation lost for all salaries, compensation benefits, all retirement, all 401K contributions, vacation time, and sick leave that would have been (but for the stolen opportunity via the illegal firing and libelous Notice of Termination Letter) earned over a twenty-five (25) year career at the USPTO or other federal agencies.

(15) **Punitive damages** ordered against the DOC/USPTO sufficient **to deter** their future misconduct.

(16) And any and all attorney fees, expenses, costs, such other remedies deemed fair and proper.

## OATH

I, Gregory Royal, have read the above statement/affidavit and being duly informed, and understanding the penalties of perjury; duly swear under oath that the statements made in this Affidavit are true and correct, and complete, to the best of my knowledge.

                           /s/ Gregory Allen Royal
                           Gregory Royal, Witness/Affiant

Dated: December 23, 2014

Subscribed and sworn to me this _____ day of _____, 2014.

                           _____
                           Lisa A. Kleine, EEO investigator, or Notary Public

Initials /s/ *GAR*

## OATH

I, Gregory Royal, have read the above statement/affidavit and being duly informed, and understanding the penalties of perjury; duly swear under oath that the statements made in this

Affidavit are true and correct, and complete, to the best of my knowledge.

Dated: December 23, 2014

Gregory Royal, Witness/Affiant

Subscribed and sworn to me this __23rd__ day of __December__, 2014.

Lisa A. Kleine, EEO investigator, or Notary Public

1

Initials _____

001485