FILED

## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

|                                             |     |                          |
| ------------------------------------------- | --- | ------------------------ |
| **GREGORY ALLEN ROYAL,**                    | )   |                          |
|                                             | )   |                          |
| Plaintiff,                                  | )   |                          |
|                                             | )   |                          |
| v.                                          | )   | No. **1:17-cv-00261-TSE-TCB** |
|                                             | )   |                          |
| **MICHELLE K. LEE,**                        | )   |                          |
| **UNDER SECRETARY OF COMMERCE**             | )   |                          |
| **FOR INTELLECTUAL PROPERTY**               | )   |                          |
| **AND DIRECTOR, UNITED STATES**             | )   |                          |
| **PATENT AND TRADEMARK OFFICE,**            | )   |                          |
|                                             | )   |                          |
| Defendant-Agency.                           | )   |                          |
|                                             | )   |                          |

### VERIFIED OBJECTIONS NOTED TO THE 18 APRIL 2019 ORDER

Now comes, Gregory Allen Royal, plaintiff, proceeding *pro se* (hereinafter "Plaintiff

Royal"), pursuant to Federal Rules of Civil Procedure (FRCP) rule 46 and United States District

Court Eastern District Of Virginia (EDVA) Local Civil Rule 7(L)[1], objecting to the 18 April 2019

Order, and stating as follows:

### INTRODUCTION

**I.      Shameful and Disgraceful to the Entire Judiciary is the Prejudice against Plaintiff Royal and Abuse of Discretion of judge T.S. Ellis III**

1.      Public protest by an attorney against a judge who sits in prejudice and discriminates

against an African American who brings a Title VII complaint against the federal government is

likely to bring the entire judiciary into ill repute before the American public.  But Truth and Justice

cannot be denied by the prejudice of a federal judge who abuses his discretion and oath.  **Truth and**

**Justice then cries out for that same public protest against the judge who via his abuse of**

---

[1] United States District Court Eastern District Of Virginia Local Civil Rule 7(L) conforms to FRCP rule 46.

discretion and prejudice violates the *Code of Conduct for United States Judges*.

2.      Judge T.S. Ellis III's misconduct in this proceeding is a disgrace and an embarrassment to the entire judiciary.

3.      Judge Ellis has repeatedly violated the *Code of Conduct for United States Judges*.

4.      The prejudice and abuse of discretion by judge T.S. Ellis III are not at all inadvertent mistakes but intentional discriminatory and malicious violations against the U.S. Constitution and existing federal case law.

5.      Judge T.S. Ellis III acts with **knowledge and a purposeful malicious intent** in denying Plaintiff Royal a fair and impartial proceeding, denying Plaintiff Royal his constitutional right of Due Process, denying Plaintiff Royal his constitutional right of Equal Protections under the U.S. Constitution, and denying Plaintiff Royal his day in court before the actual trier of fact—not Judge Ellis—a jury.

6.      A reasonable-minded person could reasonably conclude based on the obvious violations of judicial conduct, blatant and deliberate indifference to evidence before the court, and childish personal insults and mockeries of Plaintiff Royal by judge Ellis that the court is—effectively—discriminating against Plaintiff Royal and abusing discretion of a federal judge to oppress Plaintiff Royal and deny him a day before a jury.

### A. Plaintiff Has Unequivocally Refuted and Shown Defendant's Proffered 95% Final-End-Of-First-Year Production Rate to be Absolutely False

7.      Prior to his 28 February 2019 Order, Judge Ellis III was with absolute knowledge that patent examiner Ubachukwu Odunukwe (who has been employed at the USPTO since 2013 and was a member of Plaintiff Royal's September 9, 2013 Entering Class) had a first-year final production rate of **44%**. *See* **Exhibit A** – a copy of Mr. Odunukwe's first-year final production rate of **44%**.

8.      Krystal Robinson (who has been employed at the USPTO since 2013 and was a

member of Plaintiff Royal's September 9, 2013 Entering Class) has come forward to share her first-year final production rate of **71%**. *See* **Exhibit B** – a copy of Ms. Robinson's first-year final production rate of **71%**.

9.      Judge Ellis's extreme prejudice against Plaintiff Royal causes the court not to be able to sit over this proceeding with impartiality

10.      Judge Ellis should have recused himself, *sua sponte*, from this proceeding.

**B. Extreme Prejudice Prevents Judge T.S. Ellis III from Being Impartial in this Proceeding Causing Judge Ellis to Oppress the Constitutional Rights of Plaintiff Royal and Deny Plaintiff Royal His Day Before a Jury**

11.      The December 13, 2013 SekTek, Inc. Incident Report unequivocally shows and proves that the defendant was, at least, from October 2013 to December 13, 2013 a victim of **"workplace bullying."** *See* **Exhibit C** – a copy of the December 13, 2013 SekTek, Inc. Incident Report.

12.      Plaintiff Royal trumpeted the contents of and the December 13, 2013 SekTek, Inc. Incident Report throughout his Amended Complaint and in multiple motions and documents before the court. The December 13, 2013 SekTek, Inc. Incident Report states:

> FPS Inspectors interviewed Patricia Reddington, Md Ramman and Didarula Malumber all classmates of both employees and they all confirmed that **Ms. Prieto has been singling Mr. Royal out and bullying him**. (Double emphasis added).

On February 22, 2019, before judge T.S. Ellis III, Plaintiff Royal argued the contents of the December 13, 2013 SekTek, Inc. Incident Report. Judge Ellis is shackled by his extreme prejudice. The court does not mention the report despite it being a document that is admissible under Federal Rule of Evidence 803(6) as a business record, at least.

13.      A reasonable jury could find that "workplace bullying" constitutes "workplace violence."

14.      A reasonably jury could find that the defendant discriminated against Plaintiff Royal

by not enforcing its "No Tolerance Towards Workplace Violence Policy" against the violent white and Asian patent examiners who committed acts of criminal assault and battery upon Plaintiff Royal.

15.     Plaintiff Royal's amended complaint includes a mountain of discriminatory acts by the policymakers and decisionmakers of the defendant. The defendant's policymakers and decisionmakers discriminated and retaliated against Plaintiff from at least November 2013 to September 2014, and beyond.

16.     From November 2013 to September 2014—at least—the defendant engaged in systematic and continuous discrimination and retaliation against Plaintiff Royal whereby the defendant remained deliberately indifferent to the deluge of complaints of workplace violence, workplace harassment, hostile work environment, discrimination and retaliation based on gender and color/race.

17.     See the 28 February 2019 and 18 April 2019 Orders of judge Ellis. The extreme prejudice of judge Ellis against Plaintiff Royal causes the court to be incapable of accepting and appreciating irrefutable evidence supporting Plaintiff Royal and his complaint against the defendant.

18.     Judge Ellis **sits in prejudice and is incapable of overcoming his extreme prejudice** against Plaintiff Royal to be impartial in this proceeding.

### C. Denying Plaintiff Royal His Day in Court before a Jury is Calculated Prejudice by Judge T. S. Ellis III

19.     A court of equity and general jurisdiction, Judge Ellis III refuses Equity to Plaintiff Royal in the form of discovery because discovery exposes the gross and wanton racism, corruption, dishonesty, and discrimination of the defendant USPTO.

20.     Plaintiff Royal has argued before judge Ellis that homelessness caused Plaintiff Royal to lose his possessions including the related Report Of Investigations (ROI), due to theft.

21.     The court record lacks the full and complete record including motions and rulings of the administrative proceeding(s) before the U.S. Equal Employment Opportunity Commission (EEOC).

22.     The court record lacks the full and complete ROI which is **over two thousand (2000) pages**.

23.     Acting out his prejudice, judge Ellis with a purposeful intent repeatedly trumpets out that the defendant consistently awarded the victim of Criminal Assault and Battery and the victim of workplace bullying—i.e. Plaintiff Gregory Allen Royal—with a "l," the lowest score reflecting "needed improvement," in the area of "ability to interact with coworkers."

24.     Plaintiff Royal had consistently responded to judge Ellis that discovery is necessary for Plaintiff Royal to obtain the ratings of the white and Asian patent examiners who committed acts of criminal assault and battery upon Plaintiff Royal. **The defendant did not consistently rate the violent white and Asian patent examiners with the same ratings, i.e., a with a "l," the lowest score reflecting "needed improvement," in the area of "ability to interact with coworkers."**

25.     Judge Ellis knowingly violates the Code of Conduct for U.S. Judges by purposely and intentionally denying Plaintiff Royal the discovery to show and prove the discrimination of the defendant but then improperly acting as the ultimate trier of fact—which is not judge Ellis but a JURY—to abuse his discretion by arguing for and on behalf of the defendant about what allegedly Plaintiff Royal cannot prove. **Such conduct by any federal judge is constitutes a shameful disgrace to the judiciary as a whole**.

26.     Judge Ellis is shackled by his extreme prejudice against Plaintiff Royal and should have, sua sponte, recused himself from this proceeding.

27.     Judge Ellis shows no concern for Justice or Truth or the ideas of Equal Protection under the laws.

28.     The performance evaluations of the white and Asian patent examiners who committed acts of criminal assault and battery upon Plaintiff Royal cuts directly and exactly at the discrimination and retaliation of the defendant, **but judge Ellis denies discovery to Plaintiff Royal with knowledge that doing so prejudices Plaintiff Royal and more so protects the defendant**.

**II.     Shameful and Disgraceful is that Judge T.S. Ellis III Knowingly Fails to Comply with Well-Established Case Precedent Regarding the Summary Judgment Standard**

29.     Plaintiff Royal herein incorporates each and every allegation, sentence, and paragraph of his motion for reconsideration (Doc. 55), motion for objections (Doc 57), and *REPLY AND MOTION TO DISMISS/QUASH DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION* (Doc 61) as though fully set forth herein.

30.     The 28 February 2019 and 18 April 2019 Orders amount to substantive errors and clear errors.

31.     Judge T. S. Ellis III continues his bent of mind in favor of the defendant and his prejudice against Plaintiff Royal—abusing discretion and remaining off the bench of impartiality.

**A.     Judge Ellis Knowingly Caused Plaintiff Royal to Waste Approximately $1,050.00 with an Unnecessary Trip from Austin, Texas to Alexandria, Virginia**

32.     For Appeal Purposes, Plaintiff Royal restates his objection(s) to the 28 February 2019 Order in its entirety and objects to the 18 April 2019 Order in its entirety.

33.     A copy of the 18 April 2019 Order with Plaintiff Royal's objections noted is attached as **Exhibit D** to this objection. *See* **Exhibit D**—a copy of the 18 April 2019 Order with objections noted.

34.     At all times material, judge T.S. Ellis III was aware that Plaintiff Royal was a resident of the state of Texas.

35.     At all times material, judge T.S. Ellis III was aware that Plaintiff Royal to attend hearings before the court was required to travel from Austin, Texas to Alexandria, Virginia.

36.     On or about 19 February 2019, Plaintiff Royal filed his "motion for reconsideration (Doc. 55)."

37.     At any meaningful and reasonable time before 18 April 2019 and based on the Order of the court entered on 18 April 2019, judge Ellis could reasonably have denied Plaintiff's motion (Doc. 55) and cancelled the hearing scheduled at 10:00 a.m. on 19 April 2019.

38.     Plaintiff Royal traveled to the DC-Maryland-Virginia (DMV) area on Wednesday, 17 April 2019.

39.     On 18 April 2019 and **before** the court entered its Order of 18 April 2019 and cancelled the related 19 April 2019 hearing, Plaintiff filed his *"REPLY AND MOTION TO DISMISS/QUASH DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION* (Doc 61)."

40.     Pursuant to (EDVA) Local Civil Rule 7(F)[2], Plaintiff Royal filed his reply motion (Doc. 61), which was timely filed.

41.     **Judge Ellis knowingly caused Plaintiff Royal to waste approximately $1,050.00 with an unnecessary trip from Austin, Texas to Alexandria, Virginia.**

42.     The 18 April 2019 Order amounts to judge Ellis's continued prejudice against Plaintiff Royal and his bent of mind in favor of the defendant, which Plaintiff Royal objects.

43.     Clear error and substantive error are the results of the abuse of discretion and prejudice of judge T.S. Ellis III against Plaintiff Royal.

## B. Judge Ellis Knowingly and Maliciously Fails to Follow the Well-Established Summary Judgment Standard

44.     In *Tolan v. Cotton*, 188 L.Ed.2d 895 (2014), the Supreme Court articulated the

---

[2] EDVA Loc. Civ. R. 7(F) states, in part, "[T]he moving party may file a reply brief within **six (6) calendar days after the service of the opposing party's response brief.**" (Emphasis added). The actual service by the defendant upon Plaintiff Royal was on April 11, 2019 <u>as intentionally misrepresented</u> by the defendant but actually on April 12, 2019. *See* Plaintiff Royal's *REPLY AND MOTION TO DISMISS/QUASH DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION* (Doc 61).

summary judgment standard:

> [C]ourts **may not resolve** genuine disputes of fact in favor of the party seeking summary judgment . . . a "judge's function" at summary judgment **is not "to weigh the evidence and determine the truth of the matter** but to determine whether there is a genuine issue for trial." Anderson, 477 U. S., at 249. Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(a). **In making that determination, a court must view the evidence "in the light most favorable to the opposing party."** *Adickes v. S. H. Kress & Co.*, 398 U. S. 144, 157 (1970).

Likewise, in *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133 (2000), the Supreme

Court set forth a standard that **is too often ignored** by district judges:

> **[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence . . . "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."** *Liberty Lobby*, supra, at 255, 106 S.Ct. 2505. Thus, although the court should review the record as a whole, **it must disregard all evidence favorable to the moving party that the jury is not required to believe.** *See Wright & Miller 299*. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from **disinterested witnesses.**" Id., at 300.

(Emphasis added).

45.     In both the 28 February 2019 and 18 April 2019 Orders, judge Ellis consistently

fails to view the evidence "in the light most favorable to the opposing party"—i.e. Plaintiff Royal.

46.     In the 28 February 2019 and 18 April 2019 Orders, the overwhelming abuse of

discretion and extreme prejudice of judge Ellis can be easily and reasonably seen because the

court the does mention "in the light most favorable to the opposing party"—i.e. Plaintiff Royal—

in making its determinations.

47.     Plaintiff Royal maintains his objections to judge Ellis's failure to comply his

28 February 2019 and 18 April 2019 Orders to the Summary Judgement Standard as set forth in

*Tolan v. Cotton* and *Reeves v. Sanderson Plumbing Products* by the U.S. Supreme Court.

### C. Judge Ellis Abuses Discretion by Applying Facts Not In the Defendant's Motion for Summary Judgment (Doc. 43)

48.      More shameful and remarkable is the fact that judge Ellis in his 28 February 2019

Order applied alleged facts that are not explicitly or expressly found within the defendant's

motion for summary judgement (Doc. 43).

49.      The table below unequivocally evidences the prejudice of judge Ellis against the

Plaintiff Royal.  As illustrative examples, on the left side are the alleged of facts that judge Ellis

has concluded as true while acting as the ultimate trier of fact, which is improper.  On the right

side are the specific paragraphs where Plaintiff Royal denied the alleged facts with specificity in

his response to the defendant's motion to dismiss and/or motion for summary judgment.

50.      The table below not only evidences the prejudice of judge Ellis but also shows that

judge Ellis applied alleged facts that are not within the defendant's motion for summary judgment

(Doc. 43).

51.      Judge Ellis is overtly advocating from the bench on behalf the defendant; judge

Ellis is acting as the defendant's attorney.

### TABLE OF JUDGE T.S. ELLIS III'S PREJUDICE AGAINST PLAINTIFF ROYAL

| Judge Ellis is shaming the judiciary with his extreme prejudice and in effect discrimination against Plaintiff because the "Statement of Undisputed Material Facts" within the defendant's "Memorandum of Law In Support Of Defendant's Motion To Dismiss & For Summary Judgment" does not track one-to-one with the court's alleged findings. Violating Rules of Judicial Conduct, Judge Ellis acts as the jury stating conclusions of fact that remain genuine issues of material controversy. | Contrary to the clear error, substantive error, prejudice against Plaintiff Royal, and blatant abuse of discretion of judge T.S. Ellis III, Plaintiff Royal complied with FRCP rule 56, Local Civil Rule 56(B).<br><br>XIV. Defendant's "Statement of Undisputed Material Facts" is a mere conclusory statement without support for many of Defendant's conclusory statements therein |
| --- | --- |

- In the PTA, from on or around September 9, 2013, through October 17, 2013, plaintiff and another examiner, Vincent Wall, had several confrontations about the meaning of certain acronyms associated with patent examining and researching prior art, which plaintiff found to be "demean[ing] and slander[ous]," and culminated in plaintiff issuing Wall a "Cease and Desist' letter on October 17, 2013.

- Plaintiff and Wall continued to have verbal conflicts about work and other matters.

- On or about October 17, 2013, plaintiff met with Such to discuss his concerns about Wall; however, plaintiff did not raise any issues of harassment based on his sex or race. This was the first time Such became aware of issues involving plaintiff and Wall.

- Such met separately with both Wall and plaintiff and both agreed there was a conflict related to prior art; Such then met with both men together and counseled them that they needed to work together in the PTA and thought the matter was resolved.

205. Plaintiff disagrees in part with page 5 paragraph 6. Plaintiff served a Cease and Desist letter on Vincent Wall after Mr. Wall entered the lab before Plaintiff on multiple times and posted demeaning and slanderous statements attacking Plaintiff's intelligence and knowledge of examining procedure and Patent law.

206. Plaintiff did not engage Vincent Wall over matter involving acronyms. Defendant misrepresents the truth.

207. Vincent Wall attacked Muslims, the Islamic religion, and Christianity and he did so while disrupting Plaintiff from Plaintiff performing his job duties.

208. Vincent Wall like and in cahoots with Violeta Prieto repeatedly bullied and attacked Plaintiff. After Plaintiff's notified Matthew Such and PTA Class Manager Jessica Rossi about Vincent Wall's workplace harassment and bullying, Mr. Wall stopped his direct attacks against Plaintiff but continued to encourage Violeta Prieto to possess illegal knives inside the workplace and to harass and bully Plaintiff. Defendant's December 13, 2013 Incident Report supports Plaintiff against Violeta Prieto.

209. Defendant treated Violeta Prieto differently than Plaintiff because Plaintiff's gender and race when Defendant failed to grade Violeta Prieto with a "1" or to discharge Violeta Prieto for lacking sufficient professionalism in her interactions with Plaintiff—and likewise for Vincent Wall as explained above.

210. Plaintiff disagrees with Defendant's mischaracterization of the meeting with Matthew Such at page 5, paragraph 7: Defendant's misrepresents Plaintiff's complaint to Matthew Such. Plaintiff complained to Matthew Such that Plaintiff wanted Vincent Wall to stop using and posting Plaintiff's name on the white board with slanderous and demeaning statements.

| | |
|---|---|
| • On or about October 18, 2013, another examiner, Violeta Prieto told plaintiff to "shut up" during a lecture in the PTA. But Prieto also told another examiner, a non- African-American female to "shut up" during lectures on at least two other occasions.<br><br>• Plaintiff asked Such, the Training SPE, to remind everyone to be polite and not to say "shut up." Such and Caputo, plaintiffs direct supervisor, agreed that everyone should be reminded to be polite during lectures. | 211. Plaintiff disagrees with Defendant's mischaracterization of Violeta Prieto's workplace bullying at page 5, paragraph 8: Plaintiff complained about Violeta Prieto attacking Plaintiff by intentionally interrupting Plaintiff and shouting "SHUT UP" to Plaintiff after Plaintiff was given the speaking floor by lecturers on a weekly basis from on or about October 18, 2013 to December 13, 2013. Defendant's December 13, 2013 Incident Report supports the Plaintiff.<br><br>212. Violeta Prieto did not repeatedly attack non-black patent examiners of Lab 11 from on or about October 18, 2013 to December 13, 2013. As explained above, Defendant's actions via Matthew Such did not stop Violeta Prieto's workplace bullying. |
| • That same day, Prieto confronted plaintiff about the email, stating that plaintiff was trying to get her in trouble, and plaintiff told Such. | 213. Plaintiff responds to page 6 and paragraph 9: Defendant explicitly admits that it was aware of Violeta Prieto's workplace bullying and implicitly admits that Defendant did not take reasonable steps to stop the workplace bullying of Violeta Prieto against Plaintiff. Plaintiff makes clear that his November 7, 2013 complaint to Matthew Such was not based on a single incident of workplace bullying by Violeta Prieto after October 18, 2013 but based on the consistent and repeated weekly workplace bullying of Violeta Prieto against Plaintiff from October 18, 2013 to November 7, 2013 inclusive. |
| • Such spoke with Prieto and counseled her that she could not tell plaintiff or others to "shut up," but he also suggested to plaintiff that he should consider whether the complexity of some of his questions was beneficial to the other examiners. | 214. Defendant admits that Plaintiff possessed a mastery of Patent law about other examiners because Matthew Such question Plaintiff about the complexity of Plaintiff's questions. Defendant's evaluations of Plaintiff job performance contradict Matthew Such's question. |
| • On November 7, 2013, plaintiff also copied Rossi, his second-line supervisor at the time, on his email complaining about Prieto's behavior. At that time, Rossi did not know plaintiff's race and had not met him in person. Plaintiff chose not to follow up with Rossi, even when she called him, because he perceived her not to be understanding of his situation. | 215. Plaintiff responds to page 6 and paragraph 10: Defendant disagrees with Defendant's intentional omission of the fact that Plaintiff actually approached Jessica Rossi in the main lecture hall to question Jessica Rossi whether she had received his email whereby Jessica Rossi responded in a rude and curt manner like a Pitbull. |

| | |
|---|---|
| | 216.   Defendant misrepresents Jessica Rossi's knowledge that Plaintiff's race.  Jessica Rossi met Plaintiff and told Plaintiff to his face in a rude and curt very unprofessional manner like a Pitbull that she was aware of his email.<br><br>217.   Jessica Rossi as well as Matthew Such failed to notify human resources and Employee Relations Division Chief Anne Mendez pursuant to USPTO rules and policies, as alleged in the Amended Complaint.<br><br>218.   Matthew Such was aware of Plaintiff's complaints against Violeta Prieto but failed to reasonably stop her workplace bullying of Plaintiff. |
| •      On or about November 14, 2013, the probationary examiners in Lab 11 took a quiz in the PTA during which there was further verbal conflict between Plaintiff and Prieto.<br><br>•      Between November 2013, and December 13, 2013, Plaintiff and Prieto had multiple verbal confrontations, each accusing the other of being the problem. | 219.   Plaintiff responds to Defendant's intentional omission of the facts surrounding the November 14, 2013 incident at page 6 and paragraph 11:  Plaintiff yet again complained about Violeta Prieto verbally attacking and bullying him inside the USPTO workplace. Defendant failed to take reasonable action to put an end to Violeta Prieto's workplace bullying.<br><br>220.   Plaintiff disagrees with Defendant's intentional misrepresentation of the events at page 6, paragraph 12:  First, as a side note, Plaintiff respectfully informs Defendant and this Honorable Court that Plaintiff has an equal and greater basis for filing a Motion for Sanctions against Defendant based on Defendant's go over and off the slippery slope in knowingly misrepresenting the truth of Plaintiff's statements/allegations in its motion.   The motion consistently and repeatedly goes over and beyond persuasive arguments.<br><br>221.   The Report of Investigations is over 2000 pages because Plaintiff complained to all Agencies originally listed on his original Complaint.   Plaintiff had a good-faith basis brought with merit to do so because all individuals and agencies discriminated against Plaintiff by intentionally failing to enforce federal laws, rules, and policies to discriminate against Plaintiff by defeating his complaints through their deliberate indifference because the Plaintiff's race. |

| | |
|---|---|
| | 222.   Defendant intentionally misrepresents the Plaintiff's statements at page 6, paragraph 12.   By filing its Roseboro Notice and intentionally misrepresenting the facts of Plaintiff's statements, Defendant unnecessarily wastes Plaintiff's time and forces an unnecessary burden upon Plaintiff. |
| •  `    Plaintiff alleges that at one point during this period Prieto came so close to him waving her hands that a pen was knocked from plaintiffs hands and spilled ink on her; she denied doing so to Such. | 223.   At page 17 of Defendant's Exhibit 2, Plaintiff stated, "Ms. Prieto showed her ultimate contempt and disrespect for me by backhand slapping me." (No emphasis added). In doing so, Ms. Prieto got red ink on the backside of her hand."  Compare that to Defendant's statements at page 6, paragraph 12 of its motion.  Plaintiff is forced by Defendant's Roseboro notice to exhaust unnecessary time etc. in responding to Defendant's intentionally misrepresented statements. |
| •     On Friday, December 13, 2013, Such received an email from plaintiff complaining that Prieto had "knives on her desk," was pulling hair out of her head, eating loudly at her desk, and otherwise being contentious. | 224.   Plaintiff disagrees with page 7, paragraph 13: Plaintiff stated that upon his entry into work and his cubicle Violeta Prieto began threatening him with violence and her illegal knives at hands on her desk.  Violeta Prieto forced Plaintiff to immediately leave his desk to dial Emergency 911 because she had threatened him to a physical fight on one date and physically slapped him on another separate and distinct date. |
| | 225.   Plaintiff notes that at all times material Matthew Such, Mohsen Ahmadi, and Jessica Rossi each received training on the proper protocol mandating that Plaintiff's complaints be submitted to the Employee Relations Division Chief.   Matthew Such, Mohsen Ahmadi, and Jessica Rossi failed to do so. |
| | 226.   Violeta Prieto did not hesitate to threaten Plaintiff to a fist fight after she learned of Plaintiff's email.   Defendant admits it knowledge of the Violeta Prieto being talked to by at least Matthew Such but then confronting Plaintiff despite the meeting with Matthew Such. |
| •     As soon as the PTA Director received Rossi's email, he walked over to the labs. | 227.   Plaintiff disagrees with page 7, paragraph 14:  Plaintiff disagrees with the |

| | |
|---|---|
| When the PTA Director arrived, neither Prieto nor plaintiff was at her/his desk; he observed a paring knife on Prieto's desk, with fruit, and a plastic knife. Given the lack of conflict and the small blade, the PTA Director did not see anything amiss in the situation. When Jones returned to his office, he had an email waiting for him stating that USPTO Security had been called, and Jones returned to his lab, which was a 3-block walk away. | Defendant's mischaracterizations of an alleged "lack of conflict and the small blade" and the Defendant's mischaracterizations regarding the timing of events. See the lengthy allegations above including "Ms. Prieto showed her ultimate contempt and disrespect for me by backhand slapping me." (No emphasis added). Plaintiff notified the Defendant of the physical assault and battery. |
| | 228.    PTA Director Gary Jones and Assistant PTA Deborah Reynolds discriminated against Plaintiff by through their deliberate indifference to Plaintiff's complaints.  Violeta had two knives each having a blade of 4 inches on her desk to threaten Plaintiff. The knives violated 18 USC 930.  A jury may reasonably find that PTA Director Gary Jones and Assistant PTA Deborah Reynolds were at all times aware of 18 USC 930 because Defendant posts 18 USC 930 at all security entrances of its buildings. |
| •      FPS responded to plaintiff's call and spoke with both plaintiff and Prieto about the situation, who continued to argue, in a way that "appalled" Jones. FPS escorted Prieto to the lobby of the Agency and had her take the "knives" to her car, although it did not appear Prieto had violated any Agency rules or regulations.

•      The FPS inspectors concluded it was a non-violent disagreement and called plaintiff and Prieto to the same office and informed them they would have to find a way to get along with each other.

•      Prieto was not cited by security, and management concluded that Prieto's knives did not appear to violate Agency policy, as they appeared to be for use as personal eating utensils. | 230.    Plaintiff disagrees with page 7, paragraph 15: Plaintiff dialed Emergency 911 and told FPS Dearborn and JD Williams that Violeta Prieto had physically threatened me. See Defendant's Exhibit 2 at page24.

231.    Plaintiff disagrees with page 7, paragraph 16: Plaintiff cannot read the mind of Jones. Plaintiff does not know what appalled Jones and what did not appalled Jones. Plaintiff knows that Jones conferenced with Violeta Prieto to ask her if she was okay but remained deliberately indifferent to the victim of Violeta Prieto's threat of violence.  Jones did not conference with Plaintiff.

232.    Jones and Reynolds refused to conference with Plaintiff after receiving an email request for a meeting from Plaintiff.

233.    Defendant's blatantly false statement that it did not appear Prieto had violated any Agency rules or regulations warrants a Motion for Sanctions from Plaintiff. Defendant has not and cannot deny that it posted 18 USC 930 at all security entrances, at least, and that 18 USC 930 prohibits knives having blades greater than 2.5 |

| | |
|---|---|
| | inches inside the federal workspace—as dangerous weapons. |
| | 234.   Plaintiff disagrees that it was a non-violent disagreement and maintains that Defendant and FPS discriminated against him because of his gender and color/race when Defendant and FPS ignored all witnesses who confirmed that Violeta Prieto had singled Plaintiff out and "was bullying him."   See Plaintiff's Exhibit B—a copy of December 13, 2013 Security Incident Report. |
| | 235.   A jury can reasonably find that the Defendant and FPS holding the Plaintiff to be responsible and the cause of Violeta Prieto bullying Plaintiff inside the workplace and physically backhand slapping the Plaintiff amounts to a deliberate indifference and discrimination against the Plaintiff because of his gender and color/race. |
| | 236.   Plaintiff disagrees with page 8, paragraph 17:  A jury could find that Violeta Prieto's knives violated 18 USC 930.  A jury could find that Defendant's conclusions all in favor of Violeto Prieto in each and every instance amounts to a deliberate indifference to the complaints of the Plaintiff and discrimination based upon a racist and gender-based animus against Plaintiff because of his gender and color/race. |
| | 237.   The fact that Defendant concluded "no foul" with each and every complaint by Plaintiff for an entire appropriate year supports Plaintiff's complaint of discrimination, harassment, hostile environment, and retaliation against Defendant. |
| •     Jones, Reynolds, and Rossi decided to move Prieto to another lab immediately to separate her from Plaintiff.<br><br>•     Prieto and Plaintiff were counseled to conduct themselves in a professional manner in the PTA.<br><br>•     At the time PTA management decided | 238.   Plaintiff disagrees with page 8, paragraph 18:   Defendant merely placing Violeta Prieto into another lab did not separate Violeta Prieto from Plaintiff because Defendant allowed Plaintiff to reenter Plaintiff's lab and continue to harass and bully Plaintiff.   See Plaintiff's Amended Complaint and above allegations and arguments.   Plaintiff lacks information to agree or disagree with other allegations of Defendant at this time. |

| | |
|---|---|
| to separate Prieto and Plaintiff, they believed it to be a personality conflict and no one had alleged race and/or sex discrimination. | |
| •       On December 13, 2013, after contacting Security, plaintiff contacted Jennifer Ware, an employee relations specialist ("ERS") in the Office of Human Resources ("OHR"), to discuss his complaint about Prieto.<br><br>•       Plaintiff told Ware that he was being harassed by Prieto and that he believed Preito's actions were because Prieto "was not used to a polite, educated black man."<br><br>•       On or about December 16, 2013, Plaintiff requested that he be moved early from the PTA and into his Art Unit, which had already been discussed. The Agency agreed and moved Plaintiff to his Art Unit on December 20, 2013. | 239.    Plaintiff disagrees with pages 8 and 9, paragraph 19 based on the allegations in his Amended Complaint and above.    Plaintiff informed Jennifer Ware that "Ms. Prieto showed her ultimate contempt and disrespect for me by backhand slapping me."<br><br>240.    Jennifer Ware informed Plaintiff that she would allow Plaintiff to review her summary of his complaint to her.    Jennifer Ware closed Plaintiff's complaint/case without informing the Plaintiff.    Plaintiff was forced to make multiple communications to Jennifer Ware to discover that she had closed his complaint.<br><br>241.    Jennifer Ware did not interview any witnesses listed by Plaintiff.    The witnesses observed the workplace bullying by Violeta Prieto against Plaintiff, Vincent Wall's anti-Islamic statements, and the lengths of Violeta Prieto's knives.<br><br>242.    Jennifer Ware is a Human Resources representative who failed to comply with USPTO policies and rules regarding her providing a written report to the ER Division Chief. See Plaintiff's Complaint.<br><br>243.    A jury could reasonably find that Defendant consistently refused to interview witnesses or investigate Plaintiff's complaint without Plaintiff involving third parties amounted to a deliberate indifference and Defendant's discrimination based upon its racist animus in treating Plaintiff differently than non-black and a female examiner.<br><br>244.    The jury could reasonably find that but for the Defendant having a racist and discriminatory animus against Plaintiff, Defendant would have followed the USPTO policies, rules, and guidelines.<br><br>245.    Workplace bullying constitutes workplace violence. The jury could reasonably |

| | |
|---|---|
| | find that but for the Defendant having a racist and discriminatory animus against Plaintiff, Defendant would have enforced its "No Tolerance For Workplace Violence Policy" against Violeta Prieto.<br><br>246.   A jury could reasonably conclude that Defendant did not take reasonable steps of discharging Violeta Prieto to prevent her continued workplace bullying and violence against Plaintiff.  Violeta Prieto continued her workplace violence and bullying against Plaintiff in, including but not limited to, April 2014 and August 2014.<br><br>247.   Defendant acknowledges the April 2014 and August 2014 complaints by Plaintiff but attempts to refute Plaintiff's complaints via denials of Plaintiff's identity and race. |
| •       On December 19, 2013, as Plaintiff transitioned to his Art Unit, he received his first interim evaluation. | 248.   Plaintiff disagrees with page 9, paragraph 20:  Plaintiff lacks information to agree or disagree with Defendant alleging that moving Plaintiff to his Art Unit had already been discussed at this time. |
| •       Plaintiff received a "l," the lowest score reflecting "needed improvement," in the area of "ability to interact with coworkers," along with the comment "the examiner should be mindful of his interactions with coworkers in order to avoid further instances of contentious interactions from occurring." Plaintiff also received "ls," in productivity consistency and work habits.<br><br>•       On or around March 2014, plaintiff received his six-month evaluation from Caputo, his SPE, and Thomas, TC 2800 Group Director.<br><br>•       Plaintiff received a "2" for "meeting expectations" in getting along with others but he received a "1" for "needs improvement" on production. | 249.   [Plaintiff] disagrees with page 9, paragraph 21:  Plaintiff raised his hand and was called on by the lecturer before he spoke at all times material.  Plaintiff disagrees with Violeta Prieto's false accusation that he tried to dominate classrooms discussions.   Plaintiff disagrees with Prieto's false accusation that he humiliated her when he called Security about her illegal and dangerous weapons/knives. Before December 13, 2013, Violeta Prieto had threatened Plaintiff with a physical fight on one occasion and backhand slapped plaintiff on another occasion.   On December 13, 2013, Violeta Prieto threatened Plaintiff with her illegal knives at her hands as soon as Plaintiff entered the lab and his cubicle.<br><br>250.   A jury could reasonably find that Violeta Prieto did not a total of four knives inside the workplace to cut her fruit and that he kept all four knives atop her desktop to cause Plaintiff serious fear for his life while she engaged in workplace bullying and violence.   See |

Plaintiff's Exhibit B—a copy of the December 13, 2013 Security Incident Report.

251.   Plaintiff subsequently met with PTA Class Manager regarding Plaintiff's November 7, 2013 email and the December 13, 2013 incident.   During the meeting Jessica Rossi refused to interview any of Plaintiff's listed witnesses and threatened to immediately terminate Plaintiff if he bothered her again with complaints about Violeta Prieto.

252.   Because of PTA Jessica Rossi's threat to immediately discharge Plaintiff for any additional complaints about Violeta Prieto, Plaintiff went to Human Resources where his met with Jennifer Ware.

253.   Plaintiff lacks information to agree or disagree with other allegations of Defendant at this time.

254.   Plaintiff disagrees with page 22, paragraph 22 in that Defendant's Ex. 12 at 6 does not include the allegation of Defendant that "Employee Relations recommended to the PTA Director that both employees be discharged."

255.   In the light of the December 13, 2013 Security Incident Report—Plaintiff's Exhibit B of his Amended Complaint—a jury could reasonably find that Employee Relations possessed a racist and discriminatory animus against Plaintiff the victim of Violeta Prieto's workplace bullying when Employee Relations recommended that the Plaintiff be discharged.

256.   It is unlawful to discharge a black male victim of workplace bullying and physical assault and battery by a white female wrongdoer as it would be unfair to discharge a white female victim of sexual harassment by a black male wrongdoer.

257.   At Ex. 12 at page 6, Defendant admits that "we have zero tolerance for violence in work place" but from on or about October 18, 2013 to December 12, 2013 Defendant failed to investigate any complaints from Plaintiff, failed

to interview any witnesses named by Plaintiff, and tolerated multiple acts of workplace violence by Violeta Prieto upon Plaintiff.

258.  A jury could find that but for the Defendant's racist and discriminatory animus against Plaintiff the Defendant would have enforced its no tolerance for workplace violence against Violeta Prieto and discharged her.

259.  Violeta  Prieto  averred  that  no disciplinary action was taken against her. A jury could reasonably find that Defendant remained deliberately indifferent by not issuing any written warnings or taking any meaningful disciplinary action against Violeta Prieto.

260.  A jury could reasonably find that Defendant knowingly encouraged and tolerated Violeta Prieto's continued workplace bullying and violence by failing to issue an written warning upon Violeta Prieto and by Defendant always holding Plaintiff, the victim, to be at fault for Violeta Prieto's workplace bullying.

261.  Plaintiff lacks information to agree or disagree with other allegations of Defendant at this time.

262.  Plaintiff  disagrees  with  page  9, paragraph  23:  As  explained  above, Defendant—specifically Violeta Prieto's TC Director Joseph Thomas—has not shown that Defendant graded Violeta Prieto with a "1" needs  improvement  as  Defendant  graded Plaintiff.

263.  A jury could reasonably find that Defendant treated Plaintiff differently than Defendant treated Violeta Prieto differently than Plaintiff by not grading Violeta Prieto with a "1" needs improvement for her lack of ability to interact with the Plaintiff. Violeta Prieto bullied Plaintiff inside the workplace with Defendant's knowledge of the same from on or about October 13. 2018 to at least December 13, 2018.

264.  Plaintiff in his Amended Complaint that Matthew  Such  and  Mohsen  Ahmadi  both

| | admitted that they could not provide technical assistance to Plaintiff because Plaintiff was put in an Art Unit outside of Such's and Admadi's expertise.   Defendant, however, provided technical expertise to Violeta Prieto, Vincent Wall, and Wei Victor Chan during their time within the Patent Training Academy. |
|---|---|
| [ … ] | |
| **Judge Ellis's prejudice against Plaintiff Royal and the court's abuse of discretion is shown here to because the court's alleged findings of fact do not track one-to-one with the allegations of the defendant's "Statement Of Undisputed Material Facts."[3]** | |
| | |

52.     Plaintiff Royal has shown above that the alleged findings of fact by the court does not track one-to-one with the "Statement Of Undisputed Material Facts" filed by the defendant on 15 February 2019 in the defendant's motion for summary judgement (Doc. 43).

53.     One can reasonably discern that judge Ellis removed facts from a motion that he had previously denied and rendered moot to support the Defendant in his 28 February 2019, simply advocating on behalf and acting as attorney for the defendant.

54.     Acting out his prejudice against Plaintiff Royal, judge Ellis with a malicious intention ignores the fact that Plaintiff Royal denied with specificity paragraphs of the defendant's "Statement Of Undisputed Material Facts."  The table above evidences the prejudice of judge Ellis and the court's clear error.

### D. Judge Ellis Abuses Discretion by Failing to Consider Plaintiff Royal's Reply Motion (Doc. 61) Which Was Timely Filed

55.     Plaintiff Royal timely filed his *"REPLY AND MOTION TO DISMISS/QUASH DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION* (Doc 61)" on 18 April 2019.

56.     Plaintiff Royal objects to the court ignoring and failing to consider his *"REPLY*

---

[3] Judge T.S. Ellis III is at this point acting as an attorney for the defendant, off the bench and acting with extreme prejudice, and in effect being discriminatory against Plaintiff Royal.

*AND MOTION TO DISMISS/QUASH DEFENDANT'S MEMORANDUM OF LAW IN*

*OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION* (Doc 61)" in entering its

18 April 2019 Order, which constitutes both a substantive error and a clear error.

### E. Plaintiff Royal Objects to the 18 April 2019 Order In Its Entirety

57.      Plaintiff Royal maintains his objections of the 28 February 2019 Order and
reincorporates the same as though fully set forth herein.

58.      Plaintiff Royal maintains each and every argument set forth as to the pretext of the
defendant, such as "lying in wait."

59.      Judge Ellis acting as advocate for the defendant from the bench evidences one or
many remaining genuine issues of material fact within his 28 February 2019 Order:  A reasonable
jury could find that the defendant waited at least beyond the eight months of the probationary
period to discharge Plaintiff Royal for an alleged production rate but was in fact a mere pretext
for its discrimination and retaliation.

60.      Judge Ellis boasts about a mountain of evidence allegedly showing and proving
unsatisfactory performance by Plaintiff Royal.  A reasonable jury could find that if such were in
fact true, defendant would have and should have discharged Plaintiff Royal at the eighth month
and not waited under the end of the probationary period.  A reasonably jury could find that the
defendant lay in wait to build up and create a mere pretext for its discrimination and retaliation
against Plaintiff Royal.

61.      Acting with extreme prejudice against Plaintiff Royal, judge Ellis abuses his
discretion and violates the Code of Conduct for U.S. judges by refusing to accept any reasonable
evidence or facts that establish remaining genuine issues of material controversy.  Judge Ellis
knowingly and maliciously refuses to follow the Summary Judgment Standard.

## **Prayer for Relief**

WHEREFORE, the Plaintiff, Gregory Allen Royal, *pro se*, notes his objections to the

February 28, 2019 Order and the April 18, 2019 Order, and maintains his objections as indicated

above and on the Orders, requests Discovery in this proceeding, and for other relief as the Court

deems just and proper.

**I verify under penalty of perjury that the foregoing is true and correct.**

Executed on **May 20, 2019.**

Gregory Allen Royal
Declarant


Respectfully submitted,

DATED:  May 20, 2019

Gregory Allen Royal, *pro se*
Plaintiff
8100 N. Mopac Expy., Apt. 277
Austin, Texas 78759
(737)808-6700

## CERTIFICATE OF SERVICE

I, Gregory Allen Royal, plaintiff, proceeding *pro se*, hereby certify that on Monday, April

1, 2019, I served the following document—*VERIFIED OBJECTIONS NOTED TO THE*

*18 APRIL 2019 ORDER*—by mail via the United States Postal Service, postage prepaid, before

the hour of 5:00 p.m. CT, on the defendant (via counsel) listed below:

Peter J. Sawert
Special Assistant U.S. Attorney
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA 22314

## JURY DEMAND

**The Plaintiff requests trial by jury.**

Respectfully submitted,

DATED: May 20, 2019

Gregory Allen Royal, *pro se*
Plaintiff
8100 N. Mopac Expy., Apt. 277
Austin, Texas 78759
(737)808-6700



Exhibit A

# UBACHUKWU ODUNUKWE

<table>
<tr><td colspan="2"><b>Profile</b></td><td colspan="2"><b>Preferences</b></td></tr>
<tr><td><b>Examiner No.:</b> 90555</td><td><b>Grade/Step:</b> 12/4</td><td><b>Calculator Mode:</b></td><td>PAP Score</td></tr>
<tr><td><b>Art Unit:</b> 2654</td><td><b>Grade Date:</b> 03/05/2017</td><td colspan="2"><b>Calculation Period:</b> 2014-01 to 2014-26</td></tr>
<tr><td><b>Position Factor:</b> 1.00</td><td><b>Step Date:</b> 03/03/2019</td><td colspan="2"><b>Count System:</b> New</td></tr>
<tr><td><b>Effective QSIs:</b> 0</td><td><b>Next Step Date:</b> 02/28/2021</td><td colspan="2"><b>Promotions:</b> None</td></tr>
<tr><td><b>Autocount Status:</b> Active</td><td><b>EOD Date:</b> 09/09/2013</td><td colspan="2"><b>Signatory Review:</b> N/A</td></tr>
<tr><td><b>User-Saved Data Present (Below Gray Line):</b> No</td><td></td><td colspan="2"><b>Change QSIs:</b> No</td></tr>
<tr><td></td><td></td><td colspan="2"><b>Show Split Docket:</b> Yes</td></tr>
<tr><td><b>Current Pay Period:</b> 2019-13</td><td></td><td colspan="2"></td></tr>
</table>

## PAP Score

| PALM PAY PERIOD | REG. EXAM HOURS | O.T. EXAM HOURS | PAY PERIOD TOTAL HOURS | PF | CREDITS EARNED/ PROJECTED (CSI) | GS-12 EXPECT. (CSI) | ADJ. EXPECT. (CSI) | CALCULATED PRODUCTION HRS. EARNED (CSI) | BIWEEK | QUARTER TO DATE | FISCAL YEAR TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014-01 | 0:00 | 0:00 | 0:00 | 0.70 | 0.00 | 31.6 | 47.64 | 0.00 | 0% | 0% | 0% |
| 2014-02 | 45:00 | 0:00 | 45:00 | 0.70 | 0.00 | 31.6 | 47.64 | 0.00 | 0% | 0% | 0% |
| 2014-03 | 59:00 | 0:00 | 59:00 | 0.70 | 0.00 | 31.6 | 47.64 | 0.00 | 0% | 0% | 0% |
| 2014-04 | 33:00 | 0:00 | 33:00 | 0.70 | 0.00 | 31.6 | 47.64 | 0.00 | 0% | 0% | 0% |
| 2014-05 | 56:30 | 0:00 | 56:30 | 0.70 | 1.25 | 31.6 | 47.64 | 29.78 | 53% | 15% | 15% |
| 2014-06 | 65:00 | 0:00 | 65:00 | 0.70 | 0.00 | 23.0 | 35.36 | 0.00 | 0% | 12% | 12% |
| 2014-07 | 38:30 | 0:00 | 38:30 | 0.70 | 0.00 | 23.0 | 35.36 | 0.00 | 0% | 0% | 10% |
| 2014-08 | 58:00 | 0:00 | 58:00 | 0.70 | 0.00 | 23.0 | 35.36 | 0.00 | 0% | 0% | 8% |
| 2014-09 | 55:00 | 0:00 | 55:00 | 0.70 | 0.00 | 23.0 | 35.36 | 0.00 | 0% | 0% | 7% |
| 2014-10 | 78:00 | 0:00 | 78:00 | 0.70 | 1.25 | 23.0 | 35.36 | 22.10 | 28% | 10% | 11% |
| 2014-11 | 55:00 | 0:00 | 55:00 | 0.70 | 0.00 | 23.0 | 35.36 | 0.00 | 0% | 8% | 10% |
| 2014-12 | 69:30 | 0:00 | 69:30 | 0.70 | 0.00 | 23.0 | 35.36 | 0.00 | 0% | 6% | 8% |
| 2014-13 | 62:00 | 0:00 | 62:00 | 0.70 | 1.25 | 23.0 | 35.36 | 22.10 | 36% | 11% | 11% |
| 2014-14 | 66:00 | 0:00 | 66:00 | 0.70 | 2.75 | 23.8 | 36.50 | 50.19 | 76% | 76% | 17% |
| 2014-15 | 73:00 | 0:00 | 73:00 | 0.70 | 0.00 | 23.8 | 36.50 | 0.00 | 0% | 36% | 15% |
| 2014-16 | 53:30 | 0:00 | 53:30 | 0.70 | 2.50 | 23.8 | 36.50 | 45.63 | 85% | 50% | 20% |
| 2014-17 | 53:00 | 0:00 | 53:00 | 0.70 | 1.25 | 23.8 | 36.50 | 22.81 | 43% | 48% | 21% |
| 2014-18 | 67:00 | 0:00 | 67:00 | 0.70 | 1.25 | 23.0 | 35.36 | 22.10 | 33% | 45% | 22% |
| 2014-19 | 71:00 | 0:00 | 71:00 | 0.70 | 1.25 | 23.0 | 35.36 | 22.10 | 31% | 42% | 22% |
| 2014-20 | 68:00 | 0:00 | 68:00 | 0.70 | 3.75 | 23.0 | 35.36 | 66.29 | 97% | 97% | 27% |
| 2014-21 | 23:00 | 0:00 | 23:00 | 0.70 | 1.25 | 23.0 | 35.36 | 22.10 | 96% | 97% | 28% |
| 2014-22 | 68:00 | 0:00 | 68:00 | 0.70 | 1.25 | 23.0 | 35.36 | 22.10 | 32% | 69% | 29% |
| 2014-23 | 70:00 | 0:00 | 70:00 | 0.70 | 3.00 | 24.4 | 37.36 | 56.04 | 80% | 73% | 31% |
| 2014-24 | 50:30 | 0:00 | 50:30 | 0.70 | 5.00 | 23.0 | 35.36 | 88.39 | 175% | 91% | 37% |
| 2014-25 | 50:00 | 0:00 | 50:00 | 0.70 | 2.50 | 26.4 | 40.21 | 50.27 | 101% | 93% | 39% |
| 2014-26 | 95:00 | 0:00 | 95:00 | 0.70 | 5.50 | 23.0 | 35.36 | 97.23 | 102% | 95% | 43% |
| **TOTALS:** | **1482:30** | **0:00** | **1482:30** | | **35.00** | | | **639.21** | **43%** | | |

This printout is an abridged version of the calculator webpage. To print a more complete version of the calculator, use the "Export to Excel" button on the page and customize the printing in Excel.



Exhibit B

# KRYSTAL ROBINSON

| Profile | | Preferences | |
|---|---|---|---|
| **Examiner No.:** 90692 | **Grade/Step:** 12/5 | **Calculator Mode:** PAP Score | |
| **Art Unit:** 2847 | **Grade Date:** 09/20/2015 | **Calculation Period:** 2014-01 to 2014-26 | |
| **Position Factor:** 1.00 | **Step Date:** 09/16/2018 | **Count System:** New | |
| **Effective QSIs:** 0 | **Next Step Date:** 09/13/2020 | **Promotions:** None | |
| **Autocount Status:** Active | **EOD Date:** 09/09/2013 | **Signatory Review:** N/A | |
| **User-Saved Data Present (Below Gray Line):** No | | **Change QSIs:** No | |
| | | **Show Split Docket:** No | |
| **Current Pay Period:** 2019-16 | | | |

## PAP Score

| PALM PAY PERIOD | REG. EXAM HOURS | O.T. EXAM HOURS | PAY PERIOD TOTAL HOURS | PF | CREDITS EARNED/ PROJECTED (CSI) | GS-12 EXPECT. (CSI) | ADJ. EXPECT. (CSI) | CALCULATED PRODUCTION HRS. EARNED (CSI) | BIWEEK | QUARTER TO DATE | FISCAL YEAR TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014-01 | 0:00 | 0:00 | 0:00 | 0.80 | 0.00 | 19.0 | 26.25 | 0.00 | 0% | 0% | 0% |
| 2014-02 | 52:30 | 0:00 | 52:30 | 0.80 | 0.00 | 19.0 | 26.25 | 0.00 | 0% | 0% | 0% |
| 2014-03 | 74:30 | 0:00 | 74:30 | 0.80 | 2.50 | 19.0 | 26.25 | 32.81 | 44% | 26% | 26% |
| 2014-04 | 33:00 | 0:00 | 33:00 | 0.80 | 0.00 | 19.0 | 26.25 | 0.00 | 0% | 21% | 21% |
| 2014-05 | 48:00 | 0:00 | 48:00 | 0.80 | 2.50 | 19.0 | 26.25 | 32.81 | 68% | 32% | 32% |
| 2014-06 | 19:00 | 0:00 | 19:00 | 0.80 | 0.00 | 19.0 | 26.25 | 0.00 | 0% | 29% | 29% |
| 2014-07 | 30:30 | 0:00 | 30:30 | 0.80 | 1.25 | 19.0 | 26.25 | 16.41 | 54% | 54% | 32% |
| 2014-08 | 68:00 | 0:00 | 68:00 | 0.80 | 1.25 | 19.0 | 26.25 | 16.41 | 24% | 33% | 30% |
| 2014-09 | 54:00 | 0:00 | 54:00 | 0.80 | 1.25 | 19.0 | 26.25 | 16.41 | 30% | 32% | 30% |
| 2014-10 | 78:00 | 0:00 | 78:00 | 0.80 | 1.25 | 19.0 | 26.25 | 16.41 | 21% | 28% | 29% |
| 2014-11 | 58:00 | 0:00 | 58:00 | 0.80 | 0.00 | 19.0 | 26.25 | 0.00 | 0% | 23% | 25% |
| 2014-12 | 58:00 | 0:00 | 58:00 | 0.80 | 2.75 | 19.0 | 26.25 | 36.09 | 62% | 29% | 29% |
| 2014-13 | 48:00 | 0:00 | 48:00 | 0.80 | 3.75 | 19.0 | 26.25 | 49.22 | 103% | 38% | 35% |
| 2014-14 | 62:00 | 0:00 | 62:00 | 0.80 | 3.75 | 19.0 | 26.25 | 49.22 | 79% | 79% | 39% |
| 2014-15 | 58:00 | 0:00 | 58:00 | 0.80 | 5.00 | 19.0 | 26.25 | 65.63 | 113% | 96% | 45% |
| 2014-16 | 29:30 | 0:00 | 29:30 | 0.80 | 2.50 | 19.0 | 26.25 | 32.81 | 111% | 99% | 47% |
| 2014-17 | 52:30 | 0:00 | 52:30 | 0.80 | 5.00 | 19.0 | 26.25 | 65.63 | 125% | 106% | 52% |
| 2014-18 | 45:00 | 0:00 | 45:00 | 0.80 | 4.00 | 19.0 | 26.25 | 52.50 | 117% | 108% | 56% |
| 2014-19 | 50:00 | 0:00 | 50:00 | 0.80 | 4.00 | 19.0 | 26.25 | 52.50 | 105% | 107% | 58% |
| 2014-20 | 62:00 | 0:00 | 62:00 | 0.80 | 5.50 | 19.0 | 26.25 | 72.19 | 116% | 116% | 62% |
| 2014-21 | 46:00 | 0:00 | 46:00 | 0.80 | 3.75 | 19.0 | 26.25 | 49.22 | 107% | 112% | 64% |
| 2014-22 | 47:15 | 0:00 | 47:15 | 0.80 | 3.50 | 19.0 | 26.25 | 45.94 | 97% | 108% | 65% |
| 2014-23 | 78:00 | 0:00 | 78:00 | 0.80 | 6.50 | 19.0 | 26.25 | 85.31 | 109% | 108% | 68% |
| 2014-24 | 53:00 | 0:00 | 53:00 | 0.80 | 4.00 | 19.0 | 26.25 | 52.50 | 99% | 107% | 70% |
| 2014-25 | 54:00 | 0:00 | 54:00 | 0.80 | 4.50 | 19.0 | 26.25 | 59.06 | 109% | 107% | 71% |
| 2014-26 | 125:00 | 0:00 | 125:00 | 0.80 | 6.50 | 19.0 | 26.25 | 85.31 | 68% | 97% | 71% |
| **TOTALS:** | **1383:45** | **0:00** | **1383:45** | | **75.00** | | | **984.38** | **71%** | | |

This printout is an abridged version of the calculator webpage. To print a more complete version of the calculator, use the "Export to Excel" button on the page and customize the printing in Excel.

EXHIBIT 8

## SecTek, Inc.

# INCIDENT REPORT

PAGE 1 OF 1 PAGES

| Summary of Incident/Complaint:<br>**Employee Dispute** | | Location of Incident/Complaint:<br>Carlyle Place | |
| --- | --- | --- | --- |
| Date/Hour Occurred:<br>September 2013- Present | Date/Hour Reported:<br>December 13, 2013 1005 hours | | Report Number Assigned:<br>N/A |

## INDIVIDUALS INVOLVED

| Complainant Name:<br>Gregory Royal (6024) | Employer:<br>USPTO employee | Contact Number:<br>571-270-3168 |
| --- | --- | --- |
| Victim Name:<br>N/A | Employer:<br>N/A | Contact Number:<br>N/A |
| Subject/Suspect Name:<br>Violeta Prieta (6024) | Employer:<br>USPTO employee | Contact Number:<br>unknown |
| Witness Name:<br>N/A | Employer:<br>N/A | Contact Number:<br>N/A |

## ADDITIONAL DATA

Code:   V – Victim   S – Suspect   SB – Subject   W – Witness   O – Other

| Code:<br>N/A | Name:<br>N/A | Employer:<br>N/A | Contact Number:<br>N/A |
| --- | --- | --- | --- |
| Code:<br>N/A | Name:<br>N/A | Employer:<br>N/A | Contact Number:<br>N/A |
| Code:<br>N/A | Name:<br>N/A | Employer:<br>N/A | Contact Number:<br>N/A |
| Code:<br>N/A | Name:<br>N/A | Employer:<br>N/A | Contact Number:<br>N/A |

## NARRATIVE OF INCIDENT/COMPLAINT

Includes: Who, What, When, Where, Why & How

On Friday December 13, 2013, at approximately 1005 hours, SCC operators dispatched Officer Marquez to Carlyle Place lobby in response to an incident between employees. Officer McLaughlin was also dispatched to assist. FPS was contacted by SCC operators at 1025 hours. Lt. Clark arrived at Carlyle Place lobby at 1030 hours. FPS inspectors Dearborn and JD Williams arrived onsite at approximately 1106 hours. FPS Inspectors responded to the 6th floor and interviewed USPTO employee Mr. Gregory Royal who called in the complaint. According to Mr. Royal he has been in the USPTO academy for about 4 months with other Patent trainees. Mr. Royal stated that every time that he raised his hand to ask or answer a question USPTO employee Violeta Prieta always interrupts him and tells him to shut up when he speaks. According to Mr. Royal this takes place all the time. Mr. Royal also stated that Ms. Prieta keeps several knives in her desk that are longer than 2.5 inches. The Director of Patent training, Gary Jones (MDW, 223, ext. 27400) and the Deputy Director of Patent training, Deborah Reynolds (MDW, 220, ext. 20734) arrived onsite at 1110 hours. FPS Inspectors also interviewed Ms. Prieta. After interviewing Ms. Prieta FPS instructed Officer McLaughlin to take Ms. Prieta's knives, escort her to the lobby so that Ms. Prieta to take those knives to her car. FPS interviewed Patricia Reddington (CP, 6024, ext. 29242), Md Ramman and Didarula Malumder all classmates of both employees and they all confirmed that Ms. Prieta has been singling Mr. Royal out and bullying him. Patent training supervisor Matthew Such (CP, 6024, ext. 28895) arrived onsite at 1150 hours. Inspectors Dearborn and Williams concluded that it was a non-violent disagreement and called Mr. Royal and Ms. Prieta to the same office and informed them that they would have to find a way to get along with each other. Ms. Prieta was also warned against bringing knives in USPTO space. FPS departed the site at approximately 1215 hours. No further information to report at this time.

*HERE* ← *Please look here for the court*

| | |
|---|---|
| **Investigated by (Printed First & Last Name):** Officer Marquez | **Date:** December 13, 2013 |
| **Signature:** | |
| **Prepared by (Printed First & Last Name):** Officer Marquez | **Date:** December 13, 2013 |
| **Signature:** | |

## APPROVALS

| | |
|---|---|
| **Supervisor (Printed First & Last Name):** Lt. Clark | **Date:** December 13, 2013 |
| **Signature:** | |
| **Manager (Printed First & Last Name):** | **Date:** |
| **Signature:** | |

SecTek Form HR-60 (Rev 0)
07/28/05

SecTek, Inc. Confidential and Proprietary
(Unauthorized copying and distribution strictly prohibited)

*[handwritten box: EXHIBIT 4]*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

**GREGORY ALLEN ROYAL,**

v.                                    Civil Action No. 1:17cv261

**ANDREI IANCU, et al.**

### ORDER

The *pro per* plaintiff formerly worked at the United States Patent and Trademark Office ("USPTO") as a probationary patent examiner.   On September 4, 2014, plaintiff was terminated by the USPTO at the end of his year-long probationary period.  Plaintiff sued the USPTO, alleging disparate treatment on the basis of race and gender, retaliation based on protected activity under Title VII, and a hostile work environment based on racial and sex-based animus.  The USPTO moved for summary judgment, and an order issued on February 28, 2019, granting the USPTO's motion.  Plaintiff has now filed two motions seeking to overturn the February 28th Order: (i) a motion for reconsideration, and (ii) a motion for objections to the February 28th Order.[1]

Reconsideration of a final order is an extraordinary remedy which is only appropriate in three limited circumstances: (i) to accommodate an intervening change in controlling law; (ii) to account for new evidence not available at trial; or (iii) to correct a

*[handwritten annotations: "DENY", "IT filed three (3)", "§ Reply And Motion To Dismiss/ § Quash Defendant's Memorandum of law in Opposition To Tly Motion for Reconsideration - Prison (Doc. 61)", "DENY in part", "yes", "yes"]*

---

[1] These two motions will both be treated as a motion for reconsideration.

*[handwritten annotation: Judge Ellis IGNORED PLAINTIFF ROYAL'S "REPLY AND Motion to Dismiss/ Quash Defendant's Memorandum of Law in Opposition To Plaintiffs Motion for Reconsideration (Doc. 61).]*

clear error of law or prevent manifest injustice. *See United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 210 (4th Cir. 2017); *see also* Fed. R. Civ. P. 59(e). Here, plaintiff fails to present any intervening change in controlling law or any evidence that was unavailable at the time summary judgment was entered. Instead, he claims that the Court clearly erred by granting the USPTO's motion for summary judgment. Plaintiff's clear error argument appears to be threefold: (i) that the Court clearly erred by denying plaintiff full discovery; (ii) that the Court clearly erred by failing to consider direct evidence of discrimination; and (iii) that the Court clearly erred by improperly assuming the USPTO's statement of facts to be true after plaintiff failed to comply with the Local Rule requiring him to respond to every material fact in the USPTO's motion.

First things first, plaintiff's lack of discovery argument fails because there was a fulsome administrative record in this case and plaintiff would have had an opportunity to conduct discovery as part of the administrative process but-for his own misconduct. Moreover, even if plaintiff would have been granted discovery, this would not have remedied his failure to respond to the USPTO's statement of undisputed, material fact. And finally, plaintiff was given multiple opportunities to amend his complaint to state a cause of action. Ultimately, the USPTO decided to move for summary judgment rather than seek another motion to dismiss. But if the USPTO had filed a motion to dismiss and relied exclusively on the allegations in the complaint (instead of referring to the administrative record), plaintiff's claims would have still been dismissed with prejudice and judgment would still have been entered in favor of the USPTO.

Second, the order issued on February 28, 2019 directly and unambiguously

2

addresses plaintiff's argument regarding direct evidence:

> On this summary judgment record, no explicit discriminatory statements or actions were made or taken by the USPTO or its employees against plaintiff.    Instead, plaintiff asks that discrimination be inferred based on the way he was treated by the USPTO and his fellow co-workers.    Where, as here, plaintiff fails to produce direct evidence that his treatment and/or termination was based on discriminatory animus by the USPTO, he can survive summary judgment only if he establishes prima facie cases of race and gender discrimination using the *McDonnell-Douglas* burden shifting framework.

*[handwritten: CLEAR, ERROR & SUBSTITUTE ERROR & PREJUDICE BY COURT]*

(Doc. 53 at 9.)  Because there is no direct evidence of discrimination on this record, the Court did not commit clear error by making such a finding.

*[handwritten: DENY]*

Finally, the Court did not err by treating the USPTO's statement of undisputed material facts as true. Local Civil Rule 56(B) provides that:

*[handwritten: DENY]*

*[handwritten: THE COURT IS NOT THE ULTIMATE FACT FINDER & D's EVIDENCE DISPUTES COURT E.O. SEE TTs]*

> A brief in response to [] a motion [for summary judgment] shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

EDVA Civ. Loc. R. 56(b). Plaintiff, who reports to be an attorney and member of the Bar of the State of Illinois, failed to respond to the USPTO's statement of undisputed material fact, as required by the Rule, despite being warned on previous occasions that he must comply with all Federal and Local rules.  Plaintiff chose not to follow the rules and must now live with the consequences.

*[handwritten: STRONGLY DENY]*

*[handwritten: DENY COURT IS PREJUDICED AGAINST TT AND REFUSES TO ACKNOWLEDGE TRUTH AND FACT]*

Because none of the reasons plaintiff provides for reconsideration are sufficient to

3

grant his motion,

It is hereby **ORDERED** that plaintiff's motion for reconsideration (Doc. 55) and motion for objections (Doc. 57) are **DENIED**. The hearing set for tomorrow at 10:00 a.m. is cancelled.

To appeal this decision, or any other decision of this Court, plaintiff must file a written Notice of Appeal with the Clerk of this court within thirty (30) days of receiving an order that aggrieves him. Failure to file a timely Notice of Appeal waives the right to appeal.

The Clerk is directed to provide a copy of this Order to plaintiff at his last known address and to all counsel of record.

*DENIES*

May 16, 2019. *[signature]*

Alexandria, Virginia
April 18, 2019

T. S. Ellis, III
United States District Judge

*Judge Ellis's prejudice EVISCERATES THE protections of Title VII, rendering it toothless AND USELESS. Plaintiff Royal maintains that Judge T. S. Ellis, III is prejudiced against him. Plaintiff Royal maintains that the 28 February 2019 ORDER EVIDENCES Judge Ellis's PREJUDICE, wherein Judge Ellis resorts to NAME-calling AND MOCKERIES OF Gregory Allen Royal so that Judge Ellis can complete his prejudice against Plaintiff Royal. Judge Ellis IGNORES -WITH KNOWLEDGE - CRIMINAL ACTS OF ASSAULT AND BATTERY to carry his prejudice AGAINST TTT. Judge Ellis USES MOCKERY TO DEFEAT TITLE VII by ORDERING THAT Plaintiff Royal SHOULD NOT HAVE COMPLIED w/ THE VII.*